actions of continuing to deny all requests of Plaintiff from the beginning development of Cove Creek to further conceal the COE's true intentions that the COE never intended to perform;

LL. The COE did not disclose and had a duty to disclose that the COE was obligated to obtain funds to perform its obligations at Cove Creek;

MM. The COE did not disclose and had a duty to disclose that it never intended to perform its obligations as to Cove Creek;

OO. The COE did not disclose and had a duty to disclose that it had repudiated the EI/Cove Creek Modification on numerous occasions. Specifically, on September 20, 2000, in an email from Michael Miller to Thomas Risher, both COE representatives, Mr. Miller stated, after participating in a conference call with those in a superior position, and in referencing to the EI/Cove Creek Modification, "**We need to stick to our guns here. We should budget for this, but it will always be deferrable.**";

PP. The COE did not disclose and had a duty to disclose that concerns in the COE's performance of its Cove Creek obligations (assuming for the time being it ever had intentions to perform) violated COE policy;

QQ. In the Spring of 2001, the COE did not disclose and had a duty to disclose it considered the ramifications of the COE not performing as to Cove Creek and compared its liability exposure as less than what COE believed it had successfully avoided as to its obligations as to Eden Isle Marina, further evidencing the repudiation of the EI/Cove Creek Modification as well as the COE's continuing concealment and trickery committed upon Plaintiff;

RR. The COE did not disclose and had a duty to disclose to Plaintiff and those in a superior position in the United States government that the COE's actions of requests for any funds for Cove Creek pursuant to the MOU and EI/Cove Creek Modification were artificial and that even if funds were allocated, the COE would re-prioritize the allocation of those funds so that Cove Creek would never be funded;

SS. The COE knew and did not disclose to Plaintiff that the COE's delay in seeking funds and performing its obligations as to EI/Cove Creek Modification was damaging both to Plaintiff and to the public because funds required for Cove Creek would be increasing yearly based upon increase in construction materials and inflation, whereby the Plaintiff and the public suffered not

only from the increase in costs but also from the loss of much needed boat slips on Greers Ferry Lake;

TT. The COE had a duty to disclose and did not disclose to Plaintiff or those in a superior position in the United States government that each request for budget submissions as to Cove Creek was not "ranked high enough to receive funding" continually since the inception of the MOU, and more recently, as admitted in an email communication dated November 22, 2004, and December 15, 2004. These admissions and only recent discovery constitutes a complete repudiation by COE and, therefore, a total breach;

106. The COE ignored and refused to respond to Plaintiff's requests to reconsider the COE's position regarding development of Eden Isle Marina and consider its requests for an expansion at Eden Isle Marina which requests were made by Plaintiff beginning and subsequent to September 13, 2001.

107. The COE continually created obstacles for Plaintiff to fully develop Eden Isle Marina after the MOU and EI/Cove Creek Modification by going outside of its own policies, guidelines, and breaching its legal obligations in approximately July 2003.

108. At all times, the COE was in a position of superiority, both as to power and knowledge of leasehold areas for marinas (particularly on Greers Ferry Lake) and knew that the COE's statements and actions to Plaintiff since

June 1995 to present regarding Plaintiff's legal position and the COE's legal entitlement would be justifiably relied upon by Plaintiff as accurate and truthful.

109. Plaintiff signed the MOU and EI/Cove Creek Modification without knowledge of the misrepresentations of the COE and other wrongful actions and because the COE presented these documents to Plaintiff on a "take it or leave it" basis, again, with the COE being in a superior position of power and knowledge.

110. The COE knew or believed Plaintiff did not have sufficient political influence or substantial wealth.

111. Plaintiff was entitled to trust the COE from 1995 to present.

112. Plaintiff was entitled to rely on the COE's representations and actions both legally and factually from 1995 to present, did rely on same, and suffered damages and loss of its leasehold and business expectancy at Eden Isle Marina first and foremost as well as Cove Creek.

113. At all times between June 1995 and to the time of filing this action, Plaintiff believed the COE was acting with good faith and fair dealing and making truthful statements to Plaintiff.

114. Plaintiff entered into the MOU and EI/Cove Creek Modification based upon its reliance that the COE was acting honestly and fairly. The COE did not act honestly nor fairly, evidently since the commencement of the

parties' contractual relationship, a fact which Plaintiff has discovered only recently.

115. Further, as known by the COE, Plaintiff had exhausted its resources (based upon the COE's conduct), and was told Plaintiff could not alter the course of events as to Eden Isle Marina. Indeed, the COE's representations that Plaintiff had no other choice but to sign the MOU and EI/Cove Creek Modification held greater persuasive weight because the COE told Plaintiff that the COE itself could not alter the decisions and events because of "political influence," a fact well documented in the COE files and sworn testimony.

116. Plaintiff has caused to be performed an Environmental Assessment to evidence there are no environmental issues of significant impact which would prohibit Plaintiff from developing the approximate 1,078 feet of shoreline at Eden Isle Marina.

## FIRST CAUSE OF ACTION

## RESCISSION OF THE MEMORANDUM OF UNDERSTANDING AND EI/COVE CREEK MODIFICATION AND RESTITUTION

117. Plaintiff restates and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

118. The foregoing facts, many of which were only discovered within the last few months, demonstrate that the remedy of rescission is appropriate in

this case. The foregoing facts also demonstrate that Court should rescind, cancel, and nullify the EI/Cove Creek Modification between the parties, and the parties should be restored back to the status quo which would require more than finding the MOU and EI/Cove Creek Modification merely should be set aside. Indeed, to a great extent, damages only, without rescission and restitution, would be an inadequate remedy at law.

119. Specifically, the parties' MOU and EI/Cove Creek Modification should be voided from its inception, and the parties should be returned to the positions they would have occupied, *i.e.*, the *status quo ante*, as if the MOU and EI/Cove Creek Modification had never existed.

120. The remedy of rescission may be granted based upon a number of grounds, many of which exist in this case as will be demonstrated at trial.

**Rescission with Restitution Is an Appropriate Remedy Due to Defendant's Fraud, Misrepresentations, or Concealment.**

121. The foregoing facts reflect that Defendant has engaged in misrepresentations as well as concealment, at best, and outright fraud, at worst, resulting in a repudiation and total breach of the MOU and EI/Cove Creek Modification, which total breach consists of not only a breach of the COE's obligations under the EI/Cove Creek Modification, but also continuing breaches of the 1995 Lease. Restitution is necessary for justice to be served.

122. Defendant's misstatements and omissions of fact were material in nature.

123. Plaintiff asserts that these misstatements and omissions of fact were intentional.

124. However, even if any of these misstatements and omissions of fact were innocent rather than made with actual knowledge of falsity, rescission is still appropriate because the basis of Plaintiff's claim is not whether Defendant knew the misstatements and omissions of fact to be false or misleading, but, instead, whether the misstatements and omissions of fact purportedly made as true were believed to be true, made to induce reliance, and therefore deceived the party to whom they were made, *i.e.*, Plaintiff, who reasonably relied on same to Plaintiff's detriment as to the EI/Cove Creek Modification.

125. Similarly, even if Defendant's actions and inactions are not sufficiently proven to rise to the level of actual fraud (which exists in this case), constructive fraud is a sufficient ground for rescission.

126. Indeed, Plaintiff asserts that the making of a promise(s), which the promisor afterward fails, repudiates, or refuses to perform, amounts to fraud warranting rescission of the MOU and EI/Cove Creek Modification when the promise was made with no intention of performing it and with the intention that Plaintiff rely on same. Plaintiff did rely on Defendant's promise to perform and has suffered damages.

**Rescission Is an Appropriate Remedy Due to the Lack, Failure, or Inadequacy of Consideration of the Memorandum Of Understanding and EI/Cove Creek Modification.**

127. In addition or in the alternative, the foregoing facts reflect that there was an outright lack of consideration, at worst, and a failure or inadequacy of consideration in the MOU and EI/Cove Creek Modification, at best.

128. Specifically, Plaintiff submits that the proof will demonstrate there was an absence of consideration with respect to the MOU and EI/Cove Creek Modification, such that this alone is sufficient to warrant its cancellation.

129. Indeed, Plaintiff was induced to part with valuable property rights for what was essentially little or no consideration such that this Court should exercise its power to rescind the MOU and EI/Cove Creek Modification.

130. Alternatively or in addition, even if the lack of consideration alone was not sufficient to permit cancellation, when such facts are considered along with the fraud, duress, and mistake also inherent in the execution and Defendant's performance of the MOU and EI/Cove Creek Modification, justice demands that rescission is an appropriate remedy.

131. Alternatively or in addition, even if there was not an absolute lack of consideration, there was still a failure of consideration in this instance because Plaintiff, who promised to perform under the MOU and EI/Cove Creek Modification and, in fact, did perform, failed to materially receive from

Defendant the agreed *quid pro quo* for that performance. In other words, failure of consideration in this context means that the consideration for the contract, originally existing and good, has since become worthless and ceased to exist or, in the alternative, was entirely or partially extinguished through Defendant's actions or inactions.

132. Plaintiff submits that failure of consideration alone warrants rescission of the EI/Cove Creek Modification because the failure affects the entirety of or an essential part of the contract, defeats the object of the parties in entering into the contract, renders the object of the contract impossible to accomplish, or is as to such an essential part of the contract that it would not have been executed by Plaintiff had that failure of consideration been contemplated.

133. Even if failure of consideration alone would not independently warrant rescission in this case, Plaintiff submits that it is nevertheless appropriate because of other facts and circumstances (described *supra* and *infra*) demonstrating fraud, duress, and/or mistake by a party in a superior position as to power and knowledge for which Defendant is accountable.

134. Finally, in addition or in the alternative, Plaintiff submits that the facts of this case demonstrate that rescission of the EI/Cove Creek Modification is appropriate because of inadequate consideration.

135. However, even if the inadequacy of the contract, standing alone, were not sufficient to warrant rescission, cancellation should be ordered because of the presence of inequitable factors, such as fraud, duress, superior power or knowledge, and/or mistake, and these inequitable powers, in this instance, were over-reaching, grossly improper, and an abuse of power and discretion by Defendant.

136. Specifically, cancellation of the contract is warranted because the inadequacy of consideration at issue in this transaction was palpably gross, without considering the elements of bad faith.

**Rescission Is an Appropriate Remedy Due to Defendant's Use of Duress to Procure Plaintiff's Execution of the Memorandum Of Understanding and EI/Cove Creek Modification.**

137. In addition or in the alternative, Plaintiff submits that the evidence in this case will demonstrate that Defendant, with superior power to do so, employed duress to force Plaintiff's execution of the MOU and EI/Cove Creek Modification such that it is also a proper ground for cancellation of that instrument, provided Plaintiff receives adequate remedies.

138. As described above and as will be demonstrated at trial, Defendant's duress did not take the form of physical threats, but, rather, was comprised of wrongful conduct both actual in the present and implied in the future, under the semblance of legal authority and power which Defendant knew or reasonably should have known created a situation in which there was

an absence of any reasonable alternative for Plaintiff to the terms of the MOU and EI/Cove Creek Modification presented by Defendant.

139. Defendant's bad faith and conduct caused Plaintiff not to be provided with all of the relevant facts pertaining to the transaction in question, such that Plaintiff did not have a meaningful opportunity for investigation, deliberation, and reflection, including Plaintiff's financial distress and Defendant's superior power and knowledge.

140. This economic duress, coupled with Defendant's superior power and knowledge, should be remedied by rescission of the MOU and EI/Cove Creek Modification, among other things, as Plaintiff was harmed by Defendant's actions, and, if nothing else, because cancelling or rescinding of the MOU and EI/Cove Creek Modification obtained through duress will prospectively serve to prevent Defendant and others from engaging in wrongful acts which deny another the freedom of choice in contracting.

**Rescission Is an Appropriate Remedy Due to Mistake of Fact.**

141. In addition or in the alternative, Plaintiff submits that the evidence in this case will demonstrate that there was a material mistake of fact underlying the MOU and EI/Cove Creek Modification in this case (whether mutual or unilateral in nature) which warrants the contract be rescinded and other remedies be provided to make Plaintiff whole.

142. Indeed, the parties purported to enter into the MOU and EI/Cove Creek Modification, but, due to a mistake of fact, they did not meet as to all essential elements of the transaction such that no real contract was made by them, and the Court should, therefore, cancel the MOU and EI/Cove Creek Modification. The parties should be restored to their former positions, in particular, restore Plaintiff to the position Plaintiff would have enjoyed but for the mistake.

143. Plaintiff contends that the doctrine of mistake, under which an instrument may be rescinded based upon mutual or unilateral mistake of fact, need not be expressly proven but may be implied from the nature of the transaction, *i.e.*, such that it is not essential that any party be guilty of fraudulent or otherwise wrongful actions.

144. Specifically, Plaintiff believes that, to the extent that mistake may exist in this case, it was unilateral rather than mutual. However, Plaintiff contends that just because this material mistake may have only been made by one party to the agreement does not mean that it cannot constitute a ground for cancellation.

145. Indeed, rescission based upon unilateral mistake should still be ordered because it was necessarily carried out in the context of Defendant's fraud, duress, bad faith, and generally inequitable conduct.

146. This is especially the case given the facts that such unilateral mistake was not due to negligence, fault, or lack of due care on Plaintiff's part, nor can the mistake be traced to any prior knowledge of or notice to Plaintiff.

147. With all of this in mind, the fact is that this unilateral mistake was related to a material feature of the MOU and EI/Cove Creek Modification occurred notwithstanding the exercise of reasonable care by Plaintiff, is of such a consequence that finding the MOU and EI/Cove Creek Modification is valid would be unconscionable, and rescission can take place in such a way that Defendant can be placed in the *status quo* and will only lose the benefit of its bargain, which Plaintiff asserts is nill.

148. In addition or in the alternative, even if the mistake as to the contract in this case was, instead, mutual rather than unilateral, the MOU and EI/Cove Creek Modification may still be cancelled. Indeed, the mistake was material itself or related to a material fact, was substantial or fundamental in nature, concerned a basic assumption upon which both parties made the agreement, or frustrated the intention of the parties or the object of the agreement.

149. Moreover, as described previously, the mistake generally related to a present fact or understanding in existence at the time of the MOU and EI/Cove Creek Modification rather than a mere prediction about future events or contingencies.

150. Such mistake destroyed the necessary meeting of minds for formation of the MOU and EI/Cove Creek Modification or, alternatively, resulted in an agreement that defeated the intended bargain of the parties. In other words, to the extent that the mistake was mutual rather than unilateral, the mutual mistake which supports rescission of the contract in this instance is one in which both parties did what neither intended to do.

**Relief Requested Under Plaintiff's Rescission Claim**

151. Plaintiff stands ready to tender back, if anything, that which Plaintiff received under the MOU and EI/Cove Creek Modification that it seeks to rescind.

152. Plaintiff submits that absolute and literal restoration is not required for rescission if all that is reasonably possible is done, only substantial rather than exact restoration of the status quo is required. Moreover, Plaintiff contends that cancellation may be granted without complete restoration to Defendant if the circumstances indicate that would be a more equitable result.

153. Accordingly, in seeking rescission of the MOU and EI/Cove Creek Modification as against Defendant, Plaintiff stands ready to restore Defendant as far as possible to the position that it occupied before the transaction in question occurred.

154. An equitable remedy should likewise be fashioned to make Plaintiff whole, which would include at a minimum the lost revenues from Eden Isle Marina and the lost years on the lease for Plaintiff.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

155. Plaintiff restates and realleges each and every allegation contained herein as if fully set forth herein.

156. In the event that rescission is not a proper remedy in this case, Plaintiff asserts, alternatively, that Defendant breached the parties' contract by and through multiple means, both express and implied, with said breach being continual.

### Defendant's Breach of the 1995 Lease, Memorandum Of Understanding, and EI/Cove Creek Modification (Collectively "the Contract")

157. To form an agreement binding upon the government, there must be the following: (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) a government representative to bind the United States in contract. For purposes of Plaintiff's additional or alternative breach of contract claim, Plaintiff alleges that such elements exist in this instance as reflected by the above facts.

158. Morever, to the extent that rescission is not warranted in this case, the foregoing factual allegations plainly reflect that the contract was between Plaintiff and Defendant, that Plaintiff performed its obligations under the

contract, that Defendant failed and refused to perform its own obligations under the contract, that Defendant has not been excused or otherwise discharged from performing its obligations under the contract, and that Plaintiff has suffered substantial damages as a result.

159. In the event Defendant now performs or attempts to perform, Defendant is too late because Defendant had both reasonable time and opportunity, and Defendant did not perform its obligations; therefore, there has been a total breach of contract which resulted in Plaintiff suffering damages.

## Defendant's Anticipatory Breach of the Contract

160. In addition or in the alternative, Defendant's actions and inactions amount to an anticipatory breach of contract, which allows the aggrieved party, Plaintiff, to treat the entire contract as broken and immediately entitles Plaintiff to sue for breach. That is, to the extent that Defendant may theoretically still be held to a promise to perform in the future, Defendant's words and actions have evidenced an intention to refuse to perform in the future.

161. More specifically, in unjustifiably renouncing the parties' contract, Defendant has manifested and declared a positive and unequivocal intent to refuse to perform at a future time. Defendant's refusal to perform relates to the entire contract or, alternatively, to a promise or obligation going to the whole consideration, and this refusal is so distinct and unqualified that it is futile for Plaintiff to further proceed.

162. In other words, the evidence (as described above) will show that Defendant has repudiated the parties' contract notwithstanding that its time for performance may not yet have technically arrived (*i.e.*, the lease term has not yet ended), and such repudiation, which repudiation was concealed by Defendant and only recently discovered, essentially amounts to a breach or the tender of a breach of the contract.

163. Plaintiff performed all conditions up to the time of Defendant's repudiation and undertook performance. Plaintiff was ready, able, and willing to complete performance pursuant to the contract, except for Defendant's expressed and unequivocal repudiation that was never retracted.

164. For these reasons, Plaintiff elects to treat Defendant's repudiation of the contract before the time for performance as a complete, total, and unequivocal breach and to sue for damages. In the alternative, Plaintiff submits that this is yet another ground for rescission of the contract, such that the agreement should be cancelled, and the parties should be restored to the *status quo* prior to entering into the contract in addition to the other remedies to make Plaintiff whole.

165. As a result of Defendant's repudiation, Plaintiff has suffered substantial damages. Indeed, Defendant's obligation to pay damages for a total breach should not be excused as Plaintiff had the willingness and ability to

perform before Defendant's repudiation and, in fact, would have completely performed absent the repudiation.

**<u>Defendant's Breach of Contract via</u>**
**<u>Violation of Its Implied Duties Under the Contract</u>**

166. In addition or in the alternative, Defendant had multiple implied duties under the parties' contract which the above facts reflect and the evidence will prove Defendant violated. These duties are all interrelated, but include and are not necessarily limited to the following: a duty of good faith and fair dealing; a duty to cooperate and not hinder, delay, interfere with, or increase the cost of performance; and a duty to disclose vital information.

167. First, a party's breach of the implied covenant of good faith and fair dealing deprives the other party of the benefits of the contract. This duty has been held to apply to Defendant just as it applies to private parties, it imposes obligations on both parties not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party with regard to the object of the contract.

168. Claims of a breach of the implied covenant of good faith and fair dealing, as well as claims that the duties to cooperate and not hinder performance of a contract have been breached, are to be treated like any other claim for breach of contract.

169. Government officials have been deemed not to be entitled to a presumption of good faith with respect to such claims, and neither proof of fraud, quasi-criminal wrongdoing, or even bad intent are required showings.

170. The above-described facts demonstrate that Defendant breached its duty of good faith and fair dealing in connection with its performance of its contract with Plaintiff.

171. Similarly, while the implied duties to cooperate and not to hinder are two separate, albeit related, implied duties, Plaintiff submits that they are different aspects of Defendant's overarching duty of good faith and fair dealing. Breaches of the former have been found, for example, when Defendant has responded to a contractor's requests in an evasive or untimely manner, and breaches of the latter have been found, for instance, with respect to government actions that are unreasonable under the circumstances and therefore constitute a breach. Defendant violated these duties with respect to its contract with Plaintiff.

172. Finally, related to Defendant's duties to cooperate and not hinder or impede performance of the contract is the duty to affirmatively disclose vital information of which the contractor is ignorant.

173. As described above, Plaintiff undertook performance of the contract without vital knowledge of all relevant facts relating to various aspects of the agreement, and Defendant was aware that Plaintiff had no knowledge of

and no reason to obtain such information and continually relied upon Defendant's statement and fair dealing.

174. This lack of information had the effect of misleading Plaintiff (and Plaintiff was not on notice of a need to inquire), such that Defendant breached this implied duty under the parties' contract causing substantial damages to Plaintiff.

**Defendant's Tortious Breach of Contract via Its Misrepresentations and Negligence**

175. In addition or in the alternative, as described above, Defendant tortiously breached the parties' agreement by engaging in wrongful conduct with respect to its contractual obligations.

176. Likewise, Plaintiff's present claims against Defendant are, in part and in substance, a claim for breach of contract by misrepresentation or negligence (or both).

177. Specifically, Defendant impliedly warrants the accuracy of matters set forth in contractual documents, and misrepresentation occurs when Defendant misleads Plaintiff and other contractors by making negligently untrue representation of fact or fails to disclose information that it has a duty to disclose.

178. Defendant made such misstatements and omissions of fact to Plaintiff, and Defendant should be held liable for damages attributable to these misrepresentations and omissions of fact. These misrepresentations and

omissions of material fact were honestly and reasonably relied upon to Plaintiff's detriment, and, in doing so, Defendant withheld information when it had superior knowledge of that information and a duty to disclose it to Plaintiff, especially when it was unknown by and not reasonably available to Plaintiff.

179. This is especially the case since there is no scienter requirement associated with a claim for breach of contract by misrepresentation and because even positive but erroneous representations in a contract are not rendered innocuous merely because they might be due to negligence or inadvertence as opposed to bad faith or gross error.

180. Contractual terms susceptible to a misleading reading or implication subject Defendant to liability when a contractor who has been misled by the term suffers injury, and contracts are construed most strongly against the drafter, *i.e.*, Defendant in this case.

181. Plaintiff suffered damages as a result of Defendant's tortious breach of contract via its above described misrepresentations, omissions of fact, and/or negligence.

182. As a result of Defendant's continuing breaches of contract and violations of its express and implied contractual duties, by and through the various means described above, Plaintiff has suffered substantial damages.

**THIRD CAUSE OF ACTION**
**TAKING WITHOUT COMPENSATION**
**IN VIOLATION OF THE FIFTH AMENDMENT**

183. Plaintiff restates and realleges each and every allegation contained herein as if fully set forth herein.

184. In addition or in the alternative, Plaintiff should be entitled to an award of just compensation due to Defendant's taking of its property.

185. Specifically, no person shall be deprived of his property without due process of law, and, while the Takings Clause of the Fifth Amendment to the United States Constitution does not prohibit governmental taking of private property, it does place a condition upon the exercise of that power in that just compensation must be paid to the owner whose property was taken.

186. The COE, as a department of the United States Government, is authorized to hold title to property.

187. Plaintiff alleges that, as a lessee of certain property, albeit to which Defendant owns and holds title, Plaintiff nevertheless enjoys property rights which gives it standing to both bring a takings claim against Defendant and entitle it to just compensation. Indeed, where governmental action amounts to a taking because it effectively extinguishes a leasehold interest for a period of years, the Just Compensation Clause of the Fifth Amendment requires that the government pay the property owner for the value of the property during that period.

188. Similarly, contracts and contractual obligations have been deemed to constitute property, under takings jurisprudence as enforceable contract rights, can provide the necessary property right in support of a Fifth Amendment takings claim.

189. Plaintiff had a vested real property interest in its leasehold estate at Eden Isle Marina including a right to possess and fully develop the leasehold interest with which Defendant interfered.

190. Plaintiff had a vested real property interest in its leasehold estate at Cove Creek including a right to possess and fully develop the leasehold interest with which Defendant interfered.

191. The real property rights taken by the COE are independent of contractual rights.

192. Defendant's actions constitute a taking of Plaintiff's contract and real property interests at Eden Isle Marina without compensation.

193. Defendant's actions constitute a taking of Plaintiff's contract and real property interests at Cove Creek without compensation.

194. Defendant has taken the leasehold interests from Plaintiff, having the power and authority to do so, without just compensation.

195. The policy underlying the Takings Clause of the Fifth Amendment is that the property owner should be made whole after its property is taken.

Plaintiff, therefore, requests just compensation to be assessed as of the time of the subject taking.

196. Plaintiff contends that the protection against takings without compensation is not restricted to physical invasions, occupations, or removals of property, as, in some cases, regulatory actions can create an unconstitutional taking. That is, a regulatory taking may occur when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property, such as when an owner's freedom to make use of their property is radically curtailed.

197. In this instance, as reflected by the above-described facts and as will be demonstrated, Defendant's regulatory actions with respect to Plaintiff's property rights created a compensable taking because Defendant's interference went too far. Defendant's actions effectively forced Plaintiff to bear public burdens which, in all fairness and justice, should have been borne by the public as a whole.

198. Plaintiff submits that the individual circumstances of this case demonstrate that Plaintiff's claim of a compensable taking exists in light of the following: (1) the character or nature of Defendant's actions; (2) the severity of its economic impact; (3) the degree of Defendant' s interference with Plaintiff's reasonable investment-backed expectations; and (4) the duration of the interference and restrictions.

199. Defendant has unduly burdened the property interests of Plaintiff by government regulations thereby depriving Plaintiff from its property interests at Eden Isle Marina and Cove Creek, all without just compensation.

200. The just compensation to which Plaintiff is entitled in this instance stems from Defendant's actual interference with, or disturbance of, Plaintiff's property rights as opposed to merely consequential or incidental injuries and trivial or insignificant takings or interferences. This interference was, with respect to Plaintiff's rights of ownership, use, enjoyment, and other rights, incident to real and personal property.

201. Defendant's actions in this case were not the product of mere indirect encroachments upon Plaintiff's property rights through the proper exercise of governmental powers. Rather, Defendant's regulatory actions, instead, constitute a taking because they denied Plaintiff all economically beneficial or productive use of the property. Again, while property can be regulated to a certain extent, if such regulatory actions go too far, as was the case in this instance, they will be recognized as a taking within the meaning of the Just Compensation Clause of the Fifth Amendment.

202. Even if Defendant defends on the basis that its actions did not have a permanent effect, Plaintiff alleges that a taking need not be permanent in order to be compensable. Indeed, Defendant is constitutionally obligated to

compensate property owners for the taking of their property when they are even temporarily denied all economically viable use of their property.

203. Significantly, in such instances, an owner of property is entitled to compensation for the period before the regulation effects a taking of property, and no subsequent action by the government can relieve Defendant of the duty to provide compensation for the period during which the taking was effective.

204. In seeking relief for Defendant's above-described taking of Plaintiff's property, Plaintiff submits that an award of just compensation should be determined using the following factors: (1) the compensation should be designed to place Plaintiff in a position as good as, but no better than, the position that Plaintiff was in before the taking occurred; (2) valuation requires an assessment of both the property's present use and the highest and best use to which the property may be put; (3) to achieve just compensation, Plaintiff is necessarily entitled to the value of its property and contractual rights at the time that it was taken; and (4) just compensation should be measured by the loss and damage to Plaintiff, *i.e.*, what it lost, rather than by any benefit to Defendant during the requisite time period.

205. Moreover, in making Plaintiff whole, the focus of any award of just compensation should not be the amount of Plaintiff's investment but, rather, the value of the interest and potential interest in Plaintiff's property that was taken by Defendant.

206. Just compensation necessarily includes an element of reasonable interest, to compensate Plaintiff for the loss of the economic value of its property, and to place Plaintiff in a position as good as but not better than the position that Plaintiff was in before the taking occurred.

207. Plaintiff had a vested contract right, and therefore, had a business expectancy to receive revenues from the development of its leasehold interest at Eden Isle Marina, rights with which Defendant interfered.

208. Plaintiff had a vested contract right, and therefore, had a business expectancy to receive revenues from the development of its leasehold interest at Cove Creek, rights with which Defendant interfered.

209. Defendant's actions constitute a taking of Plaintiff's contract and real property interests at Eden Isle Marina without compensation.

210. Defendant's actions constitute a taking of Plaintiff's contract and real property interests at Cove Creek without compensation.

211. Plaintiff is entitled to just compensation for taking Plaintiff's personal and real property in an amount not yet determined but estimated to be in excess of $6,000,000.00, consistent under applicable law.

212. Plaintiff demands a jury trial to the extent that one may be available under applicable law.

**REMEDIES REQUESTED**

Plaintiff requests the following remedies in whole or in part:

A. Rescind the MOU, EI/Cove Creek Modification and order the COE to reinstate the approximate 1,078 feet of shoreline in Plaintiff's leasehold area at Eden Isle Marina with sufficient area in the water to develop; allow Plaintiff to develop this leasehold; extend Plaintiff's lease as to Eden Isle Marina for the time in which Plaintiff has not been permitted to develop pursuant to the true contractual obligations of the parties beginning in 1995 to present; award damages sufficient to make Plaintiff whole; order the COE to extend the 1995 Lease for 25 years provided Plaintiff is in compliance with its obligations;

B. Plaintiff receive reliance or compensatory damages in an amount not yet determined but estimated to be in excess of $6,000,000.00;

C. Plaintiff be compensated for the real and personal property taken without compensation as to Eden Isle Marina;

D. Plaintiff be compensated for the real and personal property taken without compensation as to Cove Creek;

E. Plaintiff be placed in a position it would have been in but for the wrongful actions of the COE;

F. The COE be ordered to perform EI/Cove Creek Modification at a time certain, grant damages for restitution, and be ordered to extend EI/Cove Creek Modification for the entire time Plaintiff has not been able to develop due to the COE's breach and other wrongful acts;

G. Plaintiff be awarded pre-judgment and post-judgment interest at the maximum rates allowable by law in order to fully compensate Plaintiff for the loss of its money and property;

H. Plaintiff be awarded attorney fees and costs;

I. Plaintiff be granted the lease that it thought it bargained for but never actually received, *i.e.*, Plaintiff should be granted a 25 year lease renewal commencing on the date that Plaintiff is granted relief in this action, utilizing the same graduated rental system terms as are presently in effect;

J. A remedy will be fashioned which will make Plaintiff whole as a result of Defendant's actions and inactions.

*Respectfully submitted,*

THE McMULLAN LAW FIRM
P. O. Box 2839
Little Rock, AR 72203-2839
(501) 376-9119
(501) 376-8437 (fax)

By:________________________
Marian Major McMullan
(mmcmullan@mcmullanlawfirm.com)
Kelly Halstead
(khalstead@mcmullanlawfirm.com)

AND

JAMES & HOUSE, P.A.
801 W. Third
Little Rock, AR 72201
(501) 372-6555
(501) 372-6333 (fax)

By:________________________
Patrick R. James
(pjames@jamesandhouse.com)
Matthew R. House
(mhouse@jamesandhouse.com)

Dated: February 21, 2007