# EXHIBIT E – TABLE

| Document Description | Counsel's Role and Syllabus | Bates No. | Depo Ex. |
|---|---|---|---|
| Email dated 2/11/1998 | R.E. Rogers to be kept informed on EIM suit against one Eden Isle property owner. | ATOKA 40; COE EI 279 | Ex. 116 |
| Facsimile Transmittal Header Sheet dated 5/8/98 | Nancy Brooks, attorney for Corps R.E. Division, re: Lancaster email. Corps issued cease & desist. Plaintiff asserts Corps knew cease & desist unlawful but would not lift without Plaintiff signing MOU. | CIV 97-35 0259-260 | Ex. 127 |
| Email dated 9/1/1998 | Ralph Allen and Nancy Brooks, attorneys for Corps, Little Rock, directed to attend meeting called by Col. Holden re: EIM's request for development of lease area. Plaintiff has asserted Corps structured a proposal (MOU) under false pretenses knowing there was no basis to deny Plaintiff's expansion. | HS COE 775 | Ex. 163 |
| Memorandum for Commander dated 9/10/1998 | Ralph Allen OC advises Col. Holden that LR Dist. Corps has no legal basis to deny expansion request by EIM. Contains facts, not opinions, Corps has denied in this litigation. Shows as true facts those which Government denies in this litigation. Also shows Corps' knowledge of true facts prior to its misrepresentation to Plaintiff re: MOU, among other things. | COE EI 4893 | Ex. 170 |
| Chain of emails ending 11/23/1998 | R.E. Rogers OC SWL is copied on subject of Congressman Berry and ASA CW Lancaster re: Eden Isle. Plaintiff asserts Corps wrongfully bent to please congressional delegates in obtaining MOU. Corps knew Congressional delegates did not have all of the true facts. Corps did not reveal true facts. | ATOKA 79; COE LIT 01551 | Ex. 23 |
| Briefing Paper 12/1/98 (est. date) | Author unknown but believed to be Brooks, RE Div. Corps Counsel. Plaintiff asserts Corps misrepresented reasons Plaintiff had to agree to MOU. Contents of this document will be shown to demonstrate Corps' secret strategy based upon falsehoods to deny EIM's expansion and persuade Plaintiff to sign MOU. | COE EI 173-176; ATOKA 98-100 | Ex. 115 |

EXHIBIT

tabbies

E

| Document Description | Counsel's Role and Syllabus | Bates No. | Depo Ex. |
|---|---|---|---|
| Untitled, undated document (12/1/98 est. date) | Author unknown but may be Brooks, RE Div. Corps Counsel. Plaintiff asserts Corps misrepresented reasons Plaintiff had to agree to MOU. Contents of this document will be shown to contain false facts the Corps told Plaintiff to force Plaintiff to sign MOU knowing Plaintiff fully entitled to expand without MOU. | PB LR 00079-81; PB LR 00084; PB LR 00085-00088 | N/A |
| Untitled Memo (est. date 12/1/98) | Appears to have been written by counsel. Gives counsel's advice re: EI's request for development should be granted and Congressman Berry told Corps acting on advice of counsel. Plaintiff asserts Corps continually represented to Plaintiff Corps was acting with legal basis and Corps had complete discretion. | PB LR 00090 | Ex. 153 |
| Email dated 1/21/1999 | Ralph Allen OC copied re: Sen. Lincoln's call on EIM expansion request. Advised of meeting with EIPOA and their attorneys. Plaintiff has asserted Corps wrongfully bent to political pressure. | COE EI 778 | Ex. 169 |
| Document "Meeting with Eden Isle Landowners – 1/28/1999" | Ralph Allen OC SWL and Nancy Brooks, attorney, attends meeting with Eden Isle Board for POA immediately preceding Plaintiff signing MOU. Plaintiff asserts Corps wrongfully sought to appease powerful and influential property owners of Eden Isle and wrongfully sought approval of non-parties to the lease. | COE EI 465; CIV 97-35 0194 | Ex. 98 |
| Memorandum for Record dated 1/29/1999 | Subject: Ralph Allen OC SWL did not return complete files (13) immediately preceding date of MOU. Plaintiff has asserted concealment and possibly destruction of evidence. | ATOKA 985 | Ex. 79 |
| Chain of emails ending 2/2/1999 | Congratulates Corps counsel for getting MOU signed. Plaintiff asserts the MOU was a victory for Corps based upon appeasing politicians and EIPOA. | HS COE 604 | Ex. 172 |
| Memorandum for Commander dated 2/3/1999 | Ralph Allen OC SWL copied re: authority needed on MOU. | HS COE 600 | Ex. 70 |

| Document Description | Counsel's Role and Syllabus | Bates No. | Depo Ex. |
|---|---|---|---|
| Memorandum to Whom It May Concern dated 2/11/1999 | Document is authored by Ralph Allen, counsel for Corps. Relates to commercial docks allowed but not private docks. | WAL – 0061;<br>PB LR 00075 | Ex. 173 |
| Letter dated 2/24/1999 to attorney for EIPOA | OC for Corps is copied reviewing terms of agreement ("MOU"). Plaintiff has asserted Corps wrongfully appeased EIPOA because of their strong power politically. | PB LR 00013-0014;<br>ATOKA 81-82;<br>COE EI 709-710 | N/A |
| Email dated 8/9/2000 | Rupert Jennings, OC HQ, requests legal opinion on MOU and asks for assistance from other Corps attorneys, including Nee, Norman and Jones. Discusses legal commitments owed by Corps to Plaintiff as to Cove Creek and funding. Plaintiff asserts Corps continued to make misrepresentations to Plaintiff as to Corps' inability to perform. | ATOKA 21;<br>HS COE 630 | Ex. 187 |
| Memorandum for CBCC-ZA dated 8/11/2000 | Rupert Jennings, OC HQ, requests legal opinion on MOU and asks for assistance from other Corps attorneys, including Nee, Norman and Jones. Discusses legal commitments owed by Corps to Plaintiff as to Cove Creek and funding. Plaintiff asserts Corps continued to make misrepresentations to Plaintiff as to Corps' inability to perform. | PB HS 00084-0085;<br>ATOKA 65-66 | Ex. 188 |
| Issue Paper by Nancy Brooks, attorney (9/15/00 est. date) | Brooks, RE Div. Counsel for LR Dist. Corps, responds to EIG stating Corps waiting on Congressional Add, which Plaintiff asserts is a misrepresentation to superior officers. Plaintiff asserts other misrepresentations contained in this document. | COE EI 906-909;<br>PB LR 00003-0006;<br>PB LR 00095-00097 | Ex. 189 |
| Chain of emails ending on 9/20/2000 6:57 AM | Summary of conference call Susan Nee OC-HQ on MOU re: "as funds become available." Ralph Allen OC SWL is copied. Directly relevant to breach and misrepresentation claims by Corps to Plaintiff as to Cove Creek. | EDEN 65;<br>HS COE 620 | Ex. 2 |

| Document Description | Counsel's Role and Syllabus | Bates No. | Depo Ex. |
|---|---|---|---|
| Chain of emails ending 9/20/2000 8:53 AM | Part of Ex. 2 above with Corps intentions: **"We should budget for this, but it will always be deferrable."** This is document Plaintiff obtained which is more complete than Ex. 2 above that Government produced, that did not have "it will always be deferrable" language. Directly related to all of plaintiff's claims as to Cove Creek. | ATOKA 72; HS COE 619 | Ex. 3 |
| Greers Ferry Teleconference Agenda dated 11/1/00 | Susan Nee OC HQ discusses performance by Corps of MOU and whether plaintiff has been informed. Plaintiff has asserted Corps, in bad faith, willfully withheld information from Plaintiff among other wrongful acts. | COE EI 893 | Ex. 104; Ex. 190 |
| Chain of emails ending 4/2/2001 | IG issues a report and Corps is put on notice of its obligation to perform. Document produced by Government in discovery. Plaintiff asserts a continuing misrepresentation and breach, all of which resulted in plaintiff's loss of leasehold. | EDEN 133-134; HS COE 631 | Ex. 8 IG |
| Chain of emails ending 4/9/2001 | Ralph Allen OC SWL copied re: necessity of EA at Cove Creek and Corps' potential breach of MOU. Document produced by Government in discovery. | EDEN 135; HS COE 652 | Ex. 9 |
| Chain of emails ending 10/21/2004 | IG is subject and discussed. Plaintiff asserted concealment on part of Corps, misrepresentation, and continuing breach. IG asks why Cove Creek still not performed. | EDEN 145-146; HS COE 709 | Ex. 11 |
| Chain of emails ending 12/15/2004 | Subject is EIG call on Cove Creek road. Intent to tell IG ("Mr. Jones") Cove Creek will continue to compete (with other projects). Plaintiff asserts misrepresentation, bad faith, anticipatory breach, and concealment, among other things. | EDEN 142; HS COE 707 | Ex. 12 |
| | | | |

**From:** Thomas Park
**To:** SWLD05.NT05.TRISHER
**Date:** 2/11/98 9:18am
**Subject:** meeting at Eden Isle Marina

See attached notes re: meeting. Recommend furnishing Col. Morris a copy. It appears the Corps will be involved more in the lawsuit, as time passes. Would suppose several of us will be asked to give depositions re: any knowledge we have of happenings.

Billy Cabe is to coordinate with Ofc of Counsel. Suggest R.E. Rogers may want to be prepared for this.

I would appreciate any guidance he can provide for future contacts with Mr. Walter's attorneys.

I think they are working on how did ASA Mr. Lancaster get involved, was it a proper use of his position, etc. One of the attorneys stated he had spoken with a LTC that accompanied Mr. Lancaster to Eden Isle, and that the LTC eluded his questions, gave him a fictious address to mail correspondence to, and advised the attorney he would refuse to talk with him. I guess that is like siccing a pit bull on a dachsund!

**CC:** SWLD04.NT02.BCABE, SWLD04.NT02.RROGERS, SWLD04.NT0...

EXHIBIT NO. 116

DO NOT PRODUCE

**From:** Thomas Park
**To:** SWLD05.NT05.TRISHER
**Date:** 2/11/98 9:18am
**Subject:** meeting at Eden Isle Marina

See attached notes re: meeting. Recommend furnishing Col. Morris a copy. It appears the Corps will be involved more in the lawsuit, as time passes. Would suppose several of us will be asked to give depositions re: any knowledge we have of happenings.

Billy Cabe is to coordinate with Ofc of Counsel. Suggest R.E. Rogers may want to be prepared for this.

I would appreciate any guidance he can provide for future contacts with Mr. Walter's attorneys.

I think they are working on how did ASA Mr. Lancaster get involved, was it a proper use of his position, etc. One of the attorneys stated he had spoken with a LTC that accompanied Mr. Lancaster to Eden Isle, and that the LTC eluded his questions, gave him a fictious address to mail correspondence to, and advised the attorney he would refuse to talk with him. I guess that is like siccing a pit bull on a dachsund!

**CC:** SWLD04.NT02.BCABE, SWLD04.NT02.RROGERS, SWLD04.NT0...

TV

# FACSIMILE TRANSMITTAL HEADER SHEET

For use of this form, see AR 25-11, the proponent agency is OOISC4

| | COMMAND/ OFFICE | NAME/ OFFICE SYMBOL | OFFICE TELEPHONE NO. (AUTOVON/Comm.) | FAX NO. (AUTOVON/Comm.) |
|---|---|---|---|---|
| FROM: | Greers Ferry | CESWL-GF | 501-362-2416 | 501-362-0226 |
| TO: | Ms. Nancy Brooks | CESWL-DO | 6876 | |

| CLASSIFICATION | PRECEDENCE | NO. PAGES (Including this Header) | DATE-TIME | MONTH | YEAR | RELEASER'S SIGNATURE |
|---|---|---|---|---|---|---|
| | | 2 | 8/0747 | 5 | 98 | Mike Jaso |

REMARKS

Attached is copy of E-mail as requested.

Space Below For Communications Center Use Only

DA FORM 3918-R, JUL 90 DA FORM 3918-R, AUG 72 IS OBSOLETE

8 may/0740

Ms Nancy Brooks called and requested we fax a copy of Col Morris E-mail; reference about someone calling Mr. Lancaster. —

EXHIBIT NO. 122

fax # 334-7166

Mike

EXHIBIT plaintiff's "C"
CIV 97-35
0259

From: Philip Morris
To: BCABE, SWLD16.GRE_PO.TPARK
Date: 10/24/96 10:10am
Subject: Mr. Lancaster's Call on Eden Isle Marina

Mr. Lancaster just called to tell me that he just got a call from someone in Heber Springs complaining that Mr. Walters was adding twelve slips to his marina. Mr. Lancaster and I had the understanding that no slips, except the six houseboat slips, had been approved for the marina and nothing was to be done until after the election in November due to the sensitive nature of the activity.

I called Tommy Park to have his staff quickly verify what was happening at the Marina. He will call back in an hour. I discussed the situation with Billy Cabe and Anthony Ragar, who confirmed my understanding of what Mr. Walters situation was. I advised them that if Mr. Walters was doing something we had not approved, we must firmly deal with him to assure compliance, and I would have to update Mr. Lancaster ASAP.

More to follow when Tommy calls in with an update.

CC: COP.KTHONEN, COP.DLEGGET

EXHI
Plaintiff

CIV 97-35
0260

**Park, Thomas S SWL**

**From:** McDonald, Darlene J SWL
**Sent:** Tuesday, September 01, 1998 11:02 AM
**To:** Holden, Thomas A Col SWL; Hoffmann, Kurt G LTC SWL; Watford, Edward R SWL; Miller, Michael E SWL; Leggett, Dale SWL; Park, Thomas S SWL; Lyon, Kenneth H SWL; Allen, Ralph H SWL; Faletti, Bob G SWL; Brooks, Nancy B SWL; Ragar, Anthony F SWL
**Subject:** Eden Isle Marina

A meeting to deal with the issues of the proposed expansion plan of Eden Isle Marina is scheduled for 2:00 p.m., Thursday, 10 Sep 98, in the 7th floor training rooms, #7006 & #7008.

Please plan to attend.

Thanks,

Billy

I have advised
I will attend,
T

EXHIBIT NO. 163
HUFFMAN & ROBINSON, INC.
COURT REPORTERS



HS COE 775

CONFIDENTIAL/PROTECTED INFORMATION
ATTORNEY WORK PRODUCT
DO NOT RELEASE OR COPY

CESWL-OC (RHA)

10 September 1998

MEMORANDUM FOR COMMANDER

ISSUE: Eden Isle Dock Expansion

1. PROS:
- No legal reason for denial
- Will lose a lawsuit and may pay big damages or lost profits
- Marinas reduce lake-wide private dock pressure
- Will provide future expanded service to the public, per ER 405-1-12, at p. 8-90.
- Owner already has 150+ requests for future boat slips
- This expansion has been planned for 20+ years at this site
- Local residents have always been able to check with Resident Office and learn about this expansion
- Present marina owner has relied on Corps representations that he can expand in the future (he bought marina in 1995)
- Corps in the past has recommended this southern area for expansion
- Eden Isle owner has been a good operator
- If denied, negative effect on marina owners association
- No other marina owner is known in this district to have been denied permission to expand in owner's existing lease area.
- Owner has a $500,000 bank letter-of-credit for expansion (positive steps taken)
- Reed Apple Properties advertises this marina as a positive feature!

2. CONS:
- Some local residents are against this plan.
- Increased boat slips does mean increased traffic — 25% [illegible]
- Former ASACW (Lancaster) was against this expansion
- House Representative may be against this expansion.
- Moving this marina is too expensive and not a real option.
- Regulatory review if any parking on public land

3. OTHER THOUGHTS:
- Since marina and plan were their first, no decreased value on nearby property owners
- Private launch ramp remains unless marina owner is moved; this ramp is a benefit to the community.
- No known safety problems with this request

4. LEGAL RECOMMENDATION:
Office of Counsel finds no legal basis for denial of Eden Isle Marina owner's request for expansion in the southern area of this marina lease. *Recommend approval of request* and that facts, maps, and request should be copied and quickly explained to the Congressional delegation and USACE-HQ along with the expected decision to grant the request. A public meeting is not required, but some type of public forum may be helpful.

DISTRIBUTION:
Original -- District Engineer ✓
First Copy -- Real Estate, Attorney
Second Copy -- Office of Counsel

EXHIBIT NO. 170
HUFFMAN & ROBINSON, INC.
COURT REPORTERS

**Park, Thomas S SWL**

| | |
|---|---|
| **From:** | Miller, Michael E SWL |
| **Sent:** | Monday, November 23, 1998 8:50 AM |
| **To:** | Park, Thomas S SWL |
| **Cc:** | Risher, Thomas P SWL |
| **Subject:** | FW: Cong. Berry/ASA CW Response for Eden Island |
| **Importance:** | High |

congletter.doc

-----Original Message-----
From: Hoffmann, Kurt G LTC SWL
Sent: Friday, November 20, 1998 2:00 PM
To: Throop, William H COL SWD
Cc: Holden, Thomas A Col SWL; Watford, Edward R SWL; Cabe, Billy G SWL; Miller, Michael E SWL; Rogers, R E SWL; Mathews, Beverly C SWL; Rash, Kay A SWL
Subject: Cong. Berry/ASA CW Response for Eden Island
Importance: High

Sir,

Attached is the SWL response to Cong Berry's note about Eden Island for use by USACE/ASA CW offices.

I did not send this to either of those offices, but mr George Tabb, OPS, USCAE is late responding to ASA CW on a 18 NOV suspense (not our fault, he only told us TODAY). We told Mr Tabb today at the conclusion of our conference call, we would route our response back to him through our Command channels. he is really hoping to see this today.

Please let me know if we need to dress this up or if it is good as is.

Will you forward it or should we?

VR
LTC Hoffmann

EXHIBIT 23
PENGAD 800-631-6989

[illegible]

W

DO NOT PRODUCE 1 +1A a T

ATOKA 79

**Park, Thomas S SWL**

| | |
|---|---|
| **From:** | Miller, Michael E SWL |
| **Sent:** | Monday, November 23, 1998 8:50 AM |
| **o:** | Park, Thomas S SWL |
| **Cc:** | Risher, Thomas P SWL |
| **Subject:** | FW: Cong. Berry/ASA CW Response for Eden Island |
| **Importance:** | High |

congletter.doc

-----Original Message-----
From: Hoffmann, Kurt G LTC SWL
Sent: Friday, November 20, 1998 2:00 PM
To: Throop, William H COL SWD
Cc: Holden, Thomas A Col SWL; Watford, Edward R SWL; Cabe, Billy G SWL; Miller, Michael E SWL; Rogers, R E SWL; Mathews, Beverly C SWL; Rash, Kay A SWL
Subject: Cong. Berry/ASA CW Response for Eden Island
Importance: High

Sir,

Attached is the SWL response to Cong Berry's note about Eden Island for use by USACE/ASA CW offices.

I did not send this to either of those offices, but mr George Tabb, OPS, USCAE is late responding to ASA CW on a 18 NOV suspense (not our fault, he only told us TODAY). We told Mr Tabb today at the conclusion of our conference call, we would route our response back to him through our Command channels. he is really hoping to see this today.

Please let me know if we need to dress this up or if it is good as is.

Will you forward it or should we?

VR
LTC Hoffmann

COE LIT 0155

Briefing Paper on Eden Isle Marina, Greers Ferry Lake, Arkansas

---

The owner of Eden Isle Marina has requested permission to construct an addition to an existing dock and three new docks within the limits of his existing lease area. The residents of Eden Isle oppose any additional docks.

Past History - Eden Isle is an exclusive residential development and the marina is one of two in the Little Rock District not located in a Corps park. The marina has existed since 1963. The area in question has been under lease since 1980.

Ownership - Developers owned the marina, the Red Apple Inn, the undeveloped lots and golf courses until approximately 1992. At that time, Mr. Richard (Dick) Upton purchased the Inn, undeveloped lots and the golf course. Mr. Ronnie Walters outbid Mr. Upton and purchased the marina for $1.5 million in 1995.

Both Mr. Upton and Mr. Walters have been successful in developing their purchase. However, there is friction between the two and they have been involved in two lawsuits.

Recent History - The lessee submitted a 10-year plan in 1996, which called for the construction of 482 slips. The Chief of Real Estate Division disapproved the development plan and all development north of the dike until the southern portion was developed. The lessee was also told the area north of the dike would be deleted when the lease expired in 2012. The residents of Eden Isle and Mr. Upton objected to any development in the lease site.

In 1996, Mr. Marvin Lancaster ASA(CW) attended a fundraiser for Congressman Marion Berry at Eden Isle. Shortly after that meeting, the lessee constructed a six-stall dock, which had been approved. Mr. Lancaster faxed a message to the former District Engineer stating his objection to the construction and any future construction. The District then informed the lessee to cease any expansion until further notice.

EXHIBIT NO. 45

<u>Current Situation</u> - The lessee has requested permission to construct 192 slips in the southern portion of his lease. There have been letters for and against the construction. Congressman Marion Berry opposes the development. The district favors allowing the requested development and is trying to negotiate with the lessee to find an alternate site to replace the area north of the dike. The development as it is proposed is not intrusive.

<u>Scope of Development</u> - The lessee proposes to use the existing public road to access his lease site. There will be no dredging or trees cut for parking. The existing parking on Corps property and Mr. Walters' adjacent private property are adequate for the additional slips. Approximately a dozen trees will need to be removed to construct a footpath to the additional docks. Any tree to be removed must be approved by the project office.

<u>District Position</u> - The district proposes that we allow the development since it is authorized by the lease. In reviewing the request, the district discovered they had approved docks which are outside the water portion of the designated lease area. The district proposes to change the lease boundary to enlarge the water area to include the existing docks, the requested docks, and remove the remaining area from the lease. To compensate for the loss of 1000 feet of shoreline, the district proposes to grant 1000 feet of land in the Cove Creek Park.

The marina operator has never threatened any kind of legal action to enforce his right to maximize the return on this investment, however, if we outright deny his proposed addition of three new docks containing 150 new slips, we leave him no option but to appeal or file suit.

If we select the outright denial option and the operator files suit, can we win? Generally a court may set aside an agency decision only if the action is

1. arbitrary ,
2. capricious,
3. an abuse of discretion, or
4. otherwise not in accordance with the law.

An agency must examine relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts of the case and the choice made. A court will not supply a basis for the agency's action that the agency does not give. The reason for the action must be articulated by the agency itself.

The arbitrary and capricious standard is highly deferential and presumes the validity of the agency action. The agency's interpretation (construction) of it's own regulations is entitled to even greater deference.

If we deny the additional slips, we would point to the county road and the residential nature of the entrance to the marina. The attorney for the marina operator would, without a doubt, try to compare the Eden Isle Marina to other marinas on Greers Ferry Lake and other lakes in the Little Rock District, comparing their neighborhood locations and the county roads leading to each marina.and would point to similarities with this marina and its neighborhood location.

1. If we approve construction of the additional slips and "let the chips fall," we may encounter repercussions from the Eden Isle Property Owners Association and congressional inquiries.

If the property owners or an attorney for any of the property owners, then attempt to stop the additional slips, they would put themselves in the position of being the possible defendant in a suit by the marina operator for lost profits, and/or malicious interference with business practices.

We are not sure what the repercussions would be from the congressman. We don't believe he could get legislation passed in time to block the additional slips.

2. Re-negotiate with the Marina Operator, allowing him to add fewer slips, reconfiguring the lease area to keep all slips within the area, taking away the north and southern most part of the lease area and giving him a time extension of his lease with the same (old) rental system. Allowing him to remain under the old rental system is financial advantageous to him, as well as having a longer-term lease.

If the marina agrees with this option, we could then begin a PR campaign to win support of minimize opposition to this plan as a compromise taking into consideration all interest.

Marina Operator

| Gets | Gives up |
|---|---|
| About 2/3 of his request will be granted approximately 200 new slips | North portion and South portion of lease area deleted |
| Time extension of his lease with increase in rental | Will not be allowed to increase number of slips in future in this lease site |
| | Approximately 280 slips from original request |

Property Owners

| Get | Gives up |
| --- | --- |
| Fewer new slips than was requested with guarantee of no further additions | 2/3 of request granted |
| There will be no dredging | |
| There will be no clear-cutting of trees | |
| This is best scenario since an outright denial could result in a lawsuit which could allow expansion both north and south | |

Briefing Paper on Eden Isle Marina, Greers Ferry Lake, Arkansas

The owner of Eden Isle Marina has requested permission to construct an addition to an existing dock and three new docks within the limits of his existing lease area. The residents of Eden Isle oppose any additional docks.

Past History - Eden Isle is an exclusive residential development and the marina is one of two in the Little Rock District not located in a Corps park. The marina has existed since 1963. The area in question has been under lease since 1980.

Ownership - Developers owned the marina, the Red Apple Inn, the undeveloped lots and golf courses until approximately 1992. At that time, Mr. Richard (Dick) Upton purchased the Inn, undeveloped lots and the golf course. Mr. Ronnie Walters outbid Mr. Upton and purchased the marina for $1.5 million in 1995.

Both Mr. Upton and Mr. Walters have been successful in developing their purchase. However, there is friction between the two and they have been involved in two lawsuits.

Recent History - The lessee submitted a 10-year plan in 1996, which called for the construction of 482 slips. The Chief of Real Estate Division disapproved the development plan and all development north of the dike until the southern portion was developed. The lessee was also told the area north of the dike would be deleted when the lease expired in 2012. The residents of Eden Isle and Mr. Upton objected to any development in the lease site.

In 1996, Mr. Marvin Lancaster ASA(CW) attended a fundraiser for Congressman Marion Berry at Eden Isle. Shortly after that meeting, the lessee constructed a six-stall dock, which had been approved. Mr. Lancaster faxed a message to the former District Engineer stating his objection to the construction and any future construction. The District then informed the lessee to cease any expansion until further notice.

Briefing Paper on Eden Isle Marina, Greers Ferry Lake, Arkansas

---

The owner of Eden Isle Marina has requested permission to construct an addition to an existing dock and three new docks within the limits of his existing lease area. The residents of Eden Isle oppose any additional docks.

Past History - Eden Isle is an exclusive residential development and the marina is one of two in the Little Rock District not located in a Corps park. The marina has existed since 1963. The area in question has been under lease since 1980.

Ownership - Developers owned the marina, the Red Apple Inn, the undeveloped lots and golf courses until approximately 1992. At that time, Mr. Richard (Dick) Upton purchased the Inn, undeveloped lots and the golf course. Mr. Ronnie Walters outbid Mr. Upton and purchased the marina for $1.5 million in 1995.

Both Mr. Upton and Mr. Walters have been successful in developing their purchase. However, there is friction between the two and they have been involved in two lawsuits.

Recent History - The lessee submitted a 10-year plan in 1996, which called for the construction of 482 slips. The Chief of Real Estate Division disapproved the development plan and all development north of the dike until the southern portion was developed. The lessee was also told the area north of the dike would be deleted when the lease expired in 2012. The residents of Eden Isle and Mr. Upton objected to any development in the lease site.

In 1996, Mr. Marvin Lancaster ASA(CW) attended a fundraiser for Congressman Marion Berry at Eden Isle. Shortly after that meeting, the lessee constructed a six-stall dock, which had been approved. Mr. Lancaster faxed a message to the former District Engineer stating his objection to the construction and any future construction. The District then informed the lessee to cease any expansion until further notice.

Current Situation - The lessee has requested permission to construct 192 slips in the southern portion of his lease. There have been letters for and against the construction. Congressman Marion Berry opposes the development. The district favors allowing the requested development and is trying to negotiate with the lessee to find an alternate site to replace the area north of the dike. The development as it is proposed is not intrusive.

Scope of Development - The lessee proposes to use the existing public road to access his lease site. There will be no dredging or trees cut for parking. The existing parking on Corps property and Mr. Walters' adjacent private property are adequate for the additional slips. Approximately a dozen trees will need to be removed to construct a footpath to the additional docks. Any tree to be removed must be approved by the project office.

District Position - The district proposes that we allow the development since it is authorized by the lease. In reviewing the request, the district discovered they had approved docks which are outside the water portion of the designated lease area. The district proposes to change the lease boundary to enlarge the water area to include the existing docks, the requested docks, and remove the remaining area from the lease. To compensate for the loss of 1000 feet of shoreline, the district proposes to grant 1000 feet of land in the Cove Creek Park.

The marina operator has never threatened any kind of legal action to enforce his right to maximize the return on this investment, however, if we outright deny his proposed addition of three new docks containing 150 new slips, we leave him no option but to appeal or file suit.

If we select the outright denial option and the operator files suit, can we win? Generally a court may set aside an agency decision only if the action is

1. arbitrary ,
2. capricious,
3. an abuse of discretion, or
4. otherwise not in accordance with the law.

An agency must examine relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts of the case and the choice made. A court will not supply a basis for the agency's action that the agency does not give. The reason for the action must be articulated by the agency itself.

The arbitrary and capricious standard is highly deferential and presumes the validity of the agency action. The agency's interpretation (construction) of it's own regulations is entitled to even greater deference.

If we deny the additional slips, we would point to the county road and the residential nature of the entrance to the marina. The attorney for the marina operator would, without a doubt, try to compare the Eden Isle Marina to other marinas on Greers Ferry Lake and other lakes in the Little Rock District, comparing their neighborhood locations and the county roads leading to each marina.and would point to similarities with this marina and its neighborhood location.

1. If we approve construction of the additional slips and "let the chips fall," we may encounter repercussions from the Eden Isle Property Owners Association and congressional inquiries.

If the property owners or an attorney for any of the property owners, then attempt to stop the additional slips, they would put themselves in the position of being the possible defendant in a suit by the marina operator for lost profits, and/or malicious interference with business practices.

We are not sure what the repercussions would be from the congressman. We don't believe he could get legislation passed in time to block the additional slips.

2. Re-negotiate with the Marina Operator, allowing him to add fewer slips, reconfiguring the lease area to keep all slips within the area, taking away the north and southern most part of the lease area and giving him a time extension of his lease with the same (old) rental system. Allowing him to remain under the old rental system is financial advantageous to him, as well as having a longer-term lease.

If the marina agrees with this option, we could then begin a PR campaign to win support of minimize opposition to this plan as a compromise taking into consideration all interest.

<u>Marina Operator</u>

| Gets | Gives up |
|---|---|
| About 2/3 of his request will be granted approximately 200 new slips | North portion and South portion of lease area deleted |
| Time extension of his lease with increase in rental | Will not be allowed to increase number of slips in future in this lease site |
| | Approximately 280 slips from original request |

<u>Property Owners</u>

| Get | Gives up |
|---|---|
| Fewer new slips than was requested with guarantee of no further additions | 2/3 of request granted |
| There will be no dredging | |
| There will be no clear-cutting of trees | |
| This is best scenario since an outright denial could result in a lawsuit which could allow expansion both north and south | |

Transaction Report

Send
Transaction(s) completed

| No. | TX Date/Time | Destination | Duration | P. # | Result | Mode |
|---|---|---|---|---|---|---|
| 782 | AUG-30 16:24 | 501 376 8437 | 0'00'37" | 005 | OK | N ECM |

1. If we approve construction of the additional slips and "let the chips fall," we may encounter repercussions from the Eden Isle Property Owners Association and congressional inquiries.

If the property owners or an attorney for any of the property owners, then attempt to stop the additional slips, they would put themselves in the position of being the possible defendant in a suit by the marina operator for lost profits, and/or malicious interference with business practices.

We are not sure what the repercussions would be from the congressman. We don't believe he could get legislation passed in time to block the additional slips.

---

2. Re-negotiate with the Marina Operator, allowing him to add fewer slips, reconfiguring the lease area to keep all slips within the area, taking away the north and southern most part of the lease area and giving him a time extension of his lease with the same (old) rental system. Allowing him to remain under the old rental system is financial advantageous to him, as well as having a longer-term lease.

If the marina agrees with this option, we could then begin a PR campaign to win support of minimize opposition to this plan as a compromise taking into consideration all interest.

<u>Marina Operator</u>

| Gets | Gives up |
|---|---|
| About 2/3 of his request will be granted approximately 200 new slips | North portion and South portion of lease area deleted |
| Time extension of his lease with increase in rental | Will not be allowed to increase number of slips in future in this lease site. |

PB LR 00084

1. If we approve construction of the additional slips and "let the chips fall," we may encounter repercussions from the Eden Isle Property Owners Association and congressional inquiries.

If the property owners or an attorney for any of the property owners, then attempt to stop the additional slips, they would put themselves in the position of being the possible defendant in a suit by the marina operator for lost profits, and/or malicious interference with business practices.

We are not sure what the repercussions would be from the congressman. We don't believe he could get legislation passed in time to block the additional slips.

2. Re-negotiate with the Marina Operator, allowing him to add fewer slips, reconfiguring the lease area to keep all slips within the area, taking away the north and southern most part of the lease area and giving him a time extension of his lease with the same (old) rental system. Allowing him to remain under the old rental system is financial advantageous to him, as well as having a longer-term lease.

If the marina agrees with this option, we could then begin a PR campaign to win support of minimize opposition to this plan as a compromise taking into consideration all interest.

<u>Marina Operator</u>

| Gets | Gives up |
|---|---|
| About 2/3 of his request will be granted approximately 200 new slips | North portion and South portion of lease area deleted |
| Time extension of his lease with increase in rental | Will not be allowed to increase number of slips in future in this lease site |
| | Approximately 280 slips from original request |

Property Owners

| Get | Gives up |
|---|---|
| Fewer new slips than was requested with guarantee of no further additions | 2/3 of request granted |
| There will be no dredging | |
| There will be no clear-cutting of trees | |
| This is best scenario since an outright denial could result in a lawsuit which could allow expansion both north and south | |

The marina operator has never threatened any kind of legal action to enforce his right to maximize the return on this investment, however, if we outright deny his proposed addition of three new docks containing 150 new slips, we leave him no option but to appeal or file suit.

If we select the outright denial option and the operator files suit, can we win? Generally a court may set aside an agency decision only if the action is

1. arbitrary ,
2. capricious,
3. an abuse of discretion, or
4. otherwise not in accordance with the law.

An agency must examine relevant data and articulate a satisfactory explanation for its action including a **rational connection between the facts of the case and the choice made.** A court will not supply a basis for the agency's action that the agency does not give. The reason for the action must be articulated by the agency itself.

The arbitrary and capricious standard is highly deferential and presumes the validity of the agency action. The agency's interpretation (construction) of it's own regulations is entitled to even greater deference.

If we deny the additional slips, we would point to the county road and the residential nature of the entrance to the marina. The attorney for the marina operator would, without a doubt, try to compare the Eden Isle Marina to other marinas on Greers Ferry Lake and other lakes in the Little Rock District, comparing their neighborhood locations and the county roads leading to each marina.and would point to similarities with this marina and its neighborhood location.

1. We can deny e.pansion for a valid reason ecause condition 3 (c) allows construction of additional facilities only after obtaining written approval of the District Engineer. However, Condition 4 states the lessee has the right to erect such structures as are necessary to meet demand with the District Engineers approval of location and design.

The lease encourages development of the lease area. In the last year new docks have been constructed at Dam Site, Narrows, Choctaw, Shiloh, and Hill Creek Marinas. Some complaints were received regarding the docks at Narrows because the docks extended into the channel. Docks have been at that location previously.

The lease allows termination only for noncompliance of the lessee. If the lessee is agreeable, the lease can be renegotiated.

2 & 3 - Public Hearing - Recommend against public hearing or comments for use of existing lease area for activities authorized by the lease. No public meeting or comment period was held for any of the above additional development. A 30-day public comment period was held for the expansion of the lease area on Choctaw and Hill Creek. We have never held public comment period for a request for additional docks.

4. If meetings were held with select individuals, would suggest Mr. Upton, and his attorney, and President of the Eden Isle Property Owners Association.

5. If denied, believe Mr. Walters would sue and probably win, as substantiated by Nancy Brooks, Attorney-Real Estate and Ralph Allen, Attorney-Office of Counsel, Attorney's Opinions provided at last meeting. Ralph Allen has estimated settlement costs at $1.5 million.

6. Options: a. Deny construction and wait out appeal process by Mr. Walters. This method could cost the Corps an estimated $1.5 million and is not recommended.

b. Meet with Mr. Upton, Mr. Walters and their attorneys to try and work out an equitable solution.

c. Approve construction of the docks Mr. Walters has requested and deal with the repercussions as they come from the property owners association, Mr. Upton and congressional inquiries. Marion Berry should be told in advance by the Colonel that upon the advise of his attorneys he is going to allow the docks to be built as requested.

1. We can deny e.,ansion for a valid reason· ecause condition 3 (c) allows construction of additional facilities only after obtaining written approval of the District Engineer. However, Condition 4 states the lessee has the right to erect such structures as are necessary to meet demand with the District Engineers approval of location and design.

The lease encourages development of the lease area. In the last year new docks have been constructed at Dam Site, Narrows, Choctaw, Shiloh, and Hill Creek Marinas. Some complaints were received regarding the docks at Narrows because the docks extended into the channel. Docks have been at that location previously.

The lease allows termination only for noncompliance of the lessee. If the lessee is agreeable, the lease can be renegotiated.

2 & 3 - Public Hearing - Recommend against public hearing or comments for use of existing lease area for activities authorized by the lease. No public meeting or comment period was held for any of the above additional development. A 30-day public comment period was held for the expansion of the lease area on Choctaw and Hill Creek. We have never held public comment period for a request for additional docks.

4. If meetings were held with select individuals, would suggest Mr. Upton, and his attorney, and President of the Eden Isle Property Owners Association.

5. If denied, believe Mr. Walters would sue and probably win, as substantiated by Nancy Brooks, Attorney-Real Estate and Ralph Allen, Attorney-Office of Counsel, Attorney's Opinions provided at last meeting. Ralph Allen has estimated settlement costs at $1.5 million.

6. Options: a. Deny construction and wait out appeal process by Mr. Walters. This method could cost the Corps an estimated $1.5 million and is not recommended.

b. Meet with Mr. Upton, Mr. Walters and their attorneys to try and work out an equitable solution.

c. Approve construction of the docks Mr. Walters has requested and deal with the repercussions as they come from the property owners association, Mr. Upton and congressional inquiries. Marion Berry should be told in advance by the Colonel that upon the advise of his attorneys he is going to allow the docks to be built as requested.

EXHIBIT NO. 153

PB LR 00090

CP

**Best, Ellyce SWL**

**From:** Cabe, Billy G SWL
**Sent:** Thursday, January 21, 1999 3:16 PM
**To:** Holden, Thomas A Col SWL
**Cc:** Watford, Edward R SWL; Hoffmann, Kurt G LTC SWL; Park, Thomas S SWL; Miller, Michael E SWL; Mathews, Beverly C SWL; Rash, Kay A SWL; Allen, Ralph H SWL; Best, Ellyce SWL
**Subject:** Eden Isle Marina Proposed Expansion

Chris Massingill, aide to Senator Blanche Lincoln, called me to confirm the sequence of recent events regarding the expansion of Eden Isle Marina. He was aware of Mr. Walters request to add 192 slips. He also knew about our proposal to Mr. Walters. I made him aware of Mr. Walters two alternative proposals that we have under consideration now. I advised Mr. Massingill of the meeting on 1/27/99 with the property owners and their attorneys and that we will make a decision shortly after that meeting.

Thanks,

Billy

EXHIBIT NO. 169
HUFFMAN & ROBINSON, INC.
COURT REPORTERS

Meeting with Eden Isle Landowners - 28 January 1999

EXHIBIT 2

a. Attendees were:

Billy Cabe - Chief, Real Estate Division
Anthony Ragar - Chief, Acq, Mgmt & Disposal Branch
Ralph Allen - Attorney, Counsel
Nancy Brooks - Real Estate Attorney
Stuart W. Hankins - Attorney for Richard Upton
Richard Upton - Owner, Real Apple Limited Partnership
Charles Ward - Pres, Eden Isle Property Owners Association
Ronald H. Fair - Red Apple Enterprises
Don Tollefson - Eden Isle Corporation
R. T. Ashman - Homeowner - Eden Isle

b. Landowners position - They have recently reviewed the files through FOIA and they understand that a compromise is being proposed to the lessee. They were concerned that a request from the landowners was pending and they were not involved in the process.

c. The Corps stated that it is not the Corps policy to notify landowners of actions in existing lease areas. However, because of the sensitivity of this issue, we had briefed Congressman Barry and his aid with the belief they would be informed.

d. The Corps emphasized that the proposal had not been accepted by the lessee, who was concerned about access to the proposed replacement area at Cove Creek. The lessees attorneys stated they would approach the congressional delegation about adding money for the road, since the Corps would benefit from the road for future campsites.

e. Mr. Uptown said that business made for strange bedfellows and he would also approach a congressman if the proposal were workable.

f. The proposal was acceptable to the attending landowners and they said they would try to sell it to the other landowners. A map showing the proposed lease reconfiguration was given to Mr. Hankins.

g. The meeting was cordial and it seems that a solution may have been reached.

EXHIBIT 98

Meeting with Eden Isle Landowners - 28 January 1999

EXHIBIT
L
PENGAD-Bayonne, N.J.

a. Attendees were:

Billy Cabe - Chief, Real Estate Division
Anthony Ragar - Chief, Acq, Mgmt & Disposal Branch
Ralph Allen - Attorney, Counsel
Nancy Brooks - Real Estate Attorney
Stuart W. Hankins - Attorney for Richard Upton
Richard Upton - Owner, Real Apple Limited Partnership
Charles Ward - Pres, Eden Isle Property Owners Association
Ronald H. Fair - Red Apple Enterprises
Don Tollefson - Eden Isle Corporation
R. T. Ashman - Homeowner - Eden Isle

b. Landowners position - They have recently reviewed the files through FOIA and they understand that a compromise is being proposed to the lessee. They were concerned that a request from the landowners was pending and they were not involved in the process.

c. The Corps stated that it is not the Corps policy to notify landowners of actions in existing lease areas. However, because of the sensitivity of this issue, we had briefed Congressman Barry and his aid with the belief they would be informed.

d. The Corps emphasized that the proposal had not been accepted by the lessee, who was concerned about access to the proposed replacement area at Cove Creek. The lessees attorneys stated they would approach the congressional delegation about adding money for the road, since the Corps would benefit from the road for future campsites.

e. Mr. Uptown said that business made for strange bedfellows and he would also approach a congressman if the proposal were workable.

f. The proposal was acceptable to the attending landowners and they said they would try to sell it to the other landowners. A map showing the proposed lease reconfiguration was given to Mr. Hankins.

g. The meeting was cordial and it seems that a solution may have been reached.

1/29/9

Memorandum for Record:
Files lent to Ralph Allen's Office for 1 week (21 or 22 Jan thru 28 Jan 99). (Files #1 thru 13).
Several files were opened (no top bracket on the prong) one had a missing backer, one had 2 backers (the missing backer & its own) one backer was on backward

Several originals dtd between (~~June~~ May 9 thru Dec 98 were removed from their original file, unstapled & bound together separately from our other files.

L.R.

EXHIBIT
79

Copy placed in affected files.
# 9, 10, 11 & 12

**Park, Thomas S SWL**

**From:** Holden, Thomas A Col SWL
**Sent:** Tuesday, February 02, 1999 10:16 PM
**To:** Miller, Michael E SWL; Park, Thomas S SWL; Risher, Thomas P SWL
**Subject:** RE: Eden Isle Marina Proposed Expansion

I know, just get the info to Senator Hutchinson's office.

-----Original Message-----
**From:** **Miller, Michael E SWL**
**Sent:** Tuesday, February 02, 1999 6:29 PM
**To:** Holden, Thomas A Col SWL; Thomas Park; Thomas Risher
**Subject:** RE: Eden Isle Marina Proposed Expansion

Thank you Sir! Tommy did good on this one, but we still need that congressional add - About 1M for everything.

Mike

-----Original Message-----
**From:** **Holden, Thomas A Col SWL**
**Sent:** Tuesday, February 02, 1999 6:02 PM
**To:** Cabe, Billy G SWL
**Cc:** Hoffmann, Kurt G LTC SWL; Watford, Edward R SWL; Miller, Michael E SWL; Mathews, Beverly C SWL; Rash, Kay A SWL; Rogers, R E SWL
**Subject:** RE: Eden Isle Marina Proposed Expansion

HOO-AH!

Prepare the letters for me to forward info copies to the elected officials. Also let's get this moving through channels for the exceptions to policy.

Good work to the RE, Counsel and OPS folks on this one.

TAHJ

-----Original Message-----
**From:** **Cabe, Billy G SWL**
**Sent:** Tuesday, February 02, 1999 3:44 PM
**To:** Holden, Thomas A Col SWL
**Cc:** Hoffmann, Kurt G LTC SWL; Watford, Edward R SWL; Miller, Michael E SWL; Mathews, Beverly C SWL; Rash, Kay A SWL
**Subject:** Eden Isle Marina Proposed Expansion

Sir,

We now have a signed MOU with Mr. Ronnie Walters of Eden Island Marina.

Thanks,

Billy

EXHIBIT NO. 172
HUFFMAN & ROBINSON, INC.
COURT REPORTERS

File

CESWL-RE-M 03 February 1999

MEMORANDUM FOR Commander, HQUSACE, ATTN: CERE-RE

THRU Commander, Southwestern Division, ATTN: CESWD-RE-M

SUBJECT: Eden Isle Marina-Memorandum of Understanding

1. Attached is a Memorandum of Understanding signed February 2, 1999, between Eden Isle Marina, Inc. and the U. S. Army, Corps of Engineers.

2. As previously discussed, part of our agreement requires authority from you to proceed. The following are the two conditions which require your approval.

a. The lessee is presently operating under a Graduated Rental System lease, which expires in 2012. We agreed to extend the term of the present lease an additional 12 years, expiration date 2024. However, because of the number of amendments and sheer volume of his existing lease, we are requesting authority to execute a new commercial concession lease using the exhibit in ER-405-1-12, Change 30, dated 30 Sep 94, except the condition on consideration will be revised to the GRS in lieu of the RGRS indicated by the exhibit.

b. Approximately 1000 feet of shoreline at Cove Creek Park will be granted to the lessee to offset the loss of shoreline at the Eden Isle Marina site. We request a Waiver of Competition to include this area in the new lease.

3. Please notify this office as soon as possible in order that we may execute this lease expeditiously.

EXHIBIT 70

PENGAD 800-631-6989

FOR THE COMMANDER:

2 Encls

BILLY G. CABE
Chief, Real Estate Division

CF:
District Engineer, Little Rock District, w/cy encl
✓Operations Mgr, Greers Ferry, w/cy encl
Deputy District Commander, Little Rock District, w/cy encl
Deputy District Engineer for Project Management, w/cy encl
Chief, Operations Division, w/cy encl
Ralph Allen, Counsel, w/cy encl

HS COE 600

CESWL-OC 11 February 1999

MEMORANDUM To Whom It May Concern

SUBJECT: Marina Buffer South of Eden Isle Marina

1. The attached map of the Greers Ferry Lakeshore near Eden Isle clearly indicates that the entire shoreline from a point south of the present marina to the southern most point of the bay, near the Eden Isle Causeway is designated under the Greers Ferry Shoreline Management plan as being a marina buffer zone.

2. This map was copied from the official map hanging in the Resident Office at Greers Ferry Lake by the Resident Lake Manager, Mr. Tommy Park.

3. As per the Greers Ferry Shoreline Management Plan, areas designated as buffer zones may not have permits, either for vegetative modification or boat docks. Private boatdocks would not be permitted by the Corps of Engineers in this designated area.

4. Boatdocks are only permitted in areas that are zoned for limited development. Such a change in zoning would require public notice, public involvement, and a major change to the Greers Ferry Shoreline Management Plan.

5. The Greers Ferry Shoreline Management Plan also states that, "All lakeshore not specifically allocated under one of the above classifications are protected areas where no docks are allowed."

Ralph H. Allen

RALPH H. ALLEN
Office of Counsel

EXHIBIT NO. 173
HUFFMAN & ROBINSON, INC.
COURT REPORTERS

CESWL-OC 11 February 1999

MEMORANDUM To Whom It May Concern

SUBJECT: Marina Buffer South of Eden Isle Marina

1. The attached map of the Greers Ferry Lakeshore near Eden Isle clearly indicates that the entire shoreline from a point south of the present marina to the southern most point of the bay, near the Eden Isle Causeway is designated under the Greers Ferry Shoreline Management plan as being a marina buffer zone.

2. This map was copied from the official map hanging in the Resident Office at Greers Ferry Lake by the Resident Lake Manager, Mr. Tommy Park.

3. As per the Greers Ferry Shoreline Management Plan, areas designated as buffer zones may not have permits, either for vegetative modification or boat docks. Private boatdocks would not be permitted by the Corps of Engineers in this designated area.

4. Boatdocks are only permitted in areas that are zoned for limited development. Such a change in zoning would require public notice, public involvement, and a major change to the Greers Ferry Shoreline Management Plan.

5. The Greers Ferry Shoreline Management Plan also states that, "All lakeshore not specifically allocated under one of the above classifications are protected areas where no docks are allowed."

Ralph H. Allen

RALPH H. ALLEN
Office of Counsel

February 24, 1999

Office of Counsel

Mr. Stuart W. Hankins
800 West Fourth Street
P.O. Box 5670
North Little Rock, Arkansas 72119

Dear Mr. Hankins:

It was good to hear that your clients have acknowledged the Corps of Engineers good faith effort to resolve the recent issues at Eden Isle Marina.

You have raised additional concerns and I can answer them as follows:

(1) The re-aligned lease area at Eden Isle Marina will be a definite "meets and bounds" description, which will be 51 acres in size and of the shape as described in the attached map. This area will accept and cover all existing docks and the proposed August 1998 additions.

(2) Yes, the south end of the lease will have limited access by a four-foot wide pathway and vehicular traffic will be prohibited (except for golfcart-type vehicles for maintenance anc the handicapped).

(3) Yes, although almost no trees are expected to be cut. A tree in this definition will be a plant with a trunk diameter of 2 inches or over at the height of 4 feet from the ground.

(4) Correct, the buffer area will remain in a natural state. The lessee currently has sufficient parking for the current and planned expansion.

(5) The Corps of Engineers now understands that the marina owner is expanding the marina to approximately 800 boat slips. There may be lake-use capacity and safety issues in the unpredictable future that stop reconfiguration by the marina owner. At this time, the Corps cannot interfere in the marina's business as long as they follow the rules. All the marinas at Greers Ferry will regularly update and replace their

docks, and this may cause an increase or decrease in the number of particular slips they have in their designated areas. Eden Isle Marina may be more efficient later with its space, but this is a regular business decision. I can assure you that the Eden Isle Marina has a "footprint area" of 51 acres and this area will not change in size. The Corps of Engineers in Little Rock has memorialized this fact in its files.

The Freedom of Information Act Officer, Ralph Allen, has cleared your request for a copy of the Corps agreement with Mr. Ronnie Walters and the costs are waived. Enclosed is a copy.

I am glad that your clients have recognized the need to resolve their concerns about Eden Isle Marina and hopefully the different Parties at Eden Isle can reach some state of equilibrium and learn to live with and for the benefit of others.

Sincerely,

Billy Cabe
Chief, Real Estate Division

CF: Office of Counsel

FOIA/ACTIVE/1999/99-38

February 24, 1999

Office of Counsel

Mr. Stuart W. Hankins
800 West Fourth Street
P.O. Box 5670
North Little Rock, Arkansas 72119

Dear Mr. Hankins:

It was good to hear that your clients have acknowledged the Corps of Engineers good faith effort to resolve the recent issues at Eden Isle Marina.

You have raised additional concerns and I can answer them as follows:

(1) The re-aligned lease area at Eden Isle Marina will be a definite "meets and bounds" description, which will be 51 acres in size and of the shape as described in the attached map. This area will accept and cover all existing docks and the proposed August 1998 additions.

(2) Yes, the south end of the lease will have limited access by a four-foot wide pathway and vehicular traffic will be prohibited (except for golfcart-type vehicles for maintenance and the handicapped).

(3) Yes, although almost no trees are expected to be cut. A tree in this definition will be a plant with a trunk diameter of 2 inches or over at the height of 4 feet from the ground.

(4) Correct, the buffer area will remain in a natural state. The lessee currently has sufficient parking for the current and planned expansion.

(5) The Corps of Engineers now understands that the marina owner is expanding the marina to approximately 800 boat slips. There may be lake-use capacity and safety issues in the unpredictable future that stop reconfiguration by the marina owner. At this time, the Corps cannot interfere in the marina's business as long as they follow the rules. All the marinas at Greers Ferry will regularly update and replace their

RH
ALLEN,
BC
CABE



docks, and this may cause an increase or decrease in the number of particular slips they have in their designated areas. Eden Isle Marina may be more efficient later with its space, but this is a regular business decision. I can assure you that the Eden Isle Marina has a "footprint area" of 51 acres and this area will not change in size. The Corps of Engineers in Little Rock has memorialized this fact in its files.

The Freedom of Information Act Officer, Ralph Allen, has cleared your request for a copy of the Corps agreement with Mr. Ronnie Walters and the costs are waived. Enclosed is a copy.

I am glad that your clients have recognized the need to resolve their concerns about Eden Isle Marina and hopefully the different Parties at Eden Isle can reach some state of equilibrium and learn to live with and for the benefit of others.

Sincerely,

Billy Cabe
Chief, Real Estate Division

CF: Office of Counsel

FOIA/ACTIVE/1999/99-38

February 24, 1999

Office of Counsel

Mr. Stuart W. Hankins
800 West Fourth Street
P.O. Box 5670
North Little Rock, Arkansas 72119

Dear Mr. Hankins:

It was good to hear that your clients have acknowledged the Corps of Engineers good faith effort to resolve the recent issues at Eden Isle Marina.

You have raised additional concerns and I can answer them as follows:

(1) The re-aligned lease area at Eden Isle Marina will be a definite "meets and bounds" description, which will be 51 acres in size and of the shape as described in the attached map. This area will accept and cover all existing docks and the proposed August 1998 additions.

(2) Yes, the south end of the lease will have limited access by a four-foot wide pathway and vehicular traffic will be prohibited (except for golfcart-type vehicles for maintenance and the handicapped).

(3) Yes, although almost no trees are expected to be cut. A tree in this definition will be a plant with a trunk diameter of 2 inches or over at the height of 4 feet from the ground.

(4) Correct, the buffer area will remain in a natural state. The lessee currently has sufficient parking for the current and planned expansion.

(5) The Corps of Engineers now understands that the marina owner is expanding the marina to approximately 800 boat slips. There may be lake-use capacity and safety issues in the unpredictable future that stop reconfiguration by the marina owner. At this time, the Corps cannot interfere in the marina's business as long as they follow the rules. All the marinas at Greers Ferry will regularly update and replace their

ALLEN/JN

CABE



docks, and this may cause an increase or decrease in the number of particular slips they have in their designated areas. Eden Isle Marina may be more efficient later with its space, but this is a regular business decision. I can assure you that the Eden Isle Marina has a "footprint area" of 51 acres and this area will not change in size. The Corps of Engineers in Little Rock has memorialized this fact in its files.

The Freedom of Information Act Officer, Ralph Allen, has cleared your request for a copy of the Corps agreement with Mr. Ronnie Walters and the costs are waived. Enclosed is a copy.

I am glad that your clients have recognized the need to resolve their concerns about Eden Isle Marina and hopefully the different Parties at Eden Isle can reach some state of equilibrium and learn to live with and for the benefit of others.

Sincerely,

Billy Cabe
Chief, Real Estate Division

CF: Office of Counsel

FOIA/ACTIVE/1999/99-38

8-10-200 9:26AM FR P. 2

REAL ESTATE BRAV OFFICE

## Norman, Laura O HQ02

| | |
|---|---|
| From: | Jennings, Rupert J HQ02 |
| Sent: | Wednesday, August 09, 2000 9:42 AM |
| To: | Norman, Laura O HQ02 |
| Cc: | Neo, Susan G HQ02 |
| Subject: | Engineer Inspector General (EIG) Inquiry -- Greers Ferry Lake |
| Importance: | High |

Laura--

1. We have received a request from the EIG for a legal opinion concerning the propriety of a Memorandum of Understanding (MOU) entered into between Little Rock District Chief of Real Estate and Mr. Ronnie Walters, the lessor of the Eden Isle marina lease at Greers Ferry Lake. As I understand it, Mr. Walters has filed a complaint with the EIG because no progress has been made in constructing an access road as he apparently believes the Corps agreed to do in the MOU. It is my understanding that you are knowledgeable about the facts in this case.

2. Please provide the views of your office with respect to: the legal propriety of the MOU, our commitments (if any) under it (e.g. whether we're obligated to make good faith efforts to seek funds for construction of the access road), information on any representations USACE officials may have made with respect to seeking funds for constructing the road, information on what steps USACE has taken to date to seek funds for constructing the road, information on whether USACE is taking or plans to take any steps to seek funds in the next available budget, and any other information you believe may be relevant to our providing a legal opinion on this matter.

3. The Office of the EIG has requested our opinion by 11 August 2000. In light of the move, I requested an extension. However, please furnish the requested information as soon as possible, and no later than 1 September 2000.

4. Please provide this information to Ms. Susan Neo, who will be the POC for this matter.

Thanks,

Rupe

Rupert Jennings
Assistant Chief Counsel for Legislation, Fiscal, and General Law
Office of the Chief Counsel
Headquarters U.S. Army Corps of Engineers
phone: 202-761-8524 fax: 202-761-0270
rupert.j.jennings@usace.army.mil

Attorney-Client Privileged Communication
Attorney Work Product
Do Not Release Under FOIA
Do Not Copy
Do Not Forward

Ken Power has Laura's papers



~~DO NOT PRODUCE~~

ATOKA 21

EXHIBIT NO. 187
HUFFMAN & ROBINSON, INC.
COURT REPORTERS

## Norman, Laura O HQ02

From: Jennings, Rupert J HQ02
Sent: Wednesday, August 09, 2000 9:42 AM
To: Norman, Laura O HQ02
Cc: Nee, Susan G HQ02
Subject: Engineer Inspector General (EIG) Inquiry -- Greers Ferry Lake

Importance: High

Laura--

1. We have received a request from the EIG for a legal opinion concerning the propriety of a Memorandum of Understanding (MOU) entered into between Little Rock District Chief of Real Estate and Mr. Ronnie Walters, the lessor of the Eden Isle marina lease at Greers Ferry Lake. As I understand it, Mr. Walters has filed a complaint with the EIG because no progress has been made in constructing an access road as he apparently believes the Corps agreed to do in the MOU. It is my understanding that you are knowledgeable about the facts in this case.

2. Please provide the views of your office with respect to: the legal propriety of the MOU, our commitments (if any) under it (e.g. whether we're obligated to make good faith efforts to seek funds for construction of the access road), information on any representations USACE officials may have made with respect to seeking funds for constructing the road, information on what steps USACE has taken to date to seek funds for constructing the road, information on whether USACE is taking or plans to take any steps to seek funds in the next available budget, and any other information you believe may be relevant to our providing a legal opinion on this matter.

3. The Office of the EIG has requested our opinion by 11 August 2000. In light of the move, I requested an extension. However, please furnish the requested information as soon as possible, and no later than 1 September 2000..

4. Please provide this information to Ms. Susan Nee, who will be the POC for this matter.

Thanks,

Rupe

Rupert Jennings
Assistant Chief Counsel for Legislation, Fiscal, and General Law
Office of the Chief Counsel
Headquarters U.S. Army Corps of Engineers
phone: 202-761-8524 fax: 202-761-0270
rupert.j.jennings@usace.army.mil

Attorney-Client Privileged Communication
Attorney Work Product
Do Not Release Under FOIA
Do Not Copy
Do Not Forward

Ken Pawer has Laura's papers

8-10-200 9:26AM FP P. 3

08/09/00 WED 14:35 FAX 202 ... 0820 REAL ESTATE BRAC OFFICE

CEIG-A (20-1e)

S: 11 August 2000

31 JUL 2000

MEMORANDUM FOR CECC-ZA

SUBJECT: Inspector General Inquiry – Mr. Walters

1. We have received a complaint from Mr. Ronnie Walters pertaining to a marina lease at Greers Ferry Lake from the Little Rock District. The following background information is presented:

a. Mr. Walters obtained his lease in 1995 to operate Eden Isle Marina on Greers Ferry Lake. In 1996, he submitted a plan to the district for improvements and expansion of the marina.

b. Because of alleged political pressure, Mr. Lancaster, then ASA CW, visited the lake and the marina. Mr. Walters claims to have a copy of a FAX/email from Mr. Lancaster to COL Morris, then District Commander, instructing the district to stop all improvements at the marina.

c. Two district representatives, Mr. Anthony Rager and Mr. Billy Cabe (CESWL-RE), contacted Mr. Walters and informed him that there was heavy political pressure on the district to stop any improvements at Eden Isle Marina. They offered to trade 1000 feet of Mr. Walters' leased shoreline at Eden Isle Marina for the rights to a marina in Cove Creek Park, approximately three miles across the lake.

d. Mr. Walters felt that he had no other choice, so he accepted the offer. The Memorandum of Understanding (MOU) was signed on 2 February 1999 (Encl 1). It included a provision that "The COE will construct an access road and parking for the marina at Cove Creek Park as funds become available." In the year and a half since the MOU was signed there has been no progress in constructing the access road.

2. In phone conversation with Ms. Laura Norman, CERE (202-761-1700), it was determined that she has personal knowledge of some of the issues involved in this matter. Her office briefed the ASACW, Mr. Westphal, on 7 January 1999.

3. Request your office review the enclosed MOU and provide a legal opinion as to the propriety of the initial agreement and the status of the MOU, considering that no action has been taken to provide access to the site. Coordination with Ms. Norman may be helpful.

FOR OFFICIAL USE ONLY
This document contains information
EXEMPT FROM MANDATORY
DISCLOSURE under the FOIA.
Exemption 5,6 apply

EXHIBIT NO. 188
HUFFMAN & ROBINSON, INC.
COURT REPORTERS

CEIG-A (20-1e)
SUBJECT: Inspector General Inquiry – Mr. Walters

4. A response by 11 August 2000 would be appreciated.

5. My POC is Mr. Robert N. Jones at 703-428-7575.

Encl

CAMERON B. NERDAHL
COL, IG
The Engineer Inspector General

CF: CERE (Ms. Norman)

S: 11 August 2000

CEIG-A (20-1e) 31 JUL 2000

MEMORANDUM FOR CECC-ZA

SUBJECT: Inspector General Inquiry – Mr. Walters

1. We have received a complaint from Mr. Ronnie Walters pertaining to a marina lease at Greers Ferry Lake from the Little Rock District. The following background information is presented:

a. Mr. Walters obtained his lease in 1995 to operate Eden Isle Marina on Greers Ferry Lake. In 1996, he submitted a plan to the district for improvements and expansion of the marina.

b. Because of alleged political pressure, Mr. Lancaster, then ASA CW, visited the lake and the marina. Mr. Walters claims to have a copy of a FAX/email from Mr. Lancaster to COL Morris, then District Commander, instructing the district to stop all improvements at the marina.

c. Two district representatives, Mr. Anthony Ragar and Mr. Billy Cabe (CESWL-RE), contacted Mr. Walters and informed him that there was heavy political pressure on the district to stop any improvements at Eden Isle Marina. They offered to trade 1000 feet of Mr. Walters' leased shoreline at Eden Isle Marina for the rights to a marina in Cove Creek Park, approximately three miles across the lake.

d. Mr. Walters felt that he had no other choice, so he accepted the offer. The Memorandum of Understanding (MOU) was signed on 2 February 1999 (Encl 1). It included a provision that "The COE will construct an access road and parking for the marina at Cove Creek Park as funds become available." In the year and a half since the MOU was signed there has been no progress in constructing the access road.

2. In phone conversation with Ms. Laura Norman, CERE (202-761-1700), it was determined that she has personal knowledge of some of the issues involved in this matter. Her office briefed the ASACW, Mr. Westphal, on 7 January 1999.

3. Request your office review the enclosed MOU and provide a legal opinion as to the propriety of the initial agreement and the status of the MOU, considering that no action has been taken to provide access to the site. Coordination with Ms. Norman may be helpful.

FOR OFFICIAL USE ONLY
This document contains information
EXEMPT FROM MANDATORY
DISCLOSURE under the FOIA.
Exemptions 5,6 apply.

CEIG-A (20-1e)
SUBJECT: Inspector General Inquiry – Mr. Walters

4. A response by 11 August 2000 would be appreciated.

5. My POC is Mr. Robert N. Jones at 703-428-7575.

Encl

CAMERON B. NERDAHL
COL, IG
The Engineer Inspector General

CF: CERE (Ms. Norman)

CEIG-A (20-1e)
SUBJECT: Inspector General Inquiry -- Mr. Walters

4. A response by 11 August 2000 would be appreciated.

5. My POC is Mr. Robert N. Jones at 703-428-7575.

Encl

CAMERON B. NERDAHL
COL, IG
The Engineer Inspector General

CF: CERE (Ms. Norman)

S: 11 August 2000

CEIG-A (20-1e)

31 JUL 2000

MEMORANDUM FOR CBCC-ZA

SUBJECT: Inspector General Inquiry – Mr. Walters

1. We have received a complaint from Mr. Ronnie Walters pertaining to a marina lease at Greers Ferry Lake from the Little Rock District. The following background information is presented:

a. Mr. Walters obtained his lease in 1995 to operate Eden Isle Marina on Greers Ferry Lake. In 1996, he submitted a plan to the district for improvements and expansion of the marina.

b. Because of alleged political pressure, Mr. Lancaster, then ASA CW, visited the lake and the marina. Mr. Walters claims to have a copy of a FAX/email from Mr. Lancaster to COL Morris, then District Commander, instructing the district to stop all improvements at the marina.

c. Two district representatives, Mr. Anthony Ragar and Mr. Billy Cabe (CESWL-RE), contacted Mr. Walters and informed him that there was heavy political pressure on the district to stop any improvements at Eden Isle Marina. They offered to trade 1000 feet of Mr. Walters' leased shoreline at Eden Isle Marina for the rights to a marina in Cove Creek Park, approximately three miles across the lake.

d. Mr. Walters felt that he had no other choice, so he accepted the offer. The Memorandum of Understanding (MOU) was signed on 2 February 1999 (Encl 1). It included a provision that "The COE will construct an access road and parking for the marina at Cove Creek Park as funds become available." In the year and a half since the MOU was signed there has been no progress in constructing the access road.

2. In phone conversation with Ms. Laura Norman, CERE (202-761-1700), it was determined that she has personal knowledge of some of the issues involved in this matter. Her office briefed the ASACW, Mr. Westphal, on 7 January 1999.

3. Request your office review the enclosed MOU and provide a legal opinion as to the propriety of the initial agreement and the status of the MOU, considering that no action has been taken to provide access to the site. Coordination with Ms. Norman may be helpful.

FOR OFFICIAL USE ONLY
This document contains information EXEMPT FROM MANDATORY DISCLOSURE under the FOIA. Exemption 5, 6 apply.



ISSUE PAPER

This paper will address the views of the Little Rock District concerning (1) the legal propriety of the Memorandum of Understanding, "MOU" entered into by Ronnie Walters of Eden Isle Marina and Billy G. Cabe, Chief, Real Estate Division, Little Rock District; (2) the commitment of the Little Rock District under the MOU, e.g. Is the Little Rock District obligated to make a good faith effort to seek funds for construction of the access road; (3) Has any USACE official made any representations with respect to seeking funds for constructing the road; and (4) Is USACE planning to seek funds in the next available budget.

BACKGROUND INFORMATION

Before addressing the content of the MOU, some background information should be discussed. The lease for the Eden Isle Marina was initially issued on November 1, 1963. After a history of numerous lessees and transfers, the lease was transferred on June 15, 1995 to Eden Isle Marina, Inc., Ronnie Walters, President. After Mr. Walters purchased the marina, it began to grow and further development became necessary to accommodate a waiting list of boat owners.

A ten-year plan for expansion and a request for houseboat docks, received from Mr. Walters in the early spring of 1996 resulted in outcry from the local residents of Eden Isle. In the spring of 1996, several employees of Little Rock District Real State Division met with approximately 125 landowners to answer questions about the proposed expansion. The landowners were concerned about the impact of the expansion on their homes. Later that Spring, the Chief, Real Estate Division, Billy G. Cabe, met with the Eden Isle Property Owners Association and Mr. Ronnie Walters to discuss the development. The purpose of this meeting was to try to locate an alternative site for development that would have less impact on private homeowners.

During our further investigations and study of the Eden Isle Marina lease, it was discovered that some of the docks were actually outside the "footprint" of the lease area. This fact was also discussed at our meetings with Mr. Walters.

EXHIBIT NO. 189
HUFFMAN & ROBINSON, INC.
COURT REPORTERS

Richard Upton, owner of Red Apple Enterprises and former owner of the marina, wrote Senator Pryor objecting to any further expansion of the marina. The local landowners then began writing letters to their Senators and Congressmen to enlist their help in preventing further expansion of the marina.

Late 1996, Marvin Lancaster, ASA(CW) attended a fundraiser reception at the Red Apple Inn for Congressman Marion Berry. About two weeks later, Little Rock District Engineer received a faxed message from Mr. Lancaster stating his opposition to the construction by Mr. Walters. The District then informed Mr. Walters to cease any expansion until further notice.

Subsequently, Real Estate Personnel of the Little Rock District met with Mr. Walters and the Property Owners Association to work out a compromise. The Memorandum of Understanding is the result of those meetings.

(1) <u>Discuss the legal propriety of the Memorandum of Understanding (MOU).</u>

The February 2, 1999 Memorandum of Understanding entered into between Eden Isle Marina, Inc. and Little Rock District Real Estate Division effectively ended three years of controversy and was the result of nearly three years of discussions with the Lessee, the Property Owners Association and Arkansas Senators and Congressmen.

The terms of the MOU reflect the agreed upon compromise which was acceptable to all parties and by entering into this MOU, we undoubtedly avoided lengthy and costly litigation.

Since Mr. Walters had docks outside the lease area and the homeowners association objected to expansion especially in certain areas, the lease area was reconfigured and a new lease DACW03-1-99-837 was executed on April 22, 1999. The terms of the MOU were incorporated into the new lease.

(2) Discuss the commitment of the Little Rock District under the MOU, e.g., Is the Little Rock District obligated to make good faith efforts to seek funds for construction of the access road?

During the conversations regarding the Lessee's expansion to the Cove Creek Park site, it was agreed that, subject to the availability of funds, the Corps would construct the access road and other park amenities. The "availability of funds" aspect of this agreement was discussed at length. At the time of the signing of the MOU, Mr. Walters stated that he had discussed the congressional add-on funds with Senator Hutchinson and had a commitment for the funds. It was emphasized to Mr. Walters that the "Corps" cannot lobby the congressional delegation. He was informed that we would include the Cove Creek Road in our budget but it would be three years before we would be able to begin to construct the road.

In our budget request we asked for $360,000.00 for the study and design of the access road and a restroom and the construction of twenty-five campsites for FY 2000. For FY 2001 the request was $1,510,000.00 for the construction of the road, parking, restroom, campsites and utilities.

The road is now in the design process. Whether the construction begins in FY 2001 depends on congressional add-on funding for which Mr. Walters stated he had a commitment from Senator Hutchinson.

The Corps has adhered to its commitment in the agreement which was to build the road "as funds become available". We placed it in our budget request and began the design. If the funds are made available in the FY 2001 budget, construction will begin on the road.

(3) Has any USACE official made any representations with respect to seeking funds for construction of the access road?

Mr. Walters was informed that we would put Cove Creek Park funding in our budget request but, in every conversation with Mr. Walters it was emphasized to him that USACE cannot lobby the congressional delegation for add-on funds. He very emphatically stated in a meeting with Little Rock District Real Estate Division that he had a commitment for the funding.

(4) Is USACE planning to seek funds in the next available budget?

Little Rock District placed the funds in our budget request for FY 2000 for the study and design and in FY 2001 for the construction of the road and park amenities for Cove Creek Park. No further requests have been discussed.

Nancy K. Brooks

Attorney Work Product or Attorney-Client Privileged Communication
For Official Army use Only--Confidentiality Requested
Do Not Routinely Copy, Forward, or Release
DO NOT RELEASE UNDER FOIA

This paper will address the views of the Little Rock District concerning (1) the legal propriety of the Memorandum of Understanding, "MOU" entered into by Ronnie Walters of Eden Isle Marina and Billy G. Cabe, Chief, Real Estate Division, Little Rock District; (2) the commitment of the Little Rock District under the MOU, e.g. Is the Little Rock District obligated to make a good faith effort to seek funds for construction of the access road; (3) Has any USACE official made any representations with respect to seeking funds for constructing the road; and (4) Is USACE planning to seek funds in the next available budget.

BACKGROUND INFORMATION

Before addressing the content of the MOU, some background information should be discussed. The lease for the Eden Isle Marina was initially issued on November 1, 1963. After a history of numerous lessees and transfers, the lease was transferred on June 15, 1995 to Eden Isle Marina, Inc., Ronnie Walters, President. After Mr. Walters purchased the marina, it began to grow and further development became necessary to accommodate a waiting list of boat owners.

A ten-year plan for expansion and a request for houseboat docks, received from Mr. Walters in the early spring of 1996 resulted in outcry from the local residents of Eden Isle. In the spring of 1996, several employees of Little Rock District Real State Division met with approximately 125 landowners to answer questions about the proposed expansion. The landowners were concerned about the impact of the expansion on their homes. Later that Spring, the Chief, Real Estate Division, Billy G. Cabe, met with the Eden Isle Property Owners Association and Mr. Ronnie Walters to discuss the development. The purpose of this meeting was to try to locate an alternative site for development that would have less impact on private homeowners.

During our further investigations and study of the Eden Isle Marina lease, it was discovered that some of the docks were actually outside the "footprint" of the lease area. This fact was also discussed at our meetings with Mr. Walters.



(SUPERSEDES 70-886)
LEASE-COMMERCIAL CONCESSION [illegible]
EDEN ISLE MARINA, INC.

Richard Upton, owner of Red Apple Enterprises and former owner of the marina, wrote Senator Pryor objecting to any further expansion of the marina. The local landowners then began writing letters to their Senators and Congressmen to enlist their help in preventing further expansion of the marina.

Late 1996, Marvin Lancaster, ASA(CW) attended a fundraiser reception at the Red Apple Inn for Congressman Marion Berry. About two weeks later, Little Rock District Engineer received a faxed message from Mr. Lancaster stating his opposition to the construction by Mr. Walters. The District then informed Mr. Walters to cease any expansion until further notice.

Subsequently, Real Estate Personnel of the Little Rock District met with Mr. Walters and the Property Owners Association to work out a compromise. The Memorandum of Understanding is the result of those meetings.

(1) <u>Discuss the legal propriety of the Memorandum of Understanding (MOU).</u>

The February 2, 1999 Memorandum of Understanding entered into between Eden Isle Marina, Inc. and Little Rock District Real Estate Division effectively ended three years of controversy and was the result of nearly three years of discussions with the Lessee, the Property Owners Association and Arkansas Senators and Congressmen.

The terms of the MOU reflect the agreed upon compromise which was acceptable to all parties and by entering into this MOU, we undoubtedly avoided lengthy and costly litigation.

Since Mr. Walters had docks outside the lease area and the homeowners association objected to expansion especially in certain areas, the lease area was reconfigured and a new lease DACW03-1-99-837 was executed on April 22, 1999. The terms of the MOU were incorporated into the new lease.

(2) Discuss the commitment of the Little Rock District under the MOU, e.g., Is the Little Rock District obligated to make good faith efforts to seek funds for construction of the access road?

During the conversations regarding the Lessee's expansion to the Cove Creek Park site, it was agreed that, subject to the availability of funds, the Corps would construct the access road and other park amenities. The "availability of funds" aspect of this agreement was discussed at length. At the time of the signing of the MOU, Mr. Walters stated that he had discussed the congressional add-on funds with Senator Hutchinson and had a commitment for the funds. It was emphasized to Mr. Walters that the "Corps" cannot lobby the congressional delegation. He was informed that we would include the Cove Creek Road in our budget but it would be three years before we would be able to begin to construct the road.

In our budget request we asked for $360,000.00 for the study and design of the access road and a restroom and the construction of twenty-five campsites for FY 2000. For FY 2001 the request was $1,510,000.00 for the construction of the road, parking, restroom, campsites and utilities.

The road is now in the design process. Whether the construction begins in FY 2001 depends on congressional add-on funding for which Mr. Walters stated he had a commitment from Senator Hutchinson.

The Corps has adhered to its commitment in the agreement which was to build the road "as funds become available". We placed it in our budget request and began the design. If the funds are made available in the FY 2001 budget, construction will begin on the road.

(3) Has any USACE official made any representations with respect to seeking funds for construction of the access road?

Mr. Walters was informed that we would put Cove Creek Park funding in our budget request but, in every conversation with Mr. Walters it was emphasized to him that USACE cannot lobby the congressional delegation for add-on funds. He very emphatically stated in a meeting with Little Rock District Real Estate Division that he had a commitment for the funding.



(SUPERSEDES 70-886)
LEASE-COMMERCIAL CONCESSION

(4) Is USACE planning to seek funds in the next available budget?

Little Rock District placed the funds in our budget request for FY 2000 for the study and design and in FY 2001 for the construction of the road and park amenities for Cove Creek Park. No further requests have been discussed.

Nancy K. Brooks
Attorney Work Product or Attorney-Client Privileged Communication
For Official Army use Only--Confidentiality Requested
Do Not Routinely Copy, Forward, or Release
DO NOT RELEASE UNDER FOIA

Richard Upton, owner of Red Apple Enterprises and former owner of the marina, wrote Senator Pryor objecting to any further expansion of the marina. The local landowners then began writing letters to their Senators and Congressmen to enlist their help in preventing further expansion of the marina.

Late 1996, Marvin Lancaster, ASA(CW) attended a fundraiser reception at the Red Apple Inn for Congressman Marion Berry. About two weeks later, Little Rock District Engineer received a faxed message from Mr. Lancaster stating his opposition to the construction by Mr. Walters. The District then informed Mr. Walters to cease any expansion until further notice.

Subsequently, Real Estate Personnel of the Little Rock District met with Mr. Walters and the Property Owners Association to work out a compromise. The Memorandum of Understanding is the result of those meetings.

(1) Discuss the legal propriety of the Memorandum of Understanding (MOU).

The February 2, 1999 Memorandum of Understanding entered into between Eden Isle Marina, Inc. and Little Rock District Real Estate Division effectively ended three years of controversy and was the result of nearly three years of discussions with the Lessee, the Property Owners Association and Arkansas Senators and Congressmen.

The terms of the MOU reflect the agreed upon compromise which was acceptable to all parties and by entering into this MOU, we undoubtedly avoided lengthy and costly litigation.

Since Mr. Walters had docks outside the lease area and the homeowners association objected to expansion especially in certain areas, the lease area was reconfigured and a new lease DACW03-1-99-837 was executed on April 22, 1999. The terms of the MOU were incorporated into the new lease.

(2) Discuss the commitment of the Little Rock District under the MOU, e.g., Is the Little Rock District obligated to make good faith efforts to seek funds for construction of the access road?

During the conversations regarding the Lessee's expansion to the Cove Creek Park site, it was agreed that, subject to the availability of funds, the Corps would construct the access road and other park amenities. The "availability of funds" aspect of this agreement was discussed at length. At the time of the signing of the MOU, Mr. Walters stated that he had discussed the congressional add-on funds with Senator Hutchinson and had a commitment for the funds. It was emphasized to Mr. Walters that the "Corps" cannot lobby the congressional delegation. He was informed that we would include the Cove Creek Road in our budget but it would be three years before we would be able to begin to construct the road.

In our budget request we asked for $360,000.00 for the study and design of the access road and a restroom and the construction of twenty-five campsites for FY 2000. For FY 2001 the request was $1,510,000.00 for the construction of the road, parking, restroom, campsites and utilities.

The road is now in the design process. Whether the construction begins in FY 2001 depends on congressional add-on funding for which Mr. Walters stated he had a commitment from Senator Hutchinson.

The Corps has adhered to its commitment in the agreement which was to build the road "as funds become available". We placed it in our budget request and began the design. If the funds are made available in the FY 2001 budget, construction will begin on the road.

(3) Has any USACE official made any representations with respect to seeking funds for construction of the access road?

Mr. Walters was informed that we would put Cove Creek Park funding in our budget request but, in every conversation with Mr. Walters it was emphasized to him that USACE cannot lobby the congressional delegation for add-on funds. He very emphatically stated in a meeting with Little Rock District Real Estate Division that he had a commitment for the funding.

(4) <u>Is USACE planning to seek funds in the next available budget?</u>

Little Rock District placed the funds in our budget request for FY 2000 for the study and design and in FY 2001 for the construction of the road and park amenities for Cove Creek Park. No further requests have been discussed.

Nancy K. Brooks
Attorney Work Product or Attorney-Client Privileged Communication
For Official Army use Only--Confidentiality Requested
Do Not Routinely Copy, Forward, or Release
DO NOT RELEASE UNDER FOIA

Park, Thomas S SWL

From: Hargis, Edwin C SWL
Sent: Wednesday, September 20, 2000 6:57 AM
To: Park, Thomas S SWL; Roark, Chris B SWL
Subject: FW: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

Tommy,

FYI. We are still not certain that Ronnie's complaint is not centered around former ASA(CW) Lancaster's alleged remarks. However, Ms. Nee said "I'm not going there." in our phone call. Discussion with Jerry Noggle after the conference call gives me an idea that we (the District) may have another "Clearwater boat ramp" construction project to fund.

-----Original Message-----
From: Noggle, Thomas G SWL
Sent: Tuesday, September 19, 2000 3:32 PM
To: Watford, Edward R SWL
Cc: Hathaway, Randy J SWL; Risher, Thomas P SWL; Ragar, Anthony F SWL; Hargis, Edwin C SWL; Bowers, Dick M SWL; Jackson, Brinda J SWL; Singleton, Bernard O SWL; Allen, Ralph H SWL; Medlock, James M SWD
Subject: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

Ed - Vince Montante called last week and talked to Phil Risher and myself in SWD while we were at the SWD O&M WLG meeting about this issue. He was unsuccessful in setting up a conference call with everyone he wanted in on it. He called this morning and we set up and did a conference call at 1300 hours 19 Sep 00, today. On line in SWL were myself; Anthony Ragar, RE; Win Hargis, Ops; and Chris Roark, Ops. On line in HQ's were Vince Montante, Programs; Susan Nee, OC; and Karen Vaughn, RE. Vince stated that OC had to get a response to the EIG by this Friday 22 Sep 00. We did not have a copy of the EIG complaint and HQ's seemed unwilling to provide info. Anthony Ragar (per the EIG) informed Ms Nee that the real complaint was against prior ASA(CW), Mr. Lancaster, regarding remarks he made at a fund raising meeting in the Greers Ferry area about additional marina construction. We explained to Ms Nee all we new about the MOU and the agreements/commitments from both the Corps and Mr. Walters. Ms Nee stressed the fact that the MOU words "as funds become available" meant that SWL had made a commitment to build the access road, stated that if we didn't intend to build the road unless a Congressional Add was provided then we should have stated that. We told her that we had a 1" thick file of documents where Mr. Walters had been informed that we didn't intend to build this road unless A Congressional Add was provided. Ms Nee stated that the MOU would over ride all this documents. I told her Ralph Allen, OC, had first hand knowledge concerning the MOU and Ms Nee asked me to have Ralph call her when he returned from his Camden, AR, FUDS trip with Margaret Morehead. Anthony Ragar says he talked to the EIG and he told him there were other issues concerning the prior ASA (CW), Mr. Lancaster. If this is true, I'm concerned that the access road issue in the MOU may be a way for HQ's to make the political issue go away, i.e. direct SWL to build the road. I told Vince that this was low priority work, we would have to reprogram higher priority work to do this, and this item would never be funded due to higher priority needs. He asked what the price was and I told him $1.1 - 1.2M. The estimated price in the fact sheets below is actually $1.15M.

Eden Isle-Greers Ferry 1.doc    Eden Isle-Greers Ferry.doc    EdenIsle_IGcomplaint.doc

EXHIBIT
2
PENGAD 800-631-6989

**Park, Thomas S SWL**

**From:** Hargis, Edwin C SWL
**Sent:** Wednesday, September 20, 2000 6:57 AM
**To:** Park, Thomas S SWL; Roark, Chris B SWL
**Subject:** FW: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

Tommy,

FYI. We are still not certain that Ronnie's complaint is not centered around former ASA(CW) Lancaster's alleged remarks. However, Ms. Nee said "I'm not going there." in our phone call. Discussion with Jerry Noggle after the conference call gives me an idea that we (the District) may have another "Clearwater boat ramp" construction project to fund.

-----Original Message-----
**From:** Noggle, Thomas G SWL
**Sent:** Tuesday, September 19, 2000 3:32 PM
**To:** Watford, Edward R SWL
**Cc:** Hathaway, Randy J SWL; Risher, Thomas P SWL; Ragar, Anthony F SWL; Hargis, Edwin C SWL; Bowers, Dick M SWL; Jackson, Brinda J SWL; Singleton, Bernard O SWL; Allen, Ralph H SWL; Medlock, James M SWD
**Subject:** Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

Ed - Vince Montante called last week and talked to Phil Risher and myself in SWD while we were at the SWD O&M WLG meeting about this issue. He was unsuccessful in setting up a conference call with everyone he wanted in on it. He called this morning and we set up and did a conference call at 1300 hours 19 Sep 00, today. On line in SWL were myself; Anthony Ragar, RE; Win Hargis, Ops; and Chris Roark, Ops. On line in HQ's were Vince Montante, Programs; Susan Nee, OC; and Karen Vaughn, RE. Vince stated that OC had to get a response to the EIG by this Friday 22 Sep 00. We did not have a copy of the EIG complaint and HQ's seemed unwilling to provide info. Anthony Ragar (per the EIG) informed Ms Nee that the real complaint was against prior ASA(CW), Mr. Lancaster, regarding remarks he made at a fund raising meeting in the Greers Ferry area about additional marina construction. We explained to Ms Nee all we knew about the MOU and the agreements/commitments from both the Corps and Mr. Walters. Ms Nee stressed the fact that the MOU words "as funds become available" meant that SWL had made a commitment to build the access road, stated that if we didn't intend to build the road unless a Congressional Add was provided then we should have stated that. We told her that we had a 1" thick file of documents where Mr. Walters had been informed that we didn't intend to build this road unless A Congressional Add was provided. Ms Nee stated that the MOU would over ride all this documents. I told her Ralph Allen, OC, had first hand knowledge concerning the MOU and Ms Nee asked me to have Ralph call her when he returned from his Camden, AR, FUDS trip with Margaret Morehead. Anthony Ragar says he talked to the EIG and he told him there were other issues concerning the prior ASA (CW), Mr. Lancaster. If this is true, I'm concerned that the access road issue in the MOU may be a way for HQ's to make the political issue go away, i.e. direct SWL to build the road. I told Vince that this was low priority work, we would have to reprogram higher priority work to do this, and this item would never be funded due to higher priority needs. He asked what the price was and I told him $1.1 - 1.2M. The estimated price in the fact sheets below is actually $1.15M.

Eden Isle-Greers Ferry 1.doc    Eden Isle-Greers Ferry.doc    EdenIsle_IGcomplaint.doc

EIG

Park, Thomas S SWL

From: Miller, Michael E SWL
Sent: Wednesday, September 20, 2000 8:03 AM
To: Park, Thomas S SWL
Subject: FW: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

FYI

-----Original Message-----
From: Miller, Michael E SWL
Sent: Wednesday, September 20, 2000 8:02 AM
To: Risher, Thomas P SWL
Subject: RE: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

We need to stick to our guns here. We should budget for this, but it will always be deferrable.

-----Original Message-----
From: Risher, Thomas P SWL
Sent: Wednesday, September 20, 2000 7:24 AM
To: Miller, Michael E SWL
Subject: FW: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

FYI.

-----Original Message-----
From: Noggle, Thomas G SWL
Sent: Tuesday, September 19, 2000 3:32 PM
To: Walford, Edward R SWL
Cc: Hathaway, Randy J SWL; Risher, Thomas P SWL; Ragar, Anthony F SWL; Hargis, Edwin C SWL; Bowers, Dick M SWL; Jackson, Brinda J SWL; Singleton, Bernard O SWL; Allen, Ralph H SWL; Medlock, James M SWD
Subject: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

Ed - Vince Montante called last week and talked to Phil Risher and myself in SWD while we were at the SWD O&M WLG meeting about this issue. He was unsuccessful in setting up a conference call with everyone he wanted in on it. He called this morning and we set up and did a conference call at 1300 hours 19 Sep 00, today. On line in SWL were myself; Anthony Ragar, RE; Win Hargis, Ops; and Chris Roark, Ops. On line in HQ's were Vince Montante, Programs; Susan Nee, OC; and Karen Vaughn, RE. Vince stated that OC had to get a response to the EIG by this Friday 22 Sep 00. We did not have a copy of the EIG complaint and HQ's seemed unwilling to provide info. Anthony Ragar (per the EIG) informed Ms Nee that the real complaint was against prior ASA(CW), Mr. Lancaster, regarding remarks he made at a fund raising meeting in the Greers Ferry area about additional marina construction. We explained to Ms Nee all we knew about the MOU and the agreements/commitments from both the Corps and Mr. Walters. Ms Nee stressed the fact that the MOU words "as funds become available" meant that SWL had made a commitment to build the access road, stated that if we didn't intend to build the road unless a Congressional Add was provided then we should have stated that. We told her that we had a 1" thick file of documents where Mr. Walters had been informed that we didn't intend to build this road unless A Congressional Add was provided. Ms Nee stated that the MOU would over ride all this documents. I told her Ralph Allen, OC, had first hand knowledge concerning the MOU and Ms Nee asked me to have Ralph call her when he returned from his Camden, AR, FUDS trip with Margaret Morehead. Anthony Ragar says he talked to the EIG and he told him there were other issues concerning the prior ASA (CW), Mr. Lancaster. If this is true, I'm concerned that the access road issue in the MOU may be a way for HQ's to make the political issue go away, i.e. direct SWL to build the road. I told Vince that this was low priority work, we would have to reprogram higher priority work to do this, and this item would never be funded due to higher priority needs. He asked what the price was and I told him $1 1 - 1.2M. The estimated price in the fact sheets below is actually $1.15M

<< File. Eden Isle-Greers Ferry 1.doc >> << File: Eden Isle-Greers Ferry.doc >> << File:

1

ATOKA 72

EXHIBIT
3
PENGAD 800-631-6989

EIG
CC Mark

**Park, Thomas S SWL**

**From:** Miller, Michael E SWL
**Sent:** Wednesday, September 20, 2000 8:03 AM
**To:** Park, Thomas S SWL
**Subject:** FW: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

FYI

-----Original Message-----
**From:** Miller, Michael E SWL
**Sent:** Wednesday, September 20, 2000 8:02 AM
**To:** Risher, Thomas P SWL
**Subject:** RE: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

We need to stick to our guns here. We should budget for this, but it will always be deferrable.

-----Original Message-----
**From:** Risher, Thomas P SWL
**Sent:** Wednesday, September 20, 2000 7:24 AM
**To:** Miller, Michael E SWL
**Subject:** FW: Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

FYI.

-----Original Message-----
**From:** Noggle, Thomas G SWL
**Sent:** Tuesday, September 19, 2000 3:32 PM
**To:** Watford, Edward R SWL
**Cc:** Hathaway, Randy J SWL; Risher, Thomas P SWL; Ragar, Anthony F SWL; Hargis, Edwin C SWL; Bowers, Dick M SWL; Jackson, Brinda J SWL; Singleton, Bernard O SWL; Allen, Ralph H SWL; Medlock, James M SWD
**Subject:** Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek

Ed - Vince Montante called last week and talked to Phil Risher and myself in SWD while we were at the SWD O&M WLG meeting about this issue. He was unsuccessful in setting up a conference call with everyone he wanted in on it. He called this morning and we set up and did a conference call at 1300 hours 19 Sep 00, today. On line in SWL were myself; Anthony Ragar, RE; Win Hargis, Ops; and Chris Roark, Ops. On line in HQ's were Vince Montante, Programs; Susan Nee, OC; and Karen Vaughn, RE. Vince stated that OC had to get a response to the EIG by this Friday 22 Sep 00. We did not have a copy of the EIG complaint and HQ's seemed unwilling to provide info. Anthony Ragar (per the EIG) informed Ms Nee that the real complaint was against prior ASA(CW), Mr. Lancaster, regarding remarks he made at a fund raising meeting in the Greers Ferry area about additional marina construction. We explained to Ms Nee all we knew about the MOU and the agreements/commitments from both the Corps and Mr. Walters. Ms Nee stressed the fact that the MOU words "as funds become available" meant that SWL had made a commitment to build the access road, stated that if we didn't intend to build the road unless a Congressional Add was provided then we should have stated that. We told her that we had a 1" thick file of documents where Mr. Walters had been informed that we didn't intend to build this road unless A Congressional Add was provided. Ms Nee stated that the MOU would over ride all this documents. I told her Ralph Allen, OC, had first hand knowledge concerning the MOU and Ms Nee asked me to have Ralph call her when he returned from his Camden, AR, FUDS trip with Margaret Morehead. Anthony Ragar says he talked to the EIG and he told him there were other issues concerning the prior ASA (CW), Mr. Lancaster. If this is true, I'm concerned that the access road issue in the MOU may be a way for HQ's to make the political issue go away, i.e. direct SWL to build the road. I told Vince that this was low priority work, we would have to reprogram higher priority work to do this, and this item would never be funded due to higher priority needs. He asked what the price was and I told him $1.1 - 1.2M. The estimated price in the fact sheets below is actually $1.15M.

<< File: Eden Isle-Greers Ferry 1.doc >> << File: Eden Isle-Greers Ferry.doc >> << File:



HS COE 619

# GREERS FERRY TELECONFERENCE AGENDA

1 NOVEMBER 0900

HELD IN 3U13, PHONE NUMBER IN TEAM ROOM IS 202-761-7539

HQUSACE ATTENDEES:
- LAURA NORMAN, CERE-C
- PEG ERICKSON, CERE-C
- SUSAN NEE, CECC
- VINCE MONTANTE, CECW

CESWD: BRUCE HARDIE, CESWD-ET-R
CESWL: BILLY CABE, CESWL-RE
ANTHONY RAGAR, CESWL-RE

## AGENDA:

**PROBLEM:** LESSEE (MR. WALTERS) WANTS ROAD CONSTRUCTED TO SITE LEASED TO HIM. CONDITION 39 OF LEASE APPLICABLE; DISAGREEMENT BETWEEN LESSEE AND CORPS AS TO SPECIFIC PERFORMANCE IMPLEMENTATION OF CONDITION 39.

**DESIRED FUTURE OUTCOME:** ROAD ACCESS TO SITE LEASED TO MR. WALTERS

**COURSES OF ACTION TO REACH THE FUTURE OUTCOME:**
- MULTIPLE METHODS?
  - We fund and build?
  - He funds and builds (rental offset?)?
  - Other options?
- WHICH COURSE HAS THE BEST CHANCE OF SOLVING THE PROBLEM?
- IMPACT OF THE SOLUTION ON OTHER PARTS OF THE ORGANIZATION?
- WILL SOLUTION CHOSEN PREVENT PROBLEM RECURRENCE?
  - What's the agreement of maintenance for the road?
  - Is any dialogue between CESWD/CESWL going on with Mr. Walters' currently? Planned?

**SPECIFIC PLAN FOR IMPLEMENTATION OF SOLUTION?**
- WHO?
- WHEN?
- WHAT?

EXHIBIT 104
PENGAD 800-631-6989

COE EI 893

# GREERS FERRY TELECONFERENCE AGENDA

1 NOVEMBER 0900

HELD IN 3U13, PHONE NUMBER IN TEAM ROOM IS 202-761-7539

HQUSACE ATTENDEES:
LAURA NORMAN, CERE-C
PEG ERICKSON, CERE-C
SUSAN NEE, CECC
VINCE MONTANTE, CECW

CESWD: BRUCE HARDIE, CESWD-ET-R
CESWL: BILLY CABE, CESWL-RE
ANTHONY RAGAR, CESWL-RE

## AGENDA:

**PROBLEM:** LESSEE (MR. WALTERS) WANTS ROAD CONSTRUCTED TO SITE LEASED TO HIM. CONDITION 39 OF LEASE APPLICABLE; DISAGREEMENT BETWEEN LESSEE AND CORPS AS TO SPECIFIC PERFORMANCE IMPLEMENTATION OF CONDITION 39.

**DESIRED FUTURE OUTCOME:** ROAD ACCESS TO SITE LEASED TO MR. WALTERS

**COURSES OF ACTION TO REACH THE FUTURE OUTCOME:**

MULTIPLE METHODS?
- We fund and build?
- He funds and builds (rental offset?)?
- Other options?

WHICH COURSE HAS THE BEST CHANCE OF SOLVING THE PROBLEM?
IMPACT OF THE SOLUTION ON OTHER PARTS OF THE ORGANIZATION?
WILL SOLUTION CHOSEN PREVENT PROBLEM RECURRENCE?
- What's the agreement of maintenance for the road?
- Is any dialogue between CESWD/CESWL going on with Mr. Walters' currently? Planned?

**SPECIFIC PLAN FOR IMPLEMENTATION OF SOLUTION?**

WHO?
WHEN?
WHAT?

EXHIBIT NO. 190
HUFFMAN & ROBINSON, INC.
COURT REPORTERS

**Hipp, Charlotte B SWL**

**From:** Miller, Michael E SWL
**Sent:** Monday, April 02, 2001 1:15 PM
**To:** Park, Thomas S SWL; Risher, Thomas P SWL; Noggle, Thomas G SWL
**Cc:** Crockett, Cynthia A SWL; Hargis, Edwin C SWL; Roark, Chris B SWL; Hipp, Charlotte B SWL; Watford, Edward R SWL; Holden, Thomas A Col SWL; Balgavy, John A SWL; Jackson, Brinda J SWL; Bass, Lee E SWL
**Subject:** RE: Cove Creek/Eden Isle Marina Expansion - the IG issue - building the road
**Importance:** High

I talked to Ed this morning and he agreed that we go ahead and take the 250k from HQ and inform them that we would expend that money to try and get the road in place to accommodate the marina. The restroom and utilities would be secondary to the road completion.

We need to plan and do this in house with either our Marine Terminal folks or Memphis so that we will have the maximum flexibility in stopping the work when we run out of $. We can pave the road later with JOC or other contracts.

Terry - pls see if you can get the $ from HQ.

Brinda (I assume you would have the lead from PM) Please begin the planning and scheduling.

Mike

EXHIBIT 8
PENGAD 800-631-6989

-----Original Message-----
**From:** Park, Thomas S SWL
**Sent:** Monday, April 02, 2001 12:50 PM
**To:** Risher, Thomas P SWL; Miller, Michael E SWL
**Cc:** Crockett, Cynthia A SWL; Hargis, Edwin C SWL; Roark, Chris B SWL; Hipp, Charlotte B SWL
**Subject:** RE: Cove Creek/Eden Isle Marina Expansion - the IG issue - building the road

First, I am concerned about using O&M funds to construct a facility for a commercial marina. Obviously a Congressional Add is the preferred method. Other marinas, not only at GF, but other projects as well, will no doubt be asking for similar work. The MOA with Ronnie Walters was written to include language that road, parking lot, toilet & utilities would be built as funds allow. It was explained to Mr. Walters & his attorneys that this meant they would have to convince a member of Congress to provide the funds. It is most unfortunate this was not included in the MOA language.

Now, however, with the report by the IG, it appears the Corps is getting stuck with the bill.

If we are to move forward with this, recommend we use either the Pine Bluff crew or the Memphis crew to construct the road. I would think they can build a road with SB2 base and single or double bit surface for much less than the Govt. estimate. Maybe contract the installation of the utilities at the time of road construction. The toilet we agreed to is a 2 stall (1 male, 1 female pre-fab vault toilet from Rom-Tec). This can be purchased for about $20k, installation will be about the same.



EDEN-133

Recommend:

1. Road & parking be done by hired labor Corps crew (Pine Bluff or Memphis) $250-300K
2. Utilities (water & electric) be installed by contract $50K
3. Purchase Rom-Tec toilet & have installed by PO $40K

total $340-390K

James Beard advised me today that the Memphis crew was looking for work. They had lost a $2M job.

Another big benefit of holding out for the Cong Add is the possibility the camp loop & waterborne toilet with showers might be included in an Add.

tsp

-----Original Message-----
**From:** Risher, Thomas P SWL
**Sent:** Monday, April 02, 2001 9:45 AM
**To:** Miller, Michael E SWL; Park, Thomas S SWL
**Cc:** Crockett, Cynthia A SWL
**Subject:** RE: Cove Creek/Eden Isle Marina Expansion - the IG issue - building the road

We might be able to find $170k in 02, but we are going to be very short next year and we are already identifying many unbudgeted needs that we will have to reprogram to cover.

-----Original Message-----
**From:** Miller, Michael E SWL
**Sent:** Friday, March 30, 2001 8:00 AM
**To:** Park, Thomas S SWL; Risher, Thomas P SWL
**Subject:** FW: Cove Creek/Eden Isle Marina Expansion - the IG issue - building the road

Tommy,

I'm tempted to take the 250k and do the minimum we can to get Ronnie in the area and eat the rest. We might also get HQ to agree to 170k in FY 02. What do you think? We might could also get Pine Bluff to put the road in for less than the 420k.

Phil - could we dig up another 170k in 02?

-----Original Message-----
**From:** Noggle, Thomas G SWL
**Sent:** Thursday, March 29, 2001 5:29 PM
**To:** Miller, Michael E SWL; Risher, Thomas P SWL
**Cc:** Watford, Edward R SWL; Hathaway, Randy J SWL
**Subject:** Cove Creek/Eden Isle Marina Expansion - the IG issue - building the road

Mike/Phil - Called Ray Russo back concerning our offer to HQUSACE to award the $640,000 contract with a $420,000 Base bid and the 2 options for paving the road($160,000) and building the vault toilet ($60,000); when HQUSACE furnished the $420,000 additional funds for the Base. Ray talked to Vince Montante, HQ's Programs, this afternoon about our offer. HQ's says they don't have but $250,000 of available funds. Their counter offer is - they will give us the $250,000 to award the contract, but, SWL funds the balance; OR, they go to the IG and tell him we (HQUSACE/SWL) don't have the available funds and the fellow will just have to take us to court. Per Russo, per HQ's if we lose we pay it all. I told Ray Russo we would discuss and access; and get back to him. Thanks.

**Hipp, Charlotte B SWL**

**From:** Miller, Michael E SWL
**Sent:** Monday, April 02, 2001 1:15 PM
**To:** Park, Thomas S SWL; Risher, Thomas P SWL; Noggle, Thomas G SWL
**Cc:** Crockett, Cynthia A SWL; Hargis, Edwin C SWL; Roark, Chris B SWL; Hipp, Charlotte B SWL; Watford, Edward R SWL; Holden, Thomas A Col SWL; Balgavy, John A SWL; Jackson, Brinda J SWL; Bass, Lee E SWL
**Subject:** RE: Cove Creek/Eden Isle Marina Expansion - the IG issue - building the road
**Importance:** High

I talked to Ed this morning and he agreed that we go ahead and take the 250k from HQ and inform them that we would expend that money to try and get the road in place to accommodate the marina. The restroom and utilities would be secondary to the road completion.

We need to plan and do this in house with either our Marine Terminal folks or Memphis so that we will have the maximum flexibility in stopping the work when we run out of $. We can pave the road later with JOC or other contracts.

Jerry - pls see if you can get the $ from HQ.

Brinda (I assume you would have the lead from PM) Please begin the planning and scheduling.

Mike

-----Original Message-----
**From:** Park, Thomas S SWL
**Sent:** Monday, April 02, 2001 12:50 PM
**To:** Risher, Thomas P SWL; Miller, Michael E SWL
**Cc:** Crockett, Cynthia A SWL; Hargis, Edwin C SWL; Roark, Chris B SWL; Hipp, Charlotte B SWL
**Subject:** RE: Cove Creek/Eden Isle Marina Expansion - the IG issue - building the road

First, I am concerned about using O&M funds to construct a facility for a commercial marina. Obviously a Congressional Add is the preferred method. Other marinas, not only at GF, but other projects as well, will no doubt be asking for similar work. The MOA with Ronnie Walters was written to include language that road, parking lot, toilet & utilities would be built as funds allow. It was explained to Mr. Walters & his attorneys that this meant they would have to convince a member of Congress to provide the funds. It is most unfortunate this was not included in the MOA language.

Now, however, with the report by the IG, it appears the Corps is getting stuck with the bill.

If we are to move forward with this, recommend we use either the Pine Bluff crew or the Memphis crew to construct the road. I would think they can build a road with SB2 base and single or double bit surface for much less than the Govt. estimate. Maybe contract the installation of the utilities at the time of road construction. The toilet we agreed to is a 2 stall (1 male, 1 female pre-fab vault toilet from Rom-Tec). This cab be purchased for about $20k, installation will be about the same.



HS COE 631

**Park, Thomas S SWL**

**From:** Park, Thomas S SWL
**Sent:** Monday, April 09, 2001 10:47 AM
**To:** Miller, Michael E SWL; Risher, Thomas P SWL; Watford, Edward R SWL; Ragar, Anthony F SWL
**Cc:** Ellis, James D SWL; Hicklin, Roger C SWL; Allen, Ralph H SWL; Rogers, R E SWL
**Subject:** Cove Creek/Eden Isle Marina

Folks,

I have some serious concerns about the optional lease site for Eden Isle Marina at Cove Creek Park. I know I have shared these in the past, but I feel the need to share again, before anything is placed on site.

1. I spoke with Jim Ellis & the Corps does need to have environmental studies done before we can allow the marina. At least an environmental assessment which could point to a more detailed study. This has not been done and was not done prior to the agreement for offering the Cove Creek site to Eden Isle Marina. I believe someone in Corps was under the impression this was categorically exempt from NEPA, but Jim advised this is not the case.

2. We know the Save Greers Ferry Lake is hunting for any avenue to attack Corps, especially credibility. Is this not going to furnish ammunition?

3. Constructing the road, utilities & toilet for the marina is contrary to our policy. If Congressional add was forthcoming, that would be a different story. However, even if a cong add was forthcoming, failure to obtain necessary environmental documentation would place Corps in jeopardy with the Congressperson responsible for obtaining funds.

I recommend everyone with Corps get together and plan strategy before any funds/work is obligated for this effort. We may need to "relick our calf" on this one. I realize Mr. Walters may want to sue, but would we be worse off than before? In other words, if he sues and judgment goes against the Corps, would we lose more than we originally would have lost? If we lose, would it cost us more than the proposed facility at Cove Creek?

If memory serves me correctly, Mr. Walters would have been limited on what he could have done on the 1000' taken from his lease area unless he dredged or placed really long walkways, which the Corps could have denied if he had adverse consequences.

Right now, there is no marina, nothing for environmental action against the Corps.

EXHIBIT 9 PENGAD 800-631-6989

EDEN-135



a TW

**Park, Thomas S SWL**

**From:** Park, Thomas S SWL
**Sent:** Monday, April 09, 2001 10:47 AM
**To:** Miller, Michael E SWL; Risher, Thomas P SWL; Watford, Edward R SWL; Ragar, Anthony F SWL
**Cc:** Ellis, James D SWL; Hicklin, Roger C SWL; Allen, Ralph H SWL; Rogers, R E SWL
**Subject:** Cove Creek/Eden Isle Marina

Folks,

I have some serious concerns about the optional lease site for Eden Isle Marina at Cove Creek Park. I know I have shared these in the past, but I feel the need to share again, before anything is placed on site.

1. I spoke with Jim Ellis & the Corps does need to have environmental studies done before we can allow the marina. At least an environmental assessment which could point to a more detailed study. This has not been done and was not done prior to the agreement for offering the Cove Creek site to Eden Isle Marina. I believe someone in Corps was under the impression this was categorically exempt from NEPA, but Jim advised this is not the case.

2. We know the Save Greers Ferry Lake is hunting for any avenue to attack Corps, especially credibility. Is this not going to furnish ammunition?

3. Constructing the road, utilities & toilet for the marina is contrary to our policy. If Congressional add was forthcoming, that would be a different story. However, even if a cong add was forthcoming, failure to obtain necessary environmental documentation would place Corps in jeopardy with the Congressperson responsible for obtaining funds.

I recommend everyone with Corps get together and plan strategy before any funds/work is obligated for this effort. We may need to "relick our calf" on this one. I realize Mr. Walters may want to sue, but would we be worse off than before? In other words, if he sues and judgment goes against the Corps, would we lose more than we originally would have lost? If we lose, would it cost us more than the proposed facility at Cove Creek?

If memory serves me correctly, Mr. Walters would have been limited on what he could have done on the 1000' taken from his lease area unless he dredged or placed really long walkways, which the Corps could have denied if he had adverse consequences.

Right now, there is no marina, nothing for environmental action against the Corps.



a... TW

**Park, Thomas S SWL**

**From:** Jackson, Brinda J SWL
**Sent:** Thursday, October 21, 2004 10:53 AM
**To:** Stein, Chuck C SWL; Aguilar, Carlos C SWD; Leggett, Dale SWL; Miller, Michael E SWL
**Cc:** Bogue, Larry E SWD; Pellicciotto, Elisa D SWD; Moore, Mark W SWL; Milholland, Mark A SWL; Park, Thomas S SWL
**Subject:** RE: Greers Ferry Shoreline/Marina Issue

Carlos -

This is the quick & dirty on the Cove Creek Marina issue at Greers Ferry:

In 1999, the Corps signed a MOU with the Eden Isle Marina that restricted development at that location, but reconfigured the lease site to add 1000 feet of shoreline at Cove Creek Park for development. The language in the MOU states, "The COE will construct an access road and parking for the marina at Cove Creek Park as funds become available". Design was initiated in 1999 and is currently "on the shelf" awaiting funds for construction. SWL did not (and currently does not) have the funds for this project. This project has been in SWL's O&M budget on an annual basis, but has been below the funded level.

The original estimate, completed in Nov 2000 was $640,000, and included the road, parking and a vault toilet. Due to inflation and the recent increase in construction materials, the current estimate for the construction is $840,000 (revised 5 Oct 2004).

During the past 5 years, the marina owner has complained to the IG on numerous occasions. In Dec 2000, SWL/SWD was directed by HQUSACE to reprogram funds from available sources. It was decided that sources were not available, so the reprogramming never happened. When the reprogramming didn't take place, HQUSACE was to provide additional funding, but this never materialized.

After a recent complaint by Ronnie Walters, the marina owner, the IG spoke with MAJ Patterson and asked why this work was never complete. The answer was that funds were not available, which has always been the case. She provided the latest estimate to the IG and has spoken with someone in HQ (I believe Joseph Bittner). The last I was told was that HQ was going to try and provide the funds to SWL for construction.

Hope this helps. If additional informationis required, please let me know.

Brinda J Jackson
O&M Project Manager

-----Original Message-----
From: Stein, Chuck C SWL
Sent: Wednesday, October 20, 2004 10:03 AM
To: Aguilar, Carlos C SWD; Leggett, Dale SWL; Miller, Michael E SWL; Jackson, Brinda J SWL
Cc: Bogue, Larry E SWD; Pellicciotto, Elisa D SWD; Moore, Mark W SWL
Subject: Re: Greers Ferry Shoreline/Marina Issue

EXHIBIT 11

PENGAD 800-631-6989

Carlos - HQ USACE has contacted Major Patterson on this Cove Creek issue. Brinda will you please respond to Carlos with the latest status.

--------------------------
Sent from my BlackBerry Wireless Handheld

EDEN-145

-----Original Message-----
From: Aguilar, Carlos C SWD <Carlos.C.Aguilar@swd02.usace.army.mil>
To: Leggett, Dale SWL <dale.leggett@swl02.usace.army.mil>; Miller, Michael E SWL <Michael.E.Miller@swl02.usace.army.mil>; Stein, Chuck C SWL <Chuck.C.Stein@swl02.usace.army.mil>
CC: Bogue, Larry E SWD <Larry.E.Bogue@swd02.usace.army.mil>; Pellicciotto, Elisa D SWD <Elisa.D.Pellicciotto@swd02.usace.army.mil>

Sent: Wed Oct 20 09:42:53 2004
Subject: Greers Ferry Shoreline/Marina Issue

Mike & Co.,
This concerns a marina operator at Greers Ferry lake who around the 1999 timeframe agreed to relocate his marina if SWL would build a road to his new location. When he has inquired on the status of the new road he is advised it cannot be built until funds are made available.

The gentleman has inquired with some of the District folks as well as the EIG (I don't know why) and USACE Programs whom have referred the inquiry to SWDO.

Can you folks apprise us of this matter, the validity of such agreement, costs if any and current status as we owe the EIG person a reply.

Carlos Aguilar
Operations

**Park, Thomas S SWL**

**From:** Jackson, Brinda J SWL
**Sent:** Thursday, October 21, 2004 10:53 AM
**To:** Stein, Chuck C SWL; Aguilar, Carlos C SWD; Leggett, Dale SWL; Miller, Michael E SWL
**Cc:** Bogue, Larry E SWD; Pellicciotto, Elisa D SWD; Moore, Mark W SWL; Milholland, Mark A SWL; Park, Thomas S SWL
**Subject:** RE: Greers Ferry Shoreline/Marina Issue

Carlos -

This is the quick & dirty on the Cove Creek Marina issue at Greers Ferry:

In 1999, the Corps signed a MOU with the Eden Isle Marina that restricted development at that location, but reconfigured the lease site to add 1000 feet of shoreline at Cove Creek Park for development. The language in the MOU states, "The COE will construct an access road and parking for the marina at Cove Creek Park as funds become available". Design was initiated in 1999 and is currently "on the shelf" awaiting funds for construction. SWL did not (and currently does not) have the funds for this project. This project has been in SWL's O&M budget on an annual basis, but has been below the funded level.

The original estimate, completed in Nov 2000 was $640,000, and included the road, parking and a vault toilet. Due to inflation and the recent increase in construction materials, the current estimate for the construction is $840,000 (revised 5 Oct 2004).

During the past 5 years, the marina owner has complained to the IG on numerous occasions. In Dec 2000, SWL/SWD was directed by HQUSACE to reprogram funds from available sources. It was decided that sources were not available, so the reprogramming never happened. When the reprogramming didn't take place, HQUSACE was to provide additional funding, but this never materialized.

After a recent complaint by Ronnie Walters, the marina owner, the IG spoke with MAJ Patterson and asked why this work was never complete. The answer was that funds were not available, which has always been the case. She provided the latest estimate to the IG and has spoken with someone in HQ (I believe Joseph Bittner). The last I was told was that HQ was going to try and provide the funds to SWL for construction.

Hope this helps. If additional informationis required, please let me know.

Brinda J Jackson
O&M Project Manager

EXHIBIT 103

-----Original Message-----
From: Stein, Chuck C SWL
Sent: Wednesday, October 20, 2004 10:03 AM
To: Aguilar, Carlos C SWD; Leggett, Dale SWL; Miller, Michael E SWL; Jackson, Brinda J SWL
Cc: Bogue, Larry E SWD; Pellicciotto, Elisa D SWD; Moore, Mark W SWL
Subject: Re: Greers Ferry Shoreline/Marina Issue

Carlos - HQ USACE has contacted Major Patterson on this Cove Creek issue. Brinda will you please respond to Carlos with the latest status.

--------------------------

Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Aguilar, Carlos C SWD <Carlos.C.Aguilar@swd02.usace.army.mil>
To: Leggett, Dale SWL <dale.leggett@swl02.usace.army.mil>; Miller, Michael E SWL <Michael.E.Miller@swl02.usace.army.mil>; Stein, Chuck C SWL <Chuck.C.Stein@swl02.usace.army.mil>
CC: Bogue, Larry E SWD <Larry.E.Bogue@swd02.usace.army.mil>; Pellicciotto, Elisa D SWD <Elisa.D.Pellicciotto@swd02.usace.army.mil>

C/7 - FY05 Pgm (E.S Road - CC)

**Park, Thomas S SWL**

**From:** Aguilar, Carlos C SWD
**Sent:** Wednesday, December 15, 2004 10:36 AM
**To:** Stein, Chuck C SWL; Miller, Michael E SWL; Park, Thomas S SWL; Pellicciotto, Elisa D SWD
**Cc:** Holman, Kristina SWD; Earls, Gary A SWD; Boyd, Nancy J SWD
**Subject:** FW: EIG call - Greers Ferry Marina Road

Forwarded for your information. The final point here is that there are no additional funds that USACE will make available. The discussions between Bittner and Jones did not constitute a commitment of funds. I will call Mr. Jones this afternoon to let him know once again that the road work will continue to compete with other project maintenance requirements.

If any of you have some words of wisdom, let me know.

Carlos Aguilar

---

From: Bittner, Joseph H HQ02
Sent: Tuesday, December 14, 2004 7:33 AM
To: Aguilar, Carlos C SWD
Cc: Embree, David G SAS; Pointon, Mark HQ02; Meador, John A HQ02; Harron, Tom J HQ02; Holliday, Barry W HQ02; Augustine, William R HQ02; Benner, Marilyn K HQ02; Luisa, Pete C HQ02
Subject: EIG call - Greers Ferry Marina Road

Carlos,

Greers Ferry Lake was in the FY05 O&M Budget for $5,016,000; after S&S it will have about $4,775,000. The congressional delegation did not have any more added. I note that the agreement with the marina developer has the caveat . . . when funds become available . . . When I discussed Greers Ferry Lake with the EIG, we had identified funds around the Corps that could be revoked and applied to the marina access road. Subsequently, the unusually heavy impacts of the hurricane season, shoaling in the Lower Mississippi, and payment of self-financing contractors in SWG drained off this source of available funds. Hence we have no funds available from outside SWD.

In the very near future I will be sending a comprehensive spreadsheet to all MSCs showing the Conference amount and adjustment for Savings and Slippages for each project in the O&M program. A column will be provided for MSCs to indicate any project increases or decreases within our reprogramming authority. You could add $840,000 for Greers Ferry Lake providing this is offset by commensurate decreases to projects in the Division. The HQUSACE review team will be checking all adjustments in excess of $300,000. You may need to make a good case to justify placing the money for constructing an access road as opposed to funding other high priority work in the Division or elsewhere in the Corps. A synopsis of a legal opinion and/or EIG report would help in the review process.

I would have responded sooner, but wanted to give careful thought to this issue.

Best regards,

Joseph
O&M Appropriation Manager
CECW-IP 202.761.4130
mailto:joseph.bittner@usace.army.mil

EXHIBIT 12

PENGAD 800-631-6989

EDEN-142

-----Original Message-----
From: Aguilar, Carlos C SWD
Sent: Monday, December 13, 2004 11:42 AM
To: Bittner, Joseph H HQ02
Subject: FW: EIG call - Greers Ferry Marina Road

Joe,

F/7 - FY05 Pgm (ES Road - CC)

**Park, Thomas S SWL**

**From:** Aguilar, Carlos C SWD
**Sent:** Wednesday, December 15, 2004 10:36 AM
**To:** Stein, Chuck C SWL; Miller, Michael E SWL; Park, Thomas S SWL; Pellicciotto, Elisa D SWD
**Cc:** Holman, Kristina SWD; Earls, Gary A SWD; Boyd, Nancy J SWD
**Subject:** FW: EIG call - Greers Ferry Marina Road

Forwarded for your information. The final point here is that there are no additional funds that USACE will make available. The discussions between Bittner and Jones did not constitute a commitment of funds. I will call Mr. Jones this afternoon to let him know once again that the road work will continue to compete with other project maintenance requirements.

If any of you have some words of wisdom, let me know.

Carlos Aguilar

---

From: Bittner, Joseph H HQ02
Sent: Tuesday, December 14, 2004 7:33 AM
To: Aguilar, Carlos C SWD
Cc: Embree, David G SAS; Pointon, Mark HQ02; Meador, John A HQ02; Harron, Tom J HQ02; Holliday, Barry W HQ02; Augustine, William R HQ02; Benner, Marilyn K HQ02; Luisa, Pete C HQ02
Subject: EIG call - Greers Ferry Marina Road

Carlos,

Greers Ferry Lake was in the FY05 O&M Budget for $5,016,000; after S&S it will have about $4,775,000. The congressional delegation did not have any more added. I note that the agreement with the marina developer has the caveat . . . when funds become available . . . When I discussed Greers Ferry Lake with the EIG, we had identified funds around the Corps that could be revoked and applied to the marina access road. Subsequently, the unusually heavy impacts of the hurricane season, shoaling in the Lower Mississippi, and payment of self-financing contractors in SWG drained off this source of available funds. Hence we have no funds available from outside SWD.

In the very near future I will be sending a comprehensive spreadsheet to all MSCs showing the Conference amount and adjustment for Savings and Slippages for each project in the O&M program. A column will be provided for MSCs to indicate any project increases or decreases within our reprogramming authority. You could add $840,000 for Greers Ferry Lake providing this is offset by commensurate decreases to projects in the Division. The HQUSACE review team will be checking all adjustments in excess of $300,000. You may need to make a good case to justify placing the money for constructing an access road as opposed to funding other high priority work in the Division or elsewhere in the Corps. A synopsis of a legal opinion and/or EIG report would help in the review process.

I would have responded sooner, but wanted to give careful thought to this issue.

Best regards,

Joseph
O&M Appropriation Manager
CECW-IP 202.761.4130
mailto:joseph.bittner@usace.army.mil

-----Original Message-----
From: Aguilar, Carlos C SWD
Sent: Monday, December 13, 2004 11:42 AM
To: Bittner, Joseph H HQ02
Subject: FW: EIG call - Greers Ferry Marina Road

Joe,



HS COE 707