UNITED STATES COURT OF FEDERAL CLAIMS

EDEN ISLE MARINA, INC. PLAINTIFF

V. CASE NO. 07-127-C

U. S. ARMY CORPS OF ENGINEERS,
LITTLE ROCK DISTRICT,
ACTING THROUGH AND IN BEHALF OF
THE UNITED STATES OF AMERICA DEFENDANT

# PLAINTIFF'S MOTION TO COMPEL AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

Table of Contents....i

Table of Authorities....ii

Statement of Questions Involved....1

Introduction....1

Plaintiff's Written Discovery....2

Defendant's Waiver of the Attorney Client Privilege....4

Legal Discussion....4

A. The Corps Waived its Objections to Eden Isle's Requests for Production of Documents as a Result of its Failure to Timely Respond

B. The Corps' Previous Responses to Eden Isle's Pre-litigation FOIA Requests Does Not and Cannot Relieve the Corps of its Present Discovery Obligations

The Corps' Specific Discovery Deficiencies....8

The Corp Has Waived the Attorney-client Privilege with Regard to the Subject Matter of this Litigation....13

Conclusion....38

Exhibit A
Exhibit B
Exhibit C
Exhibit D
Exhibit E
Exhibit F
Exhibit G
Exhibit H

## TABLE OF AUTHORITIES

### STATUTES

Fed. R. Civ. P. 34(b)
RCFC 33(b)(4)
RCFC 34
RCFC 36

### CASELAW

Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 21 (D.D.C. 2004)

Blue Lake Forest Products, Inc. v. U.S., 75 Fed. Cl.779, 792 (2007)

Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990)

Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862-63 (D.C. Cir. 1980)

Culinary Foods, Inc. v. Raychem Corp., 150 F.R.D. 122, 125 (N.D. Ill. 1993)

Dairyland Power Co-op v. United States, 79 Fed. Cl. 722, 726-27 (2007)

Energy Capital Corp. v. United States, 45 Fed. C1. 481, 484-85 (2000)

Evergreen Trading, LLC v. U.S., ___ Fed. Cl. ___, 2007 WL 4553061, *4 (Fed. Cl. December 21, 2007)

First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 317 (2000)

Fort James v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005)

Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1344 (D.C. Cir. 1984)

Genetech, Inc. v. U.S. Intern. Trade Com'n, 122 F.3d, 1415 (Fed. Cir. 1997)

GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1275 (Fed. Cir. 2001)

Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash. 1975)

In re EchoStar Commun. Corp., 448 F.3d 1294, 1300 (Fed. Cir. 2006)

In re Grand Jury Proceedings October 12, 1995, 78 F.3d 251, 255-56 (6th Cir. 1996)

In re Keeper of Records (XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003)

In re Seagate Technology, 497 F.3d 1360, 1372 (Fed. Cir. 2007)

In re Sealed Case, 676 F.2d at 818

In re The Regents of the Univ. of California, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1193, 117 S. Ct. 1484, 137 L. Ed.2d 695 (1997)

John Doe Agency v. John Doe Corp., 493 U.S. 146, 153, 110 S. Ct. 471, 475 (1989)

Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1185 (9th Cir. 2006)

Krewson v. City of Quincy, 120 F.R.D. 6, 7 (D. Mass. 1988)

Nat'l Helium Corp. v. United States, 219 Ct. Cl. 612, 615-16 (1979)

Oregon Natural Resources Council Action v. United States Forest Serv., 59 F. Supp. 2d 1085 (W.D. Wash. 1999)

Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc., 116 F.R.D. 46, 52 (M.D.N.C. 1987)

Pleasant Hill Bank v. United States, 58 F.R.D. 97, 99 (W.D. Mo. 1973)

Ritacca v. Abbott Laboratories, 203 F.R.D. 332, 335 (N.D. Ill. 2001)

Sparton Corp. v. United States, 44 Fed. Cl. 557, 567 (1999)

Telephonics Corp. v. United States, 32 Fed. Cl. 360, 361 (1994)

United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991), *cert. denied*, 502 U.S. 813, 112 S. Ct. 63, 16 L. Ed. 2d 39 (1991)

United States v. Skeddle, 989 F. Supp. 917, 919 (N.D. Ohio 1997)

United States v. (Under Seal), 748 F.2d 871, 875 n. 7 (4th Cir. 1984)

Weil v. Investment/Indicators, Research & Management, Inc., 647 F.2d 18, 20 (9th Cir. 1981)

Zenith Radio Corp. v. United States, 764 F.2d 1577, 1579 (Fed. Cir. 1985)

MISCELLANEOUS

Developments in the Law-Privileged Communications, 98 Harv. L.Rev. 1629, 1637 (1985)

Haig, Robert L., Business and Commercial Litigation in Federal Courts, 2nd ed., 21:42, at 1068-69 (2005 Supp.)

Tomlinson, Use of the Freedom of Information Act for Discovery Purposes, 43 Md. L. Rev. 119, 121 (1984)

Comes the Plaintiff, Eden Isle Marina, Inc., by and through its attorneys, James & House, P.A., and The McMullan Law Firm, and for its Motion to Compel and Brief in Support, states:

## STATEMENT OF QUESTIONS INVOLVED

A. The Corps Waived its objections to Eden Isle's Requests for Production of Documents as a result of its failure to timely respond.

B. The Corps' previous responses to Eden Isle's pre-litigation FOIA requests does not and cannot relieve the Corps of its present discovery obligations.

C. The Corp has waived the attorney-client privilege with regard to the subject matter of this litigation.

## I. INTRODUCTION

This case involves a dispute between the Plaintiff, Eden Isle Marina, Inc. ("Eden Isle"), and the U.S. Army Corps Of Engineers (the "Corps"), initially concerning the Corps' wrongful refusal to allow Eden Isle's expansion of its lease area. Subsequently a Memorandum of Understanding ("MOU") was entered into which Plaintiff asserts was forced upon it, for all practical purposes, and removed prime lease area from his state of the art marina. Further, after conducting an investigation and obtaining documents from the Corps under FOIA, Plaintiff learned the Corps misrepresented material facts underlying the reasons for the MOU. This newly discovered information was the basis for filing this suit.

Under the MOU and in exchange for the lease area removed at Eden Isle Marina, Plaintiff was to have received a marina lease area at Cove Creek on Greers Ferry Lake in

the State of Arkansas. Before Plaintiff could place his improvements for a marina, the Corps promised to build him a paved access road, utilities and other things. The documents Plaintiff received revealed the Corps intended to merely go through the formalities of appearing to obtain funds, but indeed, had no intention of ever performing. These facts will be demonstrated at trial. Against this backdrop Eden Isle has attempted to conduct discovery in this case in order to prepare for trial. However, as discussed in more detail below, the Corps has failed to meaningfully participate in written discovery in this case. Plaintiff has therefore been left with no choice but to file the present Motion to Compel and Brief in Support.

## II. PLAINTIFF'S WRITTEN DISCOVERY

1. On December 6, 2007, Plaintiff generated its First Sets of Requests For Admissions, Interrogatories, and Requests for Production of Documents to Defendant.

2. The discovery requests were calculated to lead to the discovery of relevant evidence.

### A. Requests For Admissions

3. On January 8, 2008, Defendant responded to Plaintiff's Requests for Admissions, a copy of which is attached hereto as Exhibit A and incorporated by reference.

4. Defendant filed a five-page response but failed to include page 3 of the Response. Despite repeated requests, page 3 has never been provided.

4. Accordingly, Request for Admissions Nos. 7, 8, 9, and 10 should be deemed

admitted. Also as described in the accompanying Brief, Defendant's Responses to Request for Admissions Number 11 is incomplete and Defendant should be compelled to respond.

B. Interrogatories

5. Also on January 8, 2008, Defendant responded to Plaintiff's Interrogatories, a copy of which are attached hereto as Exhibit B and incorporated by reference.

6. Similarly, as described in the accompanying Brief, Defendant's Responses to Interrogatory Nos. 1 and 4 are incomplete and Defendant should likewise be compelled to answer.

7. Defendants did provide a "draft" response to Interrogatory No. 5, but never provided a formal response. A copy of the "draft" response is attached as Exhibit C.

C. Requests For Production Of Documents

8. With regard to Plaintiff's Requests for Production of Documents, Defendant simple chose not to respond contending responsive documents had been produced prelitigation through the FOIA process.

9. As a result of its failure to respond, the Corps has waived its objections to Plaintiff's Requests for Production of Documents.

10. In April of 2008, after months of discovery and depositions, Defendant elected to provide draft responses to Plaintiff's Request for Production of Documents. Copies of these draft responses are attached hereto as Exhibit D and incorporated by reference.

11. Plaintiff respectfully submits that these draft responses constitute non answers until signed.

12. Regardless, Defendant's draft responses to the following Requests for Production of Documents are insufficient and Defendant should be compelled to answer: Request for Production Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 15, 16, 17, 18, 19, 21 and 22.

## III. DEFENDANT'S WAIVER OF THE ATTORNEY CLIENT PRIVILEGE

13. Plaintiff moves to compel all documents and information responsive to their discovery requests for which the Defendant has asserted the attorney-client privilege.

14. Attached hereto as Exhibit E and incorporated by reference are copies of documents voluntarily produced by the Defendant sent, by, to, or carbon copied to counsel.

15. Plaintiff submits that the Defendants voluntary production of attorney-client privileged communication waives the Defendants' right to withhold other documents as the documents voluntarily disclosed.

16. Accordingly, the Defendants should be compelled to produce all documents and information responsive to Plaintiff's discovery requests for which it previously asserted the attorney-client privilege.

## IV. LEGAL DISCUSSION

In connection with this Motion to Compel, two legal issues arise. The first issue is the Corps' waiver of objections to Eden Isle's discovery requests as a result of the

Corps' failure to timely respond. The second issue is the Corps' misplaced reliance upon its Freedom Of Information Act ("FOIA") responses in lieu of properly complying with its discovery obligations in this case. Each of these issues will be discussed in turn.

A. The Corps Waived Its Objections To Eden Isle's Requests For Production Of Documents As A Result Of Its Failure To Timely Respond

RCFC 33(b)(4), the rule governing service of responses to interrogatories, provides that "[a]ll grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." While RCFC 34, the rule governing service of responses to requests for production of documents, technically does not contain similar "waiver" language, it is well-established that "a failure to assert an objection in the 30 days to respond provided by Fed. R. Civ. P. 34(b) can result in waiver."[1] See Haig, Robert L., Business and Commercial Litigation in Federal Courts, 2nd ed., 21:42, at 1068-69 (2005 Supp.) (citing, among other cases, Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 21 (D.D.C. 2004) (failure to object to discovery requests in a timely fashion waives any objections unless good cause is shown); Ritacca v. Abbott Laboratories, 203 F.R.D. 332, 335 (N.D. Ill. 2001) (under Rule 34(b), parties served with a document request must object within 30 days and must state the reason for their objection; failure to do so may result in waiver of the objection); Krewson v. City of Quincy, 120 F.R.D. 6, 7 (D. Mass. 1988) (noting that any other result would "completely frustrate the time limits

[1] RCFC 33 and RCFC 34 are identical to the corresponding Rules 33 and 34 of the Federal Rules of Civil Procedure. See RCFC 33 and 34 (Rules Committee Notes).

contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences.") (citation omitted).

The Corps failed to respond to the particular requests for production of documents identified *infra*. Accordingly, Eden Isle respectfully submits that they have waived any objections which they might once have had and should now be compelled to fully and completely produce all responsive documents.

B. The Corps' Previous Responses To Eden Isle's Pre-Litigation FOIA Requests Does Not And Cannot Relieve The Corps Of Its Present Discovery Obligations

In conducting its due diligence prior to filing the Complaint in this case, Plaintiff's counsel generated multiple FOIA requests to the Corps. These FOIA requests resulted in the Corps' pre-litigation production of certain documents, many of which have been utilized in this case. As a result of these prior FOIA responses, once litigation was filed the Corps took the position that these same documents were also supposedly responsive to Eden Isle's discovery requests and therefore initially chose not to answer Eden Isle's discovery requests. The Corps later supplemented and elected to answer some of the requests, but even these responses are incomplete.

With this background in mind, the Corps cannot simply rely upon the FOIA in lieu of complying with its discovery obligations. See generally Dairyland Power Co-op v. United States, 79 Fed. Cl. 722, 726-27 (2007) (government required to respond to discovery requests in a manner that did not merely refer to other interrogatory responses or documents, but which more directly responded to the question presented).

Specifically, discovery is "designed to narrow and clarify the issue in litigation and to ascertain the facts, relevant to those issues." Tomlinson, Use of the Freedom of Information Act for Discovery Purposes, 43 Md. L. Rev. 119, 121 (1984). A litigant should not be required to use the FOIA for discovery, since his access to information under the court rules that regulate the discovery process "should be as great or greater than that available under the [act]." Id., at 121 (describing relationship between federal FOIA and discovery in federal civil litigation). The United States Supreme Court has held that the FOIA was neither intended to supplement or displace the rules of discovery. John Doe Agency v. John Doe Corp., 493 U.S. 146, 153, 110 S. Ct. 471, 475 (1989).

For this reason, Plaintiff contends that it is well-established that the Corps cannot evade or ignore its discovery obligations under the civil procedure rules by simply referring to or relying upon the FOIA. For example, "information unavailable under the FOIA is not necessarily unavailable through the discovery process. . . .[T]he fact that the information sought is exempt from disclosure under the FOIA does not necessarily mean that the information is exempt from discovery." Culinary Foods, Inc. v. Raychem Corp., 150 F.R.D. 122, 125 (N.D. Ill. 1993). See also Pleasant Hill Bank v. United States, 58 F.R.D. 97, 99 (W.D. Mo. 1973) (that information may be exempt from disclosure to the general public under the FOIA does not establish that information is privileged under the civil procedure rules). "The FOIA acts as a 'floor' when discovery of government documents is sought in the course of litigation. Though information available under the FOIA is likely to be available through discovery, information unavailable under the FOIA is not

necessarily unavailable through discovery." Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1344 (D.C. Cir. 1984). (citation omitted). See also Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1185 (9th Cir. 2006) (documents exempt under the FOIA are not automatically privileged in civil discovery, and thus may not be excepted from the presumption in favor of public access to government records).

## V. THE CORPS' SPECIFIC DISCOVERY DEFICIENCIES

### A. Responses to Requests For Admissions

Attached as Exhibit F is a chart itemizing the deficiencies in the Corps' responses to specified Requests For Admissions. Defendant sent to Plaintiff a five-page response but responses to Requests for Admissions Nos. 7, 8, 9, and 10 were omitted. Plaintiff pointed this out to Defendant and requested this omission on several occasions. Indeed, Plaintiff and Defendant had agreed after the most recent status conference with the Court to a deadline of September 15, 2008 to fully respond to written discovery and produce documents. Despite this deadline, the Corps did not respond to the Requests for Admissions Nos. 7, 8, 9, and 10 on Exhibit F and, therefore, the Court should deem these admitted. RCFC 36.

The Defendant's response to Request for Admission No. 11 is a non-answer and there is no basis for the objection as shown on Exhibit F. Numerous documents contained in the Corps' files make the statement the Corps was acting under political influence. The object of written discovery is to narrow factual disputes. The Corps simply side steps this request by stating the law, not the facts. This is a key element in Plaintiff's case

because not only did the Corps not fulfill its obligations to Plaintiff, but also it led Plaintiff to believe the Corps' hands were tied because of political pressure. What Plaintiff seeks to eliminate as an issue is that this political influence does not relieve the Corps of its obligations. The Request is proper and the Corps should be ordered to respond.

B. Responses To First Set Of Interrogatories

See Exhibit G, which is a chart itemizing the deficiencies in specified Interrogatories. The Defendant's responses to Interrogatories Nos. 1 and 4 are not true. During the course of discovery numerous other Corps employees and former employees who had knowledge of the facts were identified piecemeal. In fact, they continue to be identified piecemeal in the course of scheduling depositions. They were not identified in Plaintiff's initial disclosure. It is essential for the Plaintiff to have all names not only because Plaintiff is entitled, but also because Plaintiff is limited in the number of depositions and cannot make this decision where potential witness information trickles in.

Also, Plaintiff is confident that all responsive documents have not been made available for inspection and copying. Indeed, when Plaintiff's counsel went to the Corps' offices for the production of responsive documents, counsel expected to need a dolly to transport the documents. Instead, only a few sheets of paper were produced. Plaintiff is entitled to the production of all responsive records and information.

C. Corps' Draft Responses To First Set Of Requests for Production Of Documents

1. Requests Not Responded To

When it finally chose to respond, all the Corps has provided is draft responses to the Requests for Production of Documents. (Exhibit D) They are unsigned Responses. As stated in Eden Isle's Motion, it considers these draft Responses to be non answers.

Regardless, even in the draft answers not all of the Requests for Production were answered. The Corps simply chose not to answer Requests for Production of Documents Numbers 1 through 5. Plaintiff therefore requests an Order be entered requiring the Corps to provide full and complete responses within ten (10) days of the date of the Order.

2. Requests With Vague Responses

With regard to the following Requests for Production of Documents, the Corps has identified certain responsive documents but it is unclear if the Corps is representing that these are all of the responsive documents. The specific requests are set out in Exhibit H and are Request for Production Numbers 6, 7, 9, 16, 17, 18, 19, and 21.

Throughout this case, the Corps has relied upon its FOIA productions to substitute for formal discovery, even though the Corps admittedly has no roster of the documents Plaintiff received. On certain documents, Plaintiff has identified what it has in order to avoid unnecessary expense of duplication. For example, Plaintiff has told the Corps Plaintiff has copies of prior deposition transcripts in another case. Oddly, the Corps

reproduced portions of those. Also, the Plaintiff identified file cover titles on Cove Creek, stating the contents of each and stating that contents on some files were not copied during FOIA. Yet, those documents were not produced. Plaintiff clearly identified a reference to a "Congressional file" which the Corps' witness said was separate from files in the Real Estate Division or Project Office. The Corps has still not produced this file. The Corps has not produced documents pertaining to its receipt of funds and distribution of same as to the Little Rock District. This is improper and it should be compelled to provide responsive documentation as to all documents requested.

Plaintiff requests an Order from this Court requiring the Corps to provide all responsive documents within ten (10) days of the date of the Order.

3. Requests With Improper Objections

Plaintiff asserts that Requests for Production Nos. 8, 11, and 12 as shown on Exhibit H had improper objections. On Request for Production No. 8, it is unclear as to what is meant by "defendant's files." Dr. Zirschky was Undersecretary of the Department of the Army who had involvement with issues relating to Eden Isle Marina. Surely the Department of the Army has some responsive records.

As to Requests for Production Nos. 11, 12, and 13, Defendant has not complied. Plaintiff has the cease and desist order as it was served on Plaintiff October 25, 1996. The issuance of other cease and desist orders to marina operators is relevant since the occurrence of this, at least in the State of Arkansas, is extremely rare and remarkable. In this case it is all the more remarkable in light of the Corps admission that there was no

basis for the cease and desist order. It is, however, relevant to show the extent of the Corps deviation from its policies and procedures and the political influence that was exerted on it. Plaintiff anticipates that the evidence will show that the cease and desist order was the product of political influence and that the order for the issuance of the cease and desist order came from Washington, not the local level. The Request is calculated to lead to the discovery of relevant evidence and should be answered. The Corps should be compelled to answer.

4. Requests With Incomplete Responses

The next category are a series of responses by the Corps in which it does identify several documents. Unfortunately, Plaintiff is unsure as to whether the Corps has made the appropriate search and produced all responsive documentation. Further, the responses refer (without specifically stating) to the FOIA productions. As stated previously, these responses are not sufficient. The bottom line is Plaintiff is entitled to a certification and assurances from the Corps that all responsive documents have been produced. There is no objection to the discovery request and they are clearly calculated to lead to the discovery of relevant evidence. This specifically applies to Request for Production No. 6, 7, 9, 15, 16, 17, 18, 19, and 21.

5. Requests Related To Inspector General Documentation

Finally, the Corps response to Request for Production No. 22 underscores all the problems with discovery. See Exhibit H for the specific Request and Response. No privilege log has been produced by the Defendant in this case. A separate log was

produced in connection with FOIA production, but as discussed above, different standards and rules apply. Inquiries to, from, and about the Inspector General are directly relevant to the issue in this case as it shows (as alleged in the Complaint) the Corps' fraudulent concealing of its wrongdoing, which will upon information and belief, contain admissions and other evidence directly relevant to the issues which will be vital in cross-examination. All of this relates to the claims in our case. To date the Corps has failed and refused to provide the responsive documentation in any way related to the Inspector General. It should be compelled to do so.

To the extent the Corps belatedly seeks to assert the attorney client privilege (which Plaintiff disputes exists) the privilege has been waived both as a result of the Corps' failure to timely respond and as discussed below its voluntary production of records.

## VI. THE CORP HAS WAIVED THE ATTORNEY-CLIENT PRIVILEGE WITH REGARD TO THE SUBJECT MATTER OF THIS LITIGATION.

### A. Factual Discussion

A review of Exhibit E reflects a total of forty four (44) documents sent by, received by, or cc'd to the Corps' counsel which have been produced by the Corps during various times. The documents bates prefixes and manner or reason for producing follows:

| Bates Prefix | Source | Reason Produced |
|---|---|---|
| HS COE | Corps Project Office | FOIA |
| COI EI | Corps District Office | FOIA |
| ATOKA | Both Corps Offices | EIA Investigation |

| | | |
|---|---|---|
| PB LR | Corps District Office | EIA Investigation |
| PB HS | Corps Project Office | EIA Investigation |
| EDEN | DOJ | Rule 26 |
| COE LIT | DOJ | Discovery Response |

The Corps' counsel who sent, received, are "cc'd" or discussed on the documents identified on Exhibit E are as follows: R.E. Rogers, Office of Counsel, Little Rock District; Nancy Brooks, Attorney with Little Rock District Real Estate Division; Ralph Allen, Office of Counsel Little Rock District; Rupert Jennings, Counsel Inspector General's Office; Bob Jones, Counsel Inspector General's Office; and Susan Nee, Office of Counsel Headquarters.

Based upon the sheer volume of records that have been voluntarily produced the Corp cannot credibly argue that the disclosures were inadvertent or unintentional. Instead, it is clear that the Corp has chosen to selectively waive the attorney-client privilege. This selective waiver is not allowed and, instead, resulted in a waiver of the attorney-client privilege and work product doctrine.

1. The Attorney-Client Privilege

The attorney-client privilege protects confidential communications between an attorney and client made for the purpose of obtaining legal advice. In re EchoStar Commun. Corp., 448 F.3d 1294, 1300 (Fed. Cir. 2006). The attorney-client privilege is properly invoked where:

> (1) The asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the

> bar of a court [and] ... (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his then client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceedings [and] ... (4) the privilege has been (a) claimed and (b) not waived by the client.

Energy Capital Corp. v. United States, 45 Fed. C1. 481, 484-85 (2000) (citation omitted).

The Federal Circuit recognizes that information presented to an attorney for purposes of assessing compliance with law and regulation is a communication covered by the attorney-client privilege. In re The Regents of the Univ. of California, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1193, 117 S. Ct. 1484, 137 L. Ed.2d 695 (1997) (citation omitted). The Court of Appeals for the Federal Circuit explained:

> It is well settled that the attorney-client privilege is not limited to actions taken and advice obtained in the shadows of litigation. Persons seek legal advice and assistance in order to meet legal requirements and to plan their conduct; such steps serve the public interest in achieving compliance with law and facilitating the administration of justice and indeed may avert litigation. Id.

For the purposes of applying the attorney-client privilege, a federal agency qualifies as a "client," and federal agency counsel function as attorneys. Blue Lake Forest Products, Inc. v. U.S., 75 Fed. Cl.779, 792 (2007) (citing Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862-63 (D.C. Cir. 1980)). In addition, whenever the United States, its agencies, or officers are involved in litigation, an attorney-client relationship exists between Department of Justice ("DOJ") attorneys and an affected federal agency and its officers. Id. (citations omitted).

2. Waiver of Attorney-Client Privilege

Waivers of the attorney-client privilege "come in various sizes and shapes," In re Keeper of Records (XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003), but often derive from conduct or words that negate one or more of the elements of the privilege. See Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990). Thus, for example, the voluntary disclosure of privileged communications to third parties (who are neither agents of the attorney nor the client) belies the notion that the communications are made in confidence and generally destroys the privilege. Id.; see also Genetech, Inc. v. U.S. Intern. Trade Com'n, 122 F.3d, 1415 (Fed. Cir. 1997). Along these lines, it is generally stated that if a party waives the privilege as to a particular communication, it also is deemed to waive the privilege as to all communications involving the same subject matter. See, e.g., In re Seagate Technology, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (quoting Fort James v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("The widely applied standard for determining the scope of a waiver ... is that the waiver applies to all other communications relating to the same subject matter."); see also Echostar, 448 F.3d at 1299. But, as the Federal Circuit has cautioned, this rule must not be too liberally invoked lest it swallow the privilege. Evergreen Trading, LLC v. U.S., ___ Fed. Cl. ___, 2007 WL 4553061, *4 (Fed. Cl. December 21, 2007).

Courts have distinguished between situations in which the waiver occurred knowingly and in court, for example, through the invocation of a defense, versus situations in which the waiver arose inadvertently in an extrajudicial setting. Id.

(citations omitted). In addition, courts applying this rule have been careful not to define the "subject matter" of communications too broadly. Id. In this regard, the Federal Circuit has advised-"[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." Id. (citing Fort James, 412 F.3d at 1349-50; see also In re Seagate Tech., 497 F.3d at 1372; In re Keeper of the Records (XYZ Corp.), 348 F.3d at 23; In re Grand Jury Proceedings October 12, 1995, 78 F.3d 251, 255-56 (6th Cir. 1996)).

One court described the following factors as being relevant in this context:

> Among the factors which appear to be pertinent in determining whether disclosed and undisclosed communications relate to the same subject matter are: 1) the general nature of the lawyer's assignment; 2) the extent to which lawyers' activities in fulfilling that assignment are undifferentiated and unitary or are distinct and severable; 3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; 4) the circumstances in and purposes for which disclosure originally was made; 5) the circumstances in and purposes for which further disclosure is sought; 6) the risks to the interests protected by the privilege if further disclosure were to occur; and 7) the prejudice which might result if disclosure were not to occur.

United States v. Skeddle, 989 F. Supp. 917, 919 (N.D. Ohio 1997). Several courts have emphasized that, to fall under the scope of the subject-matter waiver rule, the other documents must "be directly related to the [disclosed subject]." United States v. (Under Seal), 748 F.2d 871, 875 n. 7 (4th Cir. 1984); see also In re Grand Jury Proceedings, 78 F.3d at 255-56.

3. Blue Lake Forrest Products

Perhaps the seminal case on waiver by the government is Blue Lake Forest Products, Inc. v. U.S., 75 Fed. Cl. 779, 781 (2007). There the plaintiffs filed a motion to compel, in which they contended that the defendant waived the attorney-client privilege and work-product immunity by placing privileged material at issue in the Blue Lake litigation, by voluntarily filing privileged documents in other lawsuits, and by inadvertently disclosing privileged documents during discovery in the Blue Lake litigation. Id. at 781. The Court of Federal Claims agreed that these privileges had been waived, and found an "at-issue" waiver and a subject matter waiver based upon the defendant's voluntary disclosure of privileged documents. Blue Lake, 75 Fed. Cl. at 781.

In order to completely understand the basis for the court's holding in Blue Lake, a brief discussion of the factual and legal background giving rise to the suit is necessary. The Blue Lake plaintiffs sought damages for breach of contract stemming from the United States Forest Service's suspension of their timber operations in national forests in the wake of the ruling in Oregon Natural Resources Council Action v. United States Forest Serv., 59 F. Supp. 2d 1085 (W.D. Wash. 1999) (ONRC Action). Id. In ONRC Action, the court held that the Forest Service arbitrarily and capriciously failed to comply with its obligation to perform surveys for certain rare plant and animal species before awarding timber sale contracts. Id. (citing ONRC Action, 59 F. Supp. 2d at 1093). Under the Northwest Forest Plan ("the Plan"), surveys of species to be protected were required to be done before ground-disturbing activities were undertaken to ensure that the viability

of certain rare species would not be affected by logging. Id. The Forest Service and the Department of the Interior issued memoranda stating that timber sales were exempt from the survey requirements if environmental impact statements (EIS) had been completed for the areas, even if the ground-disturbing activities had not begun. Id. Thus, according to the memoranda, timber sales could be awarded without the surveys as long as an EIS had been done. Id. The plaintiffs in ONRC Action argued that the memoranda unlawfully exempted many timber sales from the Plan's survey requirements in violation of statutes. Id. The ONRC Action Court agreed. Id.

In Blue Lake, the plaintiffs contended that the Government breached both the express provisions of their timber contracts as well as the implied duties to cooperate and not to hinder. Id. at 782. They argued that the Government's interpretation of the Plan as exonerating the agencies from the obligation to conduct surveys was arbitrary, capricious, and unreasonable. Id. The plaintiffs further argued that the suspensions were unreasonable because of this interpretation and because the Government possessed information which it did not provide the plaintiffs before they bought the sales. Id.

The plaintiffs also asserted that the Government's assumption of risk defense - that the plaintiffs had special knowledge equal to the Government's when they bid on and accepted the timber awards-placed what Government personnel knew and when they knew it at issue. Id. Because the Government is the only repository of information reflecting its own knowledge, the plaintiffs claimed a vital need for this discovery. Id.

Similarly, the plaintiffs contended that the Government broadly waived its

attorney-client privilege by intentionally disclosing in other litigation, privileged information regarding its interpretation of the Plan and its knowledge about potential suspension of the timber sales. Id. The Government contended that the waiver should be limited to those documents actually disclosed. Id.

a. At-Issue Waiver of Attorney Client Privilege

The Blue Lake Court began its analysis by determining whether the Government's defenses of reasonableness and assumption of risk implicated an at-issue waiver of its privilege claims. Id. The Court noted that the Federal Circuit recognizes the implicit waiver of the attorney-client privilege when privileged information is "at issue." Id. at 783. This concept was first articulated in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash. 1975) and adopted by the Federal Circuit in Zenith Radio Corp. v. United States, 764 F.2d 1577, 1579 (Fed. Cir. 1985). Id. (citations omitted). Under Hearn, an implied waiver of the attorney-client privilege occurs when: (1) assertion of the privilege was a result of some affirmative act, such as filing suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Id. (citing Hearn at 581).

The at-issue implied waiver applies where the privilege holder makes assertions, the truth of which can only be assessed by examination of privileged communications. Id. (citing United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991), *cert. denied*, 502 U.S. 813, 112 S. Ct. 63, 16 L. Ed. 2d 39 (1991)). See generally Developments in the Law-

Privileged Communications, 98 Harv. L.Rev. 1629, 1637 (1985) ("It has become a well accepted component of waiver doctrine that a party waives his privilege if he affirmatively pleads a claim or defense that places at issue the subject matter of privileged material over which he has control."). The Hearn rationale for excepting communications from the attorney-client privilege has been applied to work product. Id. at 783-84. (citations omitted). The Federal Circuit's decision in EchoStar, 448 F.3d at 1302, does not alter this conclusion. Id. at 784 n. 7. There, the Federal Circuit reversed the district court's conclusion that the scope of a waiver of the work-product protection should include work product that was not disclosed to the client. Id. The Federal Circuit explained that "work-product waiver only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product," and does not cover "counsel's legal opinions and mental impressions that were not communicated" to the client. Id. (citing EchoStar, 448 F.3d at 1303-04. The Blue Lake Court found that, by virtue of the plaintiffs' definition of the at-issue waiver, the work product subject to the waiver is only that which was communicated to the client agencies in connection with the decision making being challenged. Id.

The Blue Lake plaintiffs contended that the Government waived the attorney-client privilege and work product immunity with respect to the following issues: (1) the Government's interpretation of the Plan; and (2) the Government's decision to award the timber sales despite developments in the ONRC Action litigation. Id. at 782-83. The plaintiffs asserted that the agencies were confronted with questions as to whether they

should follow the Plan by halting the sales and doing the surveys or grandfathering in the EIS's which had already been performed and construing this to be sufficient compliance with the Plan without doing any surveys. Id. at 783. The plaintiffs contended that the advice of DOJ attorneys involved with the ONRC Action litigation was implicated in awarding the sales underlying the plaintiffs' action. Id.

The plaintiffs did not argue that the at-issue waiver covered attorney-client privileged communications among various Government counsel in the Blue Lake action. Id. at n. 5. Rather, the plaintiffs claimed the at-issue waiver for documents which, for the most part, predated December 2000, and related privileged information concerning the Government's challenged interpretation of the Plan and its decision to award the timber sales despite developments in ONRC Action. Id.

The plaintiffs argued that the Government acted arbitrarily and capriciously both by interpreting the Plan to permit the Government to forego surveys where an EIS had been completed and by awarding timber sales despite developments in ONRC Action. Id. at 784. As such, the plaintiffs' allegations centered on information transmitted from Government counsel in the ONRC Action litigation and the use of that information in the Government's concurrent decision making. Id. Many of the documents in dispute were components of massive transmittals of information back and forth from counsel to agency personnel through two litigation coordinators, concerning strategy and actions dependant upon developments in ONRC Action, including timber sales. Id. The Blue Lake Court held that, as in Hearn "due to the nature of this suit, which puts the legal

advice defendants received directly in issue, the policy behind the privilege is outweighed by the necessity of disclosure, and the privilege is inapplicable." Id. (quoting Hearn, 68 F.R.D. at 583).

The Court held that, under the unusual circumstances in Blue Lake, the unreasonableness of the Government's interpretation of the Plan survey requirements and its award of the timber sales, despite developments in ONRC Action implicated privileged communications. Id. The Court found that the documents and testimony produced by the Government in discovery in the Blue Lake action, as well as privileged documents voluntarily produced by the Government in other cases litigated in the Court of Federal Claims, directly linked advice of counsel with the agencies' decisions for implementing the Plan, as well as their assessment of the ONRC Action litigation and its impact on the decision to award sales. Id. "These documents and deposition testimony reflect that the approval of counsel was a factor in the agencies' interpretation of the Northwest Plan and in going forward with the sales." Id. at 784-85. However, the Court cautioned that its "ruling should not be construed to mean that every time the reasonableness of agency action is challenged, the agency's privileged information becomes at issue." Id. at 785 n. 5.

Further, the Government raised an "assumption of the risk" defense, arguing that the plaintiffs assumed the risk by bidding on their timber contracts, knowing as much as the Government did about whether those contracts were likely to be suspended. Id. at 785-86. The plaintiffs contended that knowledge that the sales were likely to be

suspended was kept from them, and that it is essential to their case to know what the government agencies knew and when they knew it. Id. at 786. The Court agreed, and stated that absent the implied waiver, the plaintiffs would be unable to ascertain why the government agencies interpreted the Plan in the manner they did and what the Government itself knew about the likelihood of suspending these awards at various points in time. Id. Further, the Court stated that "[t]hese are crucial elements in assessing both the reasonableness of the Government's actions and whether the plaintiffs assumed the risk in accepting the awards." Id. The Court concluded that because privileged information was clearly at issue in this action and because withholding that information under privilege would deny the plaintiffs access to information vital to their claim, there was an at-issue waiver of the attorney-client privilege and work product protection with respect to documents relating to the Government's interpretation of the Plan and its decisions to award the timber sales despite developments in ONRC Action. Id.

In the instant case, the at issue waiver should be applied. EIM assumed the outstanding lease at Eden Isle Marina in 1995, but was prohibited from placing docks in the undeveloped lease area until Plaintiff agreed to sign the MOU in 1999 relinquishing 1,000 feet of shoreline. The prohibition was issued by the Corps in a cease and desist order due to political pressure. The Corps told Plaintiff that because this was a directive from Washington, D.C., the Corps was required to obey. The Corps agreed to lift the cease and desist only if Plaintiff would sign the MOU. A new 1999 lease was prepared

by the Corps to incorporate the MOU terms.

The Plaintiff has asserted numerous theories, including misrepresentation by the Corps and other actions of wrongful inducement to enter into the MOU, which facts were only discovered when Eden Isle performed FOIA requests as well as engaged its environmental consultants, Atoka, Inc., to perform an environmental assessment at Eden Isle Marina. Most of the documents on Exhibit "E" were obtained during those two processes.

In the Government's affirmative defenses, the Government has claimed the doctrine of accord and satisfaction and asserted that the 1999 lease included the MOU and replaced the earlier 1995 lease. The Government claims that the 1999 lease is the only lease that is of full force and effect because the Plaintiff released the existing lease they assumed in 1995.

In reviewing the table of documents, the Court will see that events occurred primarily in 1998 which support Plaintiff's case and is necessary to Plaintiff's proof regarding the invalidity of the MOU and Plaintiff's right to rescind same. Without these documents, Plaintiff is likely to be severely prejudiced and unable to prove the Government's misrepresentations upon which Plaintiff relied in signing the MOU. For example, while there are unprivileged documents in the Corps' file which show that the Real Estate Division in the Little Rock District advised the newly appointed Colonel Holden (who came to the District in July of 1998) there was "no legitimate basis" to deny Eden Isle Marina's request for expansion, there is another document the Corps claims as

privileged that shows the planning involved in the Corps' factual misrepresentations to pressure Plaintiff into signing the MOU. All of this goes to the heart of Plaintiff's case - the Corps bent in favor of political pressure and the EIPOA, landowners with power and influence in D.C.

There were 13 files in which documents were removed by Allen, a Little Rock District Corps attorney heavily involved in obtaining the MOU in 1999. In particular, a memo for the Commander dated September 10, 1998 (Dep. Ex. 170, Bates COE EI 4893) which was produced during the FOIA process further demonstrates Col. Holden being advised by his legal department all of the reasons the Little Rock District should have allowed Eden Isle Marina's request for expansion. In spite of this advice and correct factual representations, Col. Holden created a method to convince Eden Isle Marina the Corps' hands were tied, and the only option available to EIM was to enter into the MOU surrendering possibly the most valuable leasehold interest on all of Greers Ferry Lake.

The documents appearing in the table demonstrate that many of the "facts" which the Corps represented to Eden Isle Marina to be true are, indeed, false. These facts are essential to Plaintiff's proof. The documents further reveal that counsel for the Corps, Ralph Allen, removed documents from the Corps' files immediately prior to the MOU which will likely never be retrieved again. (See ATOKA 985).

The Plaintiff has already established through the discovery process that numerous meetings occurred for which the Corps did not write or produce memorandums. These were revealed primarily during Col. Holden's deposition testimony. Meetings occurred

within the Corps' Little Rock District, the Corps' Division Office in Dallas, Arkansas Congressional Delegates, and the Assistant Secretary of the Army in Washington, D.C. Despite voluminous meetings, no memorandums are contained in the Corps' files memorializing the subject matter, the duration, the persons attending and, therefore, Plaintiff has been prejudiced severely in acquiring its proof. The Corps has been allowed to hide behind these secret meetings and memos for far too long, and it was based upon these documents' discovery, which resulted in the filing of this case.

The Government raised the issue of assumption of risk as an affirmative defense, asserting that the Plaintiff assumed the risk that Cove Creek Marina would be delayed or never built. Non-privileged documents reveal the Corps' manipulations in going through the formalities of requesting funds, but in-house emails state the project at Cove Creek will never be funded because it will never rise above other priorities. (See Chain of Emails, ATOKA 72; HS COE 619; Depo Ex. 3). Deposition Exhibits 2 and 3 also demonstrate problems with the Plaintiff's ability to rely upon the Corps' compliance with the rules of discovery. Had the Plaintiff not conducted its work for an environmental assessment at Eden Isle Marina, Plaintiff might not have received Deposition Exhibit 3, because when the Government produced a similar document (Dep. Ex. 2), its email left off the string of damaging information, "We need to stick to our guns here. We should budget for this, but it will always be deferrable." These two exhibits pertain to communications which originated from the Inspector General's office based upon a complaint filed by Plaintiff because the Corps was not performing at Cove Creek. Other

documents of the Corps respond to the EIG by mischaracterizing the nature of Plaintiff's true complaint. It has been asserted by the Plaintiff that not only did the Corps make misrepresentations and conceal information to Plaintiff, but also, they did so to the EIG.

As to Cove Creek, not only has Plaintiff learned that the Corps never intended to build its road, but also, the Plaintiff learned prior to filing litigation that, in fact, the Corps knew it was obligated to build the road and could not merely wait upon what the Corps said was required for funding, a Congressional Add, or earmark. The Corps had told Plaintiff for approximately ten (10) years that it was Plaintiff's responsibility to obtain the Congressional Add. However, the documents in Table "E" demonstrate that the Corps was instructed by the EIG's report that it was obligated to relocate its funds to construct the road; not wait for an earmark. In fact, there are email communications with Headquarters where it appears that Headquarters and the EIG are under the impression that the Little Rock District had taken steps to perform, but the email transmissions then indicate dropping off the names from EIG and communicating with local Corps to achieve its own internal agenda of doing whatever it would take <u>not</u> to construct the road. All of this is contrary to representations made to the Plaintiff and contrary to representations made to EIG and HQ.

In this case, the Corps, during the FOIA process, had an attorney review every single document prior to delivering the documents to Plaintiff's counsel. Some of these documents were withheld and the ones that are before the Court today were released. The Corps also fully opened its file to the Plaintiff's environmental consultant, a third

party. Therefore, the Plaintiff has successfully demonstrated to this Court that the Corps has voluntarily waived all attorney-client privilege on the issue of assumption of risk and accord and satisfaction. Alternatively, having placed these matters into the issues of this case, the at-issue waiver applies.

b. Subject-Matter Waiver of the Attorney-Client Privilege

The Blue Lake Court next addressed the issue of whether the Government's voluntary disclosure of six documents in other litigation and the inadvertent disclosure of another seven privileged documents in the Blue Lake litigation resulted in a subject-matter waiver of the attorney-client privilege. Id. It is settled in the Federal Circuit that a voluntary, intentional waiver of the attorney-client privilege applies to all other communications relating to the same subject matter. Id. at 793 (citing Fort James, 412 F.3d at 1349. See also Genentech, Inc., 122 F.3d at 1416; GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1275 (Fed. Cir. 2001). As the Federal Circuit has explained:

> Once the attorney-client privilege has been waived, the privilege is generally lost for all purposes and in all forums. Professor Rice explains the scope of a waiver of the attorney-client privilege as follows: When the attorney-client privilege has been waived, whatever the subject matter of the waiver, the privilege is gone.

Id. (quoting Genentech, 122 F.3d at 1416). However, "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." Id. (quoting Fort James, 412 F.3d at 1349-50).

With regard to the documents the Government voluntarily disclosed, one document, the Brouha Memorandum, was filed as part of the administrative record in a district court action, and five documents were voluntarily disclosed in other actions in the Court of Federal Claims. Id. at 786 n. 11. The plaintiffs initially asserted that the Government's voluntary disclosure of the Brouha Memorandum resulted in a subject-matter waiver of the attorney-client privilege on three subjects: 1) assumption-of-risk, 2) interpretation and implementation of the Plan, and 3) the contracting implications of awarding the timber sales to the plaintiffs without surveys and then having to suspend the sales to conduct surveys. Id. at 791. After learning of the Government's subsequent disclosure of the five additional documents in discovery in other litigation, the plaintiffs argued that the Government had waived "any attorney-client privilege regarding its actions in response to the ONRC Action plaintiffs' challenges to Forest Service timber sales, including those at issue in Blue Lake. Id. The Government argued that waiver should be restricted to the Brouha Memorandum itself because the Memorandum, while work product, is not protected by the attorney-client privilege and therefore its disclosure did not constitute a subject-matter waiver with respect to any documents beyond the Brouha Memorandum itself. Id.

The Court began its analysis by determining whether the Brouha Memorandum was protected by the attorney-client privilege based upon the principles discussed supra. The Court noted that two recipients of the Brouha Memorandum were attorneys-George Frampton and Al Fero. Id. at 792. Frampton, the acting chair of the Council on

Environmental Quality ("CEQ") requested the Brouha Memorandum. Id. The CEQ is generally responsible for assuring and assessing agencies' compliance with the National Environmental Policy Act ("NEPA"). Id. Ferlo was the Counselor to the Chief of the Forest Service who assisted the Chief in the development of Forest Service policy relating to compliance with environmental and procedural laws. Id. Both Frampton and Ferlo were responsible for ensuring compliance with environmental laws at the time they received the Brouha Memorandum. Id.

The Government argued that the Brouha Memorandum was not created "for the purposes of obtaining legal advice" and therefore does not qualify for the privilege. Id. However, the Court noted that the Memorandum itself indicated that it provided information concerning compliance with, and potential implementation of, the survey and manage requirements of the Plan. Id. The Court concluded that, according to Mr. Brouha's testimony and the Memorandum itself, the Memorandum provided information to Frampton and Ferlo for their determination regarding compliance with the survey and manage requirements of the Plan and federal statutes. Id. at 792-93. As such, the Court held that the Brouha Memorandum was subject to the attorney-client privilege. Id. at 793.

The Court further held that, by voluntarily filing the Brouha Memorandum in the administrative record of another lawsuit, the Government waived its attorney-client privilege for the Brouha Memorandum and all communications on the same subject matter. Id. The Court stated:

> . . . the Government made a strategic decision to disclose the Brouha Memorandum as part of the Administrative Record [of other litigation.] . . . An agency's inclusion of a document in the Administrative Record is not to be taken lightly. Rather, the Administrative Record filed by the agency is the basis for judicial review and suggests that the agency considered the document to be necessary for the Court's resolution of the action, presumably because the document informed the agency's own decision making. Because by statute the reviewing court is directed to review 'the whole record or those parts of it cited by a party,' the inclusion of a document in the Administrative Record is not only a voluntary disclosure, but also an intentional invitation to the reviewing court to consider the document. Id.

The voluntary disclosure of privileged documents litigation has resulted in a broad subject-matter waiver in a subsequent proceeding. Id. at 794. (citing First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 317 (2000)). The First Heights court "determined that the circumstances surrounding the disclosure counseled 'against a restrictive interpretation of the scope of the waiver' because the disclosure was 'intentional rather than inadvertent' and because the Government sought to introduce the privileged communications as evidence for its own benefit." Id. Similarly, the Blue Lake Court held that "the Government's intentional inclusion of the Brouha Memorandum in an Administrative Record militates against a narrow interpretation of the scope of the waiver." Id.

Further, the Court stated that the Government failed to demonstrate that it would be prejudiced by applying its voluntary privilege waiver to all other communications involving the same subject matter. Id. The Court noted that the privileged information implicated was not counsel's advice on handling the instant litigation. Id. Rather, the

privileged information concerned the reasonableness of the underlying conduct challenged in the litigation, the Government's actions in interpreting the Plan and in awarding timber sales. Id. The privileged information was not only intentionally disclosed in another litigation, it was at issue in Blue Lake in that discovery raised substantial questions as to whether the contracting officer's actions in proceeding with the timber sales were based on advice of counsel. Id. The Court concluded that "[f]airness demands that the plaintiffs be provided the opportunity to probe the entire record and assess what the Government selectively chose to reveal." Id. As the Federal Circuit recognized in EchoStar:

> [S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. In such a case, the party uses the attorney-client privilege as both a sword and a shield. To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.

Id. (quoting Echostar, 448 F.3d at 1301). See also Sparton Corp. v. United States, 44 Fed. Cl. 557, 567 (1999) ("[T]his principle is intended to prevent parties from disclosing some attorney client communications while retaining other, potentially harmful communications under the guise of the attorney-client privilege."); In re Sealed Case, 676 F.2d at 818 ("When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter").

By inserting the Brouha Memorandum into the administrative record in other

litigation, the Government waived the attorney-client privilege for all documents concerning the same subject matter. Id. The Court defined that subject matter to be: 1) the Government's interpretation and implementation of survey and manage requirements under the Plan, and 2) the Government's actions in response to the ONRC Action lawsuit regarding timber sales. Id. at 794-95.

The plaintiffs argued that the Government's voluntary disclosure of five additional documents, as well as deposition testimony regarding those documents in recent discovery in other Court of Federal Claims actions constitute further evidence of the Government's subject-matter waiver of its attorney-client privilege claims in the Blue Lake action. Id. at 795. Specifically, the plaintiffs contended that this discovery supported a waiver of any attorney-client privilege regarding the Government's action in response to the ONRC Action plaintiffs' challenges to Forest Service timber sales, including those at issue in this action. Id. The Government contended that none of those documents were subject to the attorney-client privilege. Id.

The Court held that the five additional documents that the Government voluntarily disclosed in other litigation were privileged. Id. at 795-97. Those documents reflected the Government's interpretation of the Plan and/or its deliberations and legal considerations concerning awarding timber sales while the litigation in ONRC Action was ongoing. Id. at 797. As such, the Court held that the Government's voluntary disclosure of those documents supported defining the scope of Government's subject-matter waiver of the attorney-client privilege as covering the Government's

interpretation of the survey and manage requirements under the Plan and the Government's actions in response to the ONRC Action lawsuit regarding timber sales. Id.

c. Waiver of Attorney-Client Privilege By Inadvertent Disclosure

Finally, the Blue Lake Court addressed the issue of whether the Government had waived the attorney-client privilege as to the seven privileged documents that it inadvertently produced in the Blue Lake case. The plaintiffs sought waiver of the attorney-client privilege as to the subject matter of those documents as well. Id. However, the Court refused to extend the subject-matter waiver that far. Id.

The Court recognized that "[t]here is no per se rule that a waiver must be found in all situations where there is a mistaken or inadvertent production of a privileged document." Id. at 798. (quoting Telephonics Corp. v. United States, 32 Fed. Cl. 360, 361 (1994)). An inadvertent disclosure does not waive the document's privileged nature if the party: (1) wished to keep back the privileged materials and (2) took adequate steps in the circumstances to prevent disclosure of such documents. Id. (citing Nat'l Helium Corp. v. United States, 219 Ct. Cl. 612, 615-16 (1979)).

In Blue Lake, the Government did not intend to disclose the seven privileged documents in question. Id. The Court concluded that, although the Government did not explain what steps it took to prevent the disclosure of privileged documents, the Government did not benefit from those disclosures, and the purposes of the subject-matter waiver doctrine would not be served by requiring the Government to further

disclose additional confidential communications. Id. See also Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc., 116 F.R.D. 46, 52 (M.D.N.C. 1987) ("the general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in the case of inadvertent disclosure, unless it is obvious a party is attempting to gain an advantage or make offensive or unfair use of the disclosure.")

d. Waiver of Attorney-Client Privilege By Deposition Testimony

The aforementioned rules regarding waiver of the attorney-client privilege for the voluntary disclosure of documents also apply to waiver of the privilege in the deposition context. In Weil v. Investment/Indicators, Research & Management, Inc., 647 F.2d 18, 20 (9th Cir. 1981), the plaintiff appealed the district court's order denying the plaintiff's motion to compel the defendant to answer certain discovery questions and requests related to communications between officers of the defendant and the defendant's counsel. The plaintiff argued that the defendant waived the attorney-client privilege to the information sought when it disclosed privileged information during discovery proceedings. Weil, 647 F.2d at 23. Specifically, the plaintiff argued that one disclosure occurred during the deposition of the defendant's officer, director, and alleged control person. Id. The defendant's officer/director testified that the defendant had been advised by its outside counsel that it would be best if the defendant registered wherever the defendant had a single shareholder. Id. The other disclosure was the alleged release by the defendant to the SEC of a letter written by the defendant's in-house counsel to the

defendant's outside counsel, in which the defendant's in-house counsel suggested that the defendant only register its shares in certain states. Id.

The Ninth Circuit Court of Appeals began its analysis of this issue by stating that the plaintiff alleged that the defendant acted with intent to defraud, deceive, or manipulate when it sold its shares without registering them and without disclosing to prospective purchasers the potential consequences of non-registration. Id. As such, the plaintiff was required to prove scienter. Id. The court stated that the defendant subsequently disclosed the content of a privileged communication in which the defendant's outside counsel suggested that the defendant was indeed required to register in every state where it had a shareholder. Id. "How the [defendant] understood its legal obligations regarding registration clearly is relevant and material to whether it acted with scienter." Id.

The court stated that the defendant disclosed the content of a privileged communication which was relevant and material to an issue in the case. Id. at 25. "Against this, the [defendant's] bare assertion that it did not subjectively intend to waive the privilege is insufficient to make out the necessary element of nonwaiver." Id. Therefore, the court concluded that the defendant waived its attorney-client privilege as to communications about the matter actually disclosed namely, the substance of the defendant's outside counsel's advice regarding registration of the defendant's shares pursuant to the Blue Sky laws of the various states. Id. Accordingly, the court reversed the district court's denial of the plaintiff's motion to compel, and remanded with

instructions that the defendant be directed to respond to the plaintiff's requests and questions regarding such advice. Id.

For the same reasons discussed in the at-issue portion of this Brief, the Government waived attorney-client privilege as to subject matter pertaining to the facts preceding and leading up to the signing of the MOU, as well as the subject matter of Cove Creek (post signing of the MOU). This Court should act sternly towards this Defendant in view of their affirmative steps to remove documents from their files, not memorialize meetings, and knowingly disobey the EIG's report. To do otherwise would send the wrong message to other federal agencies. This is not the message taxpayers should have sent by this Court. This is no time for leniency. As a matter of justice and fairness, Plaintiff is entitled for this Court to find that not only has the Government voluntarily disclosed documents to both Plaintiff and Plaintiff's third party consultant, Atoka, Inc., but all other documents related to these subjects should be deemed waived and delivered to Plaintiff.

## VII. CONCLUSION

Plaintiff has no desire for the production of duplicate records. It does, however, believe that it is entitled to the production of all responsive documents and information. To date the Corps' search for records and information has been too narrow or altogether incomplete. Further, the Corp should be compelled to produce documents and information responsive to Plaintiff's discovery requests which they previously contended were protected by the attorney-client privilege. For the reasons stated in this Motion and

Brief in Support, it should be compelled to provide full and complete responses to Eden Isle's discovery requests.

Respectfully submitted,

/s/ Marian M. McMullan
Marian M. McMullan, Bar No. 86123
THE McMULLAN LAW FIRM
P. O. Box 2839
Little Rock, AR 72203-2839
(501) 376-9119
(501) 376-8437 (fax)
McMullan@mcmullanlawfirm.com

and

Patrick R. James, Bar No. 82084
James & House, P.A.
801 West Third Street
P. O. Box 3585
Little Rock, AR 72203-3585
(501) 372-6555 - Telephone
(501) 801-2991 - Direct Dial
(501) 372-6333 - Facsimile
pjames@jamesandhouse.com

## CERTIFICATE OF GOOD FAITH

I certify that counsel for Plaintiff Eden Isle Marina, Inc. has in good faith conferred with counsel for the United States of America in an effort to resolve this discovery dispute without the Court's intervention.

/s/ Marian M. McMullan
Marian M. McMullan

CERTIFICATE OF SERVICE

I, Patrick R. James certify that on September 17, 2008, I electronically filed Plaintiff's Brief In Support Of Its Motion To Compel with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Joan.Stentiford-Ulmer@USDOJ.GOV

Joan M. Stentiford, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

Jim.W.Cullum@usace.army.mil

Mr. Jim Cullum Esq.
Corps of Engineers
CESWL-OC
P. O. Box 867
Little Rock, AR 72203

/s/ Marian M. McMullan
Marian M. McMullan