# In the United States Court of Federal Claims

No. 07-127C
(Filed: August 28, 2009)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| EDEN ISLE MARINA, INC., | * | Motion to Compel; Objections to Document |
| | * | Production; Freedom of Information Act; |
| Plaintiff, | * | Attorney-Client Privilege; Work-Product |
| | * | Protection; Privilege Log; Waiver of |
| v. | * | Privilege; Federal Rule of Evidence 502; |
| | * | Screening Process; Inadvertent Disclosure; |
| THE UNITED STATES, | * | Disclosure at Deposition; Failure to Rectify |
| | * | Disclosure; Subject-Matter Waiver; At-Issue |
| Defendant. | * | Waiver; Affirmative Defenses |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Marian Major McMullan, Little Rock, AR, for plaintiff.

Joan Stentiford Swyers, United States Department of Justice, Washington, DC, for defendant.

### RULING ON PLAINTIFF'S AMENDED MOTION TO COMPEL

**SWEENEY**, Judge

     Before the court in the above-captioned case is plaintiff's amended motion to compel. Plaintiff contends that defendant has not sufficiently responded to its discovery requests in a number of ways. For the reasons set forth below, the court grants in part and denies in part plaintiff's motion.

## I. BACKGROUND

### A. Factual History[1]

     On June 15, 1995, plaintiff assumed an existing lease offered by the United States Army Corps of Engineers ("Corps") to operate a marina on the Eden Isle Peninsula of Greers Ferry Lake, Arkansas. Am. Compl. ¶¶ 5, 10; Am. Compl. Ex. A. Plaintiff assumed the lease with the expectation of adding additional boat slips to the undeveloped portion of the leasehold, as permitted by the lease. Am. Compl. ¶¶ 13, 15. It had discussed its plans for improving and expanding the marina with the Corps prior to assuming the lease, and the Corps voiced no

---

[1] The court derives the facts in this section from the First Amended Complaint ("Am. Compl.") and the exhibits attached to the First Amended Complaint ("Am. Compl. Ex."). Thus, this abbreviated recitation reflects only plaintiff's version of the facts.

objections to its plans. Id. ¶¶ 17-18, 23.  However, when plaintiff submitted its plans to the Corps after assuming the lease, it faced resistance from, among others, residents of the Eden Isle community. Id. ¶ 36.  None of those opposed to plaintiff's plans was a party to the lease. Id. ¶¶ 38-40.  Nevertheless, the Corps communicated with these individuals about plaintiff's plans, which, according to plaintiff, resulted in the interference with its right to develop its leasehold. Id.  Specifically, plaintiff contends that the Corps predicated plaintiff's development plans upon the resolution of the nonparties' concerns. Id. ¶¶ 46, 64.  Ultimately, the Corps issued a cease-and-desist order to plaintiff directing that it halt all further development. Id. ¶¶ 57, 75.

Plaintiff was unable to develop its leasehold through 1999. Id. ¶¶ 60, 66.  It appears that sometime in late 1998 or early 1999, the Corps claimed that plaintiff had breached the lease by placing docks in an unauthorized location. Id. ¶ 72.  Plaintiff contends that the Corps used this allegation as leverage to force plaintiff to agree to a modification of the lease that required plaintiff to relinquish most of the undeveloped portion of the leasehold in exchange for (1) the lifting of the three-year-old cease-and-desist order; (2) a leasehold at Cove Creek comparable to the relinquished leasehold; (3) the Corps' construction of an access road and marina infrastructure at Cove Creek; (4) an extension of the term of the 1995 lease to 2023; and (5) allowing plaintiff to add a maximum of 192 boat slips at Eden Isle Marina. Id. ¶¶ 74-75.  Plaintiff felt that it had no option but to accept the Corps' offer. Id. ¶¶ 76-77, 83, 86.  Accordingly, plaintiff and the Corps memorialized their agreement in a February 2, 1999 Memorandum of Understanding and, on April 22, 1999, executed (1) an agreement to cancel the 1995 lease and (2) a lease "[m]odification." Id. ¶ 84; see Am. Compl. Exs. B, C.

For the next eight years, despite the Corps' representations in the Memorandum of Understanding, the Corps did not construct an access road to Cove Creek. Am. Compl. ¶¶ 90 to 92-A, 95, 103-S(a) to (b).  It was the position of the Corps that the Memorandum of Understanding required construction of the road only when Congress funded the project. Id. ¶ 91-A.  The Corps also advised that plaintiff alone bore the burden to procure funding for the project from its congressional representative. Id. ¶ 94.  On three occasions–sometime around 2001 and again in 2003 and 2004–plaintiff contacted the Engineer Inspector General concerning the Corps' failure to construct an access road to Cove Creek as promised in the Memorandum of Understanding. Id. ¶¶ 101-02.  The Engineer Inspector General did not respond to plaintiff's inquiries. Id.  Subsequently, in or around August 2008, the Corps constructed a gravel access road to Cove Creek. Id. ¶ 103-S(h).  More recently, plaintiff discovered that it would not be feasible to construct a marina at Cove Creek. Id. ¶¶ 103-S(e), -S(x).

## B.  Procedural History

Prior to instituting suit against the Corps, plaintiff's counsel performed due diligence by making "multiple" Freedom of Information Act ("FOIA") requests to the Corps. Pl.'s Am. Mot. Compel & Br. Supp. ("Mot. Compel") 6.  Pursuant to these requests, in July 2006, plaintiff's counsel and a paralegal reviewed documents provided by the Corps at the Corps' Little Rock District Office to select the pertinent documents for reproduction. Def.'s Opp'n Pl.'s Am. Mot.

Compel Attach. ("Opp'n Compel Attach.") A (affidavit of James R. Fisher) ¶ 3.  Prior to making the documents available to plaintiff's counsel, the Corps' Assistant District Counsel/FOIA officer, James R. Fisher, "reviewed documents from the Real Estate Branch, the Greers Ferry [Lake] Project Office, and documents related to an environmental assessment within the Greers Ferry Lake Project Office's area."  Id. ¶¶ 1-3.  Then, in October 2006, plaintiff's counsel and a paralegal reviewed documents at the Greers Ferry Lake Project Office, where they were met by Mr. Fisher and Sue Stone.[2]  Id. ¶ 3.  In total, plaintiff's counsel requested photocopies amounting to "15 file boxes" worth of material.  Id.  Mr. Fisher required "several weeks" to review the photocopied documents and compile a record of the withheld materials before he provided them to plaintiff's counsel.[3]  Id.  Mr. Fisher did not make a record of the photocopies that he provided to plaintiff's counsel.  Id.

In addition to the FOIA requests, plaintiff obtained documents provided by the Corps to ATOKA, Inc., an environmental consulting firm engaged by plaintiff "to perform an environmental assessment at Eden Isle Marina."[4]  Mot. Compel 25.  Paula Boyd, an employee of ATOKA, Inc., visited both the Little Rock District Office and the Greers Ferry Lake Project Office, where the Corps provided her with the relevant files.  Reply Compel Ex. A ¶¶ 4-5.  Ms. Boyd selected the pertinent documents, photocopied those documents, and removed the photocopies from the premises.  Id.  Ms. Boyd indicates that she "was not supervised during [her] review and copying of the documents at either office" and that "[n]o one from either office requested to review or indicated that they desired to review the documents [she] selected and copied before they could be released to [her]."  Id. ¶ 6.

Plaintiff filed a complaint in this court on February 26, 2007, which it amended and supplemented on April 16, 2009, setting forth three claims for relief.  First, plaintiff seeks rescission of the Memorandum of Understanding and the lease "[m]odification" due to (1) the Corps' fraud, misrepresentations, and concealment; (2) the lack, failure, or inadequacy of consideration; (3) duress; and (4) mistake of fact.  Am. Compl. ¶¶ 117-54.  Second, plaintiff

---

[2]  Sue Stone is not further identified in the record before the court.

[3]  In his affidavit, Mr. Fisher did not indicate the date or dates on which he provided the requested documents to plaintiff's counsel.

[4]  Plaintiff has provided no documentation concerning when it hired ATOKA, Inc. to perform the environmental assessment.  From the record before the court, it would appear that plaintiff's present counsel retained ATOKA, Inc. prior to August 2006.  See Reply Supp. Pl.'s Am. Mot. Compel & Br. Supp. Ex. ("Reply Compel Ex.") A (affidavit of Paula Boyd) ¶ 3 ("ATOKA was engaged by The McMullan Law Firm to conduct an Environmental Assessment (EA) of the potential effects for the expansion of Eden Isle Marina at Greers Ferry Lake."); Def.'s Opp'n Pl.'s Mot. Supplement Expert Reports Ex. 6 at 1 ("This report is provided at the request of Ms. Marian McMullan, Attorney for Eden Isle Marina . . . ."), 20 ("ATOKA's draft EA was completed in August 2006 . . . .").

asserts a claim for breach of contract (in lieu of rescission), identifying the contract at issue as the combination of the 1995 lease assumption, the Memorandum of Understanding, and the 1999 lease "[m]odification." Id. ¶¶ 155-59. In particular, plaintiff alleges an anticipatory breach, violation of implied duties, misrepresentation, and negligence. Id. ¶¶ 160-82. Third, plaintiff alleges a taking in violation of the Fifth Amendment and seeks compensation in an amount exceeding $18,000,000. Id. ¶¶ 183-212. The case was initially assigned to then-Chief Judge Edward J. Damich. Defendant filed its answer on June 21, 2007, which it amended on May 4, 2009, raising four affirmative defenses, two of which are relevant here. First, defendant asserts that plaintiff's claims are "barred by the doctrine of accord and satisfaction" because "[t]he parties executed a release of the 1995 lease on April 22, 1999 . . . ." Am. Answer ¶ 215. Second, defendant asserts that plaintiff "assumed the risk that the Cove Creek Marina would be delayed or never built." Id. ¶ 217.

After defendant filed its answer, the parties filed their Joint Preliminary Status Report addressing each of the questions set forth in section three of Appendix A to the Rules of the United States Court of Federal Claims ("RCFC"). For each question, the parties provided their individual responses, or, to the extent that they agreed, their joint response. Pursuant to section three, the parties were also required to submit a proposed discovery plan. See RCFC App. A, § 3, rule 5. As with some of their responses to the questions, the parties could not reach a consensus on discovery deadlines, and, consequently, set forth their respective proposals for the conduct of discovery. Although defendant proposed that "[d]iscovery requests shall be supplemented and fully amended no later than 30 days before the end of discovery," Joint Prelim. Status Report 8, the court did not adopt that deadline when it issued the first scheduling order. Instead, the initial scheduling order set the following deadlines: (1) fact discovery to close on June 30, 2008; (2) expert reports due by August 1, 2008; (3) rebuttal expert reports due by September 2, 2008; and (4) expert discovery to close on November 3, 2008.

Prior to the issuance of the scheduling order, the parties exchanged their RCFC 26(a) initial disclosures. Then, in accordance with the discovery schedule adopted by the court, plaintiff propounded, on December 6, 2007, its requests for admissions, interrogatories, and requests for the production of documents on defendant. Defendant timely responded to plaintiff's requests for admissions and interrogatories. However, defendant did not respond to plaintiff's document production requests. Defendant indicates that the parties "orally agreed to extend the time for providing responses to the request for production of documents," and, as a result, defendant "produced responsive documents on an ongoing basis, as the documents were located at the agency." Def.'s Opp'n Pl.'s Am. Mot. Compel ("Opp'n Compel") 3-4. According to defendant, by the end of November 2008, it had produced "2,848 pages of documents including approximately 600 additional pages of documents that were responsive to Eden Isle's requests concerning Cove Creek." Id. at 4.

On February 29, 2008, while discovery was ongoing, the case was reassigned to the undersigned. In the meantime, in early 2008, plaintiff began to depose witnesses. For example, plaintiff deposed Thomas Park on January 14, 2008; Anthony Ragar on January 16, 2008;

Colonel Phillip Scott Morris on February 20, 2008; Representative Marion Berry on March 13, 2008; and Colonel Thomas A. Holden, Jr. on March 27, 2008.  Then, sometime in April 2008, defendant provided plaintiff with an unsigned, partial response to plaintiff's document requests.[5] Further, plaintiff served an RCFC 30(b)(6) Notice of Deposition on April 28, 2008.

Plaintiff contacted the court in July 2008, indicating that discovery was being affected by a possible jurisdictional issue.  The court convened a status conference to discuss the matter and ultimately directed the parties to submit a proposed schedule for further proceedings.  After receiving the parties' proposed amended discovery schedule, the court issued an order revising the existing schedule as follows: (1) fact discovery to close on January 30, 2009; (2) expert reports due by February 2, 2009; (3) rebuttal expert reports due by March 2, 2009; and (4) expert discovery to close on May 4, 2009.

As noted above, during August 2008, while the parties were working to amend the discovery schedule, plaintiff became aware that the Corps was constructing an access road to Cove Creek.  Am. Compl. ¶ 103-S(h).  Thus, plaintiff served another RCFC 30(b)(6) Notice of Deposition "on the limited issue of Cove Creek," including whether development of the Cove Creek site was feasible.  Pl. Eden Isle Marina, Inc.'s Mot. Leave Supplement Expert Reports 3-4.

On September 17, 2008, plaintiff filed a motion to compel discovery.  In lieu of responding to the motion to compel, defendant filed a motion to dismiss pursuant to RCFC 12(b)(6), which was accompanied by a motion to stay discovery pending the court's resolution of its motion to dismiss.  Plaintiff responded in opposition to defendant's motion to stay discovery and the court conducted a status conference.  Ultimately, the court denied defendant's motion to stay discovery, finding that plaintiff was entitled to discovery to support its claims, and denied defendant's motion to dismiss, with a right to renew the motion once discovery was complete. The court also "requested that the parties, who had worked well together in the past, make one additional attempt to resolve or narrow their [discovery] disputes," and directed them "to report on the fruits of these efforts in a joint status report."  Order 2, Oct. 16, 2008.

Shortly thereafter, on October 22, 2008, defendant provided plaintiff with a privilege log, which listed sixteen documents that defendant claimed were exempt from discovery.[6]  The next day, defendant supplemented its responses to plaintiff's requests for admissions and interrogatories.  The parties also filed their joint status report at this time, indicating that they had "resolved some discovery issues and [were] working to resolve other discovery issues," but that a

---

[5]  In its brief in opposition to plaintiff's motion to compel, defendant indicates that this partial response "was prepared by agency counsel based upon his understanding of the parties' voluntary cooperative approach to discovery," and "should not have been provided to plaintiff's counsel as it was not authorized by defendant's counsel."  Opp'n Compel 4 n.2.

[6]  Defendant provided plaintiff with a supplemental privilege log on January 15, 2009. The eight additional documents included on the supplemental privilege log are not at issue here.

motion to compel remained necessary.  Joint Status Report, Oct. 22, 2008.  Accordingly, in an October 24, 2008 order, the court denied plaintiff's September 17, 2008 motion to compel as moot and set forth a deadline for plaintiff's new motion to compel.  Pursuant to the court's order, plaintiff filed the instant amended motion to compel on November 7, 2008, seeking an order from the court directing defendant to respond to two requests for admission and produce various requested documents.  On that same date, defendant provided plaintiff with the 600 pages of documents related to Cove Creek mentioned above.

In the meantime, the parties were involved in scheduling additional depositions.  One such deposition was that of Thomas Gerald Noggle, which occurred on December 4, 2008.  Two other depositions concerned "the Cove Creek issue": the December 3, 2008 deposition of Christopher Davies and the December 5, 2008 deposition of Andrea L. Lewis.  However, plaintiff asserts that the feasibility of development at Cove Creek was not addressed by these deponents, and that defendant refused to produce an RCFC 30(b)(6) witness because, in its view, plaintiff was responsible for undertaking feasibility studies prior to executing the Memorandum of Understanding.  As a result, plaintiff retained two firms to offer testimony on feasibility.

On January 26, 2009, the court conducted a recorded status conference to discuss plaintiff's amended motion to compel.  During the status conference, as memorialized in a subsequent order, the court (1) directed defendant to file a supplemental brief regarding the viability of the attorney-client privilege once a confidential communication had been used at deposition; (2) permitted plaintiff an opportunity to respond to defendant's supplemental brief, if desired; (3) directed plaintiff to propound reframed Requests for Admissions numbered 9 and 11; (4) directed defendant to respond to those reframed Requests for Admissions; and (5) indicated that it intended to schedule oral argument on plaintiff's motion once the parties had completed the supplemental briefing.

During this period, the parties continued to engage in discovery.  On January 31, 2009, plaintiff supplemented its RCFC 26(a) initial disclosures, identifying an additional fact witness and the substance of the additional expert testimony it intended to proffer.  Then, on February 2, 2009, plaintiff provided defendant with its expert reports.  Defendant objected to plaintiff's supplemental disclosures and some of the expert reports, and subsequently declined to withdraw its objections upon plaintiff's offer to take curative action.

As a result of this new dispute, plaintiff filed a motion for leave to supplement its expert reports.  The court then heard argument on both of plaintiff's discovery motions.  During the course of the oral argument, the court granted plaintiff's motion for leave to supplement its expert reports, directed defendant to provide to plaintiff an updated privilege log by April 9, 2009, and requested additional briefing on issues arising from plaintiff's amended motion to compel that were not previously addressed by the parties.  Having received this additional briefing, the court is prepared to rule.

## III. DISCUSSION

Plaintiff, in its amended motion to compel, contends that defendant has not adequately responded to its requests for admissions and requests for the production of documents. In addressing plaintiff's motion, the court applies the discovery rules set forth in the RCFC. In 2002, the United States Court of Federal Claims ("Court of Federal Claims") revised the RCFC to conform to the Federal Rules of Civil Procedure, with certain necessary modifications due to the court's jurisdiction. See RCFC, 2002 Rules Committee Note 1. Subsequently, the court has amended its rules on several occasions to "reflect parallel changes" to the Federal Rules of Civil Procedure. Id. at 3. Although the court has amended the relevant discovery rules several times during the pendency of this litigation to conform with changes to the Federal Rules of Civil Procedure, the substance of those rules has not changed. Accordingly, the court applies the discovery rules presently in effect. Moreover, because the RCFC's discovery rules mirror the discovery rules set forth in the Federal Rules of Civil Procedure, the court's interpretation of its rules "will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure." Id. at 1.

### A. Requests for Admissions

The first issue raised by plaintiff in its amended motion to compel concerns defendant's responses to Requests for Admissions numbered 9 and 11. During the January 26, 2009 status conference, as memorialized by the order of the same date, plaintiff agreed to serve new, reframed requests to defendant. Defendant's responses were due to plaintiff by February 23, 2009, and plaintiff has not informed the court that defendant's responses were inadequate. Accordingly, the court finds plaintiff's request for responses to Requests for Admissions numbered 9 and 11 to be moot.

### B. Production of Documents–General Contentions

Next, plaintiff advances several, general arguments concerning defendant's response to its document production requests. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents . . . ." RCFC 26(b)(1); see also RCFC 34(a)(1) (providing for the production of documents). The responding party has thirty days from the service of a document production request to respond, in writing, to the request. RCFC 34(b)(2)(A). If the responding party objects to producing a particular document or category of documents, the party is required to state its objection and the reasons for the objection. RCFC 34(b)(2)(B). The parties may modify the procedures set forth in RCFC 34(b) without court order so long as the modification does not "interfere with the time set for completing discovery, for hearing a motion, or for trial." RCFC 29(b).

**1.  Although Defendant's Document Production Was Timely, It Failed to Properly Raise Certain Objections to Plaintiff's Document Production Requests**

Plaintiff first contends that defendant waived any objections it had to plaintiff's document production requests because defendant did not produce responsive documents, or otherwise object, in a timely manner.  As noted above, plaintiff propounded its initial set of document production requests on December 6, 2007.  Defendant did not respond to those requests, in writing, within thirty days of service as required by RCFC 34(b)(2)(A).  Rather, defendant avers that the parties "orally agreed to extend the time for providing responses to the request for production of documents," and that, as a result, it "produced responsive documents on an ongoing basis, as the documents were located at the agency."  Opp'n Compel 3-4.  According to defendant, by the end of November 2008, it had produced "2,848 pages of documents including approximately 600 additional pages of documents . . . concerning Cove Creek," id. at 4, and that by April 2, 2009, the date of oral argument, it had produced all relevant, responsive material.  Plaintiff does not dispute that it agreed to the ongoing production of documents.  Instead, plaintiff argues, because it did not receive the 600 pages of Cove Creek documents until the date that its amended motion to compel was due (i.e., November 7, 2008), it was unable to review those documents prior to filing its motion.

As an initial matter, the court concludes that the approximately 2,248 pages of documents produced by defendant that did not concern Cove Creek were timely produced because the parties had agreed to modify the document production procedures set forth in RCFC 34(b), as permitted by RCFC 29(b).  Moreover, plaintiff does not contend that defendant's production of the 600 pages of documents concerning Cove Creek in any way adversely affected the deadline for fact discovery or the court's ability to rule on plaintiff's motion to compel.  See RCFC 29(b).  Indeed, fact discovery had not yet closed, and neither briefing nor oral argument relating to plaintiff's motion to compel was delayed by the timing of defendant's production.  Accordingly, the court finds that defendant's production of documents was timely.

However, the court finds that, aside from its privilege claims and FOIA arguments, which are addressed below, defendant has not properly notified plaintiff of any objections that it had to the document production requests.  The parties have not alleged any agreement to waive defendant's obligation to provide plaintiff with written objections to plaintiff's document production requests, and there is no evidence that defendant provided plaintiff with a responsive document containing defendant's objections, aside from its privilege log, prior to the close of fact discovery.[7]  See also Opp'n Compel 4 n.2 (acknowledging that "defendant's document responses

---

[7]  Based upon defendant's representations and RCFC 26(g), the court declines to consider the unsigned response attached as Exhibit B to plaintiff's amended motion to compel as an official response made in compliance with RCFC 34(b)(2)(A).  The rules of this court provide unambiguously that every discovery response "must be signed by the attorney of record . . . ."  RCFC 26(g)(1); see also Opp'n Compel 4 n.2 (explaining that the document "was prepared by agency counsel based upon his understanding of the parties' voluntary cooperative approach to

should have been formally documented").  The failure to make a proper objection to a document production request may result in the waiver of those objections.  See Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991) ("If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections.").  Here, defendant had sufficient opportunity to raise, in writing, any objections that it might have had to plaintiff's document production requests.  Thus, to the extent that defendant has failed to object, in writing, to plaintiff's document production requests for any reason aside from privilege or the FOIA, defendant has waived those objections.

### 2.  Defendant May Not Invoke the FOIA to Avoid the Production of Documents

As a second, general argument, plaintiff contends that defendant's refusal to produce documents that are already in plaintiff's possession pursuant to its FOIA requests is unacceptable.  Defendant indicates that "[r]ather than duplicate documents previously provided to plaintiff," its attorney "conferred with agency counsel and plaintiff's counsel to ascertain which documents had already been produced."  Opp'n Compel 3.  However, plaintiff is not satisfied that defendant's explanation is sufficient and contends that defendant's failure to maintain a log of documents produced to plaintiff pursuant to the FOIA is improper.  Indeed, plaintiff describes evidence indicating that the documents produced pursuant to its FOIA requests do not constitute the entirety of discoverable documents.

The law is well-settled that "FOIA was not intended to supplement or displace the rules of discovery."  John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989).  Thus:

> If information in government documents is exempt from disclosure to the general public under FOIA, it does not automatically follow the information is privileged within the meaning of rule 26(b)(1) and thus not discoverable in civil litigation.  The FOIA acts as a "floor" when discovery of government documents is sought in the course of civil litigation.  Though information available under the FOIA is likely to be available through discovery, information unavailable under the FOIA is not necessarily unavailable through discovery.

Friedman v. Bach Halsey Stuart Shields, Inc., 738 F.2d 1336, 1344 (D.C. Cir. 1984) (citations omitted).  Accordingly, defendant here is precluded from raising FOIA as grounds for an objection to any of plaintiff's document production requests.  Plaintiff is entitled to all relevant,

---

discovery" and "should not have been provided to plaintiff's counsel as it was not authorized by defendant's counsel").  Thus, plaintiff's contention that defendant raised "improper objections" to Requests for Production numbered 8, 11, and 12, see Mot. Compel 10, is moot.  Because defense counsel did not sign the discovery response, the purported objections lodged by defendant contained therein have no legal significance and therefore the court will not recognize them.

nonprivileged documents, regardless of whether those documents were within the parameters of its prior FOIA requests.[8]

### 3. Defendant Shall Provide Plaintiff With a Written Response to Plaintiff's Document Production Requests

It is abundantly clear that defendant has not provided plaintiff with a satisfactory written response to plaintiff's document production requests. Defendant's oral averment that it has produced to plaintiff all relevant, nonprivileged documents is insufficient to establish that all responsive documents have been produced, given the piecemeal method of document production agreed to by the parties. Plaintiff has raised several issues with defendant's document production to which defendant has failed to provide an adequate written response: (1) failure to respond to Requests for Production numbered 1-5; (2) vague responses to Requests for Production numbered 6, 10, and 15-22; (3) incomplete responses to Requests for Production numbered 6, 10, and 20-22; and (4) possible unsupplemented responses to Requests for Production numbered 15-19. Plaintiff is entitled to a written certification from defendant describing, for each Request for Production, whether all responsive documents have been produced and, if not, the legal justification for withholding the responsive documents (bearing in mind the court's holdings above that defendant has waived all objections, other than privilege).

### C. The Law on Privilege

As noted above, pursuant to RCFC 26(b)(1), parties may obtain discovery of relevant, nonprivileged material. Claims of privilege are "governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Fed. R. Evid. 501. The remaining arguments in plaintiff's amended motion to compel concern defendant's invocation of attorney-client privilege or the work-product doctrine as justification to withhold certain documents and to limit the discovery of certain other documents. Thus, the court prefaces its analysis of plaintiff's arguments with a brief overview of the two implicated privileges.

### 1. The Attorney-Client Privilege

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997). Communications between a government agency and government agency counsel, as well as communications between a government

---

[8] This holding applies to all of plaintiff's document production requests. The court notes, however, that plaintiff raises its FOIA argument, in particular, with respect to defendant's "vague" responses to Requests for Production numbered 6, 10, and 15-22, Mot. Compel 9-10, as well as to defendant's "incomplete" responses to Requests for Production numbered 6, 10, 20, and 21, id. at 11.

agency and attorneys from the Department of Justice representing the government agency in litigation, are included within the ambit of the attorney-client privilege.  See Blue Lake Forest Prods., Inc. v. United States, 75 Fed. Cl. 779, 792 (2007) (citing 5 U.S.C. § 3106 (2000); 28 U.S.C. § 516 (2000); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980)); Sparton Corp. v. United States, 44 Fed. Cl. 557, 566 (1999) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 154 (1975); CIT Group/Equip. Fin., Inc. v. United States, 24 Cl. Ct. 540, 542-43 (1991)); see also Fed. R. Evid. 501 (providing that a "government, State, or political subdivision" may assert a privilege).

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  "However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976); see also Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484 (2000) ("The assertion of privileges is strictly construed.").  Consequently, an assertion of attorney-client privilege is proper when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), quoted in AAB Joint Venture v. United States, 75 Fed. Cl. 432, 446 (2007); First Fed. Sav. Bank of Hegewisch v. United States, 55 Fed. Cl. 263, 266 (2003).  The party asserting the privilege bears the burden of demonstrating the applicability of the privilege.  See In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003); Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 25 (9th Cir. 1981); Evergreen Trading, LLC, by & Through Nussdorf v. United States, 80 Fed. Cl. 122, 127 (2007).

## 2. The Work-Product Doctrine

The work-product doctrine protects against the discovery of material "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, . . . or agent)." RCFC 26(b)(3)(A); see also Upjohn Co., 449 U.S. at 398 ("Rule 26(b)(3) codifies the work-product doctrine . . . .").  The purpose of the work-product doctrine is to "shelter[] the mental processes of the attorney, providing a privileged area

within which he can analyze and prepare his client's case." <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975). By "protecting 'the attorney's thought processes and legal recommendations' from the prying eyes of his or her opponent," the doctrine "promotes a fair and efficient adversarial system . . . ." <u>In re Echostar Commc'ns Corp.</u>, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (quoting <u>Genentech, Inc.</u>, 122 F.3d at 1415).

Although the work-product doctrine "is distinct from and broader than the attorney-client privilege," <u>Nobles</u>, 422 U.S. at 238 n.11, the protection afforded to work product is qualified, <u>In re Seagate Tech., LLC</u>, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (en banc). Specifically, material prepared in anticipation of litigation may be discovered if the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." RCFC 26(b)(3)(A). However:

> [T]he level of need and hardship required for discovery depends on whether the work product is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not. Whereas factual work product can be discovered solely upon a showing of substantial need and undue hardship, mental process work product is afforded even greater, nearly absolute, protection.

<u>In re Seagate Tech., LLC</u>, 497 F.3d at 1375; <u>accord</u> RCFC 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."); <u>Upjohn Co.</u>, 449 U.S. at 400 ("Rule 26 accords special protection to work product revealing the attorney's mental processes."). <u>But see Sparton Corp</u>, 44 Fed. Cl. at 565 ("Opinion work product is, however, subject to discovery in situations in which 'the mental impressions of counsel are directly at issue.'" (quoting <u>Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.</u>, 173 F.R.D. 7, 17 (D. Mass. 1997))).

Although RCFC 26(b)(3)(A) protects material "prepared in anticipation of litigation or for trial," it does not expressly define the scope of its protection. <u>See, e.g., Fed. Trade Comm'n v. Grolier Inc.</u>, 462 U.S. 19, 25 (1983) (noting that the rule fails to describe a "temporal scope" for work-product protection). Nevertheless, certain propositions concerning the scope of its protection are well accepted. One, it is generally established that "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" are not protected work product. Fed. R. Civ. P. 26 advisory committee note (1966), <u>quoted in Evergreen Trading, LLC</u>, 80 Fed. Cl. at 132. Two, "it is well-recognized that for the [work-product doctrine] to apply, litigation need not already have commenced or be imminent; rather, litigation must be a real possibility at the time the documents in question are prepared." <u>Evergreen Trading, LLC</u>, 80 Fed. Cl. at 132; <u>see also id.</u> (indicating that such litigation includes adversarial proceedings before an administrative tribunal). However, "[t]here is considerably less agreement as to when litigation is 'anticipated' for purposes" of the work-product doctrine, and, as a result, "two tests have emerged from the pack":

> Under the "primary purpose" test employed by the Fifth Circuit, as well as some district courts, documents are viewed as being prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of a document was to aid in possible future litigation."  On the other hand, several circuits have employed a simple causation test under which the relevant inquiry, though seemingly trite, is whether a given document was prepared or obtained "because of" the prospect for litigation.

Id. (citations omitted).  This court concurs with the conclusion in Evergreen Trading, LLC that the simple causation test is the preferred test.  See id. at 132-33 (noting that the "because of" test "more closely tracks the language of the rule," would protect more documents than the "primary purpose" test, and "does not depend unduly upon a party's subjective intent").

As a final matter, the party invoking the protection of the work-product doctrine bears the burden of demonstrating the applicability of the doctrine.  See id. at 127; see also AAB Joint Venture, 75 Fed. Cl. at 455 ("The party asserting the work product privilege must set forth objective facts to support its claim of privilege; a mere conclusory statement that the work product was created in anticipation of litigation is not enough." (citing In re SmithKline Beecham Corp., 243 F.3d 565 (Fed. Cir. 2000) (unpublished table decision))).

### D.  Production of Documents on Privilege Log

The first set of plaintiff's privilege arguments concerns defendant's privilege log.  As noted above, defendant provided plaintiff with an initial privilege log identifying sixteen documents withheld by defendant as exempt from discovery, including eight electronic mail messages, two memoranda; two "summary sheets," two "legal opinions," an "issue paper," and an "attorney's opinion."[9]  Pl.'s Am. Mot. Compel & Br. Supp. Ex. ("Mot. Compel Ex.") D at 1-3.  Defendant claims that (1) eight documents are protected "attorney work product";[10] (2) one document "is a communication with the Chief Counsel" of the Corps "concerning issues in litigation"; and (3) seven documents contain "the mental impressions, conclusions, opinions or legal theories of an agency representative."  Id.  Plaintiff argues first that the privilege log "is

---

[9]  As previously noted, defendant supplemented its privilege log on January 15, 2009, by adding documents not relevant to the court's present inquiry.  The court is not in possession of the most recent version of defendant's privilege log, which was to be submitted to plaintiff by April 9, 2009.

[10]  Although the description for one of these documents (i.e., document 16) does not explicitly invoke "attorney work product" as the grounds for withholding the document, the court presumes that this is the basis for the protection sought because of defendant's averment that the document "contains the mental impressions, conclusions, opinions or legal theories of an attorney concerning issues in litigation."  Mot. Compel Ex. D at 3.

inadequate because it fails to set forth the names of all authors and recipients."[11]  Mot. Compel 13.  Plaintiff also contends that defendant is seeking "to assert the attorney-client privilege to non-privileged documents," specifically referring to those seven documents that contain "the mental impressions, conclusions, opinions or legal theories of an agency representative."[12]  Id. (referring to documents numbered 6 and 9-14 on the privilege log).

**1.  Defendant Has Provided Inadequate Descriptions for Eleven Documents on Its Privilege Log**

        With respect to plaintiff's first contention, the RCFC require parties that withhold documents on the basis of privilege to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed–and to do so in a manner that, without revealing information itself protected, will enable other parties to assess the claim."  RCFC 26(b)(5)(A).  In other words, "the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements" of the claimed privilege "have been established."  Deseret Mgmt. Corp. v. United States, 76 Fed. Cl. 88, 91 (2007) (internal quotation marks omitted); accord Fed. R. Civ. P. 26 advisory committee note (1993) ("The party must . . . provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.").  While there are no specific requirements, it may be appropriate to include "[d]etails concerning time, persons, [and] general subject matter" in the privilege log description.  Fed. R. Civ. P. 26 advisory committee note; see also Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 309 (2002) (indicating that "the customary contents of a privilege log" are "a description of the type of document . . . , its topic, date, the writer and recipient, and an explanation as to why the matter is deemed to be privileged").  However, the party claiming privilege "need not reveal so much about the contents of a communication as to compromise the privilege."  Yankee Atomic Elec. Co., 54 Fed. Cl. at 309.

        For all eight electronic mail messages identified on defendant's privilege log, defendant claims work-product protection.  Mot. Compel Ex. D at 1-3.  But see Def.'s Supplemental Br. Fed. Rule Evidence 502(a) & Other Privilege Issues ("Def.'s FRE Br.") 10 (claiming that seven of the messages (i.e., documents 2, 10-14, and 16) were protected attorney-client

_____

    [11]  For the purposes of evaluating the sufficiency of defendant's privilege log, the court disregards the fact that plaintiff is in possession of at least five of these documents (i.e., documents 1-3, 6, and 16).  Defendant's production of these documents is discussed in another section below.

    [12]  Although plaintiff characterizes this statement as an invocation of the attorney-client privilege, the court, as discussed in more detail below, disagrees.  Rather, defendant is invoking the work-product doctrine.  See RCFC 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.").

communications).  Two of these messages concern a complaint lodged by plaintiff with the Engineer Inspector General after the execution of the lease "[m]odification," but prior to plaintiff's institution of the present suit (i.e., documents 2 and 16).  Although defendant failed to identify the recipient of either message and the author of one of the messages, the court finds that the subject lines of the messages provided by defendant (i.e., "Engineer Inspector General (EIG) Inquiry, Greers Ferry Lake" and "Conference Call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek," respectively) allows for an adequate evaluation of whether the messages constitute work product prepared in anticipation of litigation.[13]

For the remaining six messages (i.e., documents 10-15), defendant provides the subject line, author, and date.  The information provided by defendant is insufficient to ascertain the applicability of the work-product doctrine.  First, defendant did not adequately describe the subject matter of these messages.  Specifically, defendant described the subject line for all six of the messages as "Dam Site Marina Supplemental Agreement," but failed to provide any further information that would place the subject line in context.  Thus, plaintiff is forced to resort to guesswork in order to determine whether these messages were prepared in anticipation of litigation.  Such speculation is inappropriate.  Consequently, defendant's conclusory representation that the messages are work product cannot suffice.  See AAB Joint Venture, 75 Fed. Cl. at 455 ("The party asserting the work product privilege must set forth objective facts to support its claim of privilege; a mere conclusory statement that the work product was created in anticipation of litigation is not enough.").  Second, defendant failed to identify the recipient or recipients of any of these messages.  Such information may assist plaintiff in determining the nature of the message and whether the message truly constituted work product prepared in anticipation of litigation.  Moreover, parties should disclose electronic mail message recipients on their privilege logs as a matter of course.  See Yankee Atomic Elec. Co., 54 Fed. Cl. at 309.  For these reasons, the court finds that defendant did not adequately describe these six electronic mail messages on its privilege log.[14]

---

[13]  To the extent that defendant changes course in its most recent memorandum to claim that the two messages are protected attorney-client communications, and leaving aside the lateness of the assertion of the privilege, a topic that the court addresses in another section below, the court reaches the same conclusion with respect to document 2 because the author of the message is identified as an attorney.  However, with respect to document 16, for which neither an author nor recipient is identified, the court concludes that the description is insufficient to determine whether a claim of attorney-client privilege is appropriate.

[14]  To the extent that defendant shifts gears in its most recent memorandum to claim that five of the messages (i.e., documents 10-14) are protected attorney-client communications, and again leaving aside the lateness of the assertion of the privilege, the court reaches the same conclusion that defendant's privilege log is deficient.  Defendant does not indicate that any of the messages' authors are attorneys, and fails to identify any of the messages' recipients.

The court reaches a similar conclusion with respect to the two "summary sheets" and the two "legal opinions" identified on defendant's privilege log (i.e., documents 6-9).  Although defendant claims that these four documents are protected work product, it merely provides the subject (i.e., "Finding of No Significant Impact–Lease Expansion, Dock and parking lot construction–Fairfield Bay Marina, Greers Ferry Lake, Environmental Assessment," "Review of Cove Creek Marina, Greers Ferry Lake, Arkansas," "Review of Cove Creek Marina Environmental Assessment, Greers Ferry Lake, Arkansas," and "Proposed Cove Creek Marina, Greers Ferry Lake, Environmental Assessment," respectively) and the date of the documents.  Neither the court nor plaintiff can evaluate defendant's work-product claim without knowing the identity of a document's author.  Moreover, parties should disclose on their privilege logs the authors of a document, if known, as a matter of course.  See Yankee Atomic Elec. Co., 54 Fed. Cl. at 309.  Thus, the court finds that defendant did not adequately describe these four documents on its privilege log.[15]

On the other hand, the court is satisfied that the information provided by defendant with respect to the "issue paper," the "attorney's opinion," and one of the memoranda (i.e., documents 1, 4, and 5) permits an adequate evaluation of whether defendant's invocation of the work-product doctrine is valid.  For each of these three documents, defendant provided the subject (i.e., "Legal propriety of the Memorandum of Understanding (MOU) entered by Ronnie Walters and the Chief of Real Estate Division," "Projection of Lost Profits at Eden Isle Marina," and "Should we favorably consider the request of Ronnie Walters, President of Eden Isle Marina, Inc., to expand his operation?," respectively), the author, and the date, if any.  In addition, defendant identified the recipient of the memorandum.  The information provided allows a determination of whether the documents were prepared in anticipation of litigation.

For the final document included on defendant's privilege log–the second of the two memoranda (i.e., document 3)–defendant invokes the attorney-client privilege.  To establish entitlement to the privilege, defendant provided the author, recipient, date, and subject (i.e., "Inspector General Inquiry–Mr. Walters") of the memorandum.  The court finds that the information provided is sufficient to indicate whether the document is protected by the attorney-client privilege.

Overall, it is clear that defendant's privilege log is deficient.  Defendant has failed to provide sufficient detail with respect to eleven of the sixteen documents identified on the privilege log (i.e., documents 6-16).  While an order directing the disclosure of the documents on the privilege log is a permissible sanction, Evergreen Trading, LLC, 80 Fed. Cl. at 126 n.2; Deseret Mgmt. Corp., 76 Fed. Cl. at 91, the court declines to take such action here.  Instead, the court directs defendant to revise its privilege log in conformity with the RCFC.

---

[15] In its most recent memorandum, defendant indicates that it again reviewed the two "summary sheets" (i.e., documents 6 and 9), redacted protected information, and provided redacted copies to plaintiff.  These actions do not cure defendant's failure to provide an adequate description of the document on its privilege log.

**2. The Court Is Unable to Determine Whether the Documents Identified by Plaintiff Are Privileged**

In addition to arguing that the document descriptions provided by defendant on its privilege log were insufficient to evaluate defendant's privilege claims, plaintiff contends that seven of the documents were not, in actuality, privileged. For each of these documents, which include the two "summary sheets" and five of the six electronic mail messages with the "Supplemental Agreement Dam Site Marina" subject line (i.e., documents 6 and 9-14), defendant claims the protection of the work-product doctrine, asserting that each "document contains the mental impressions, conclusions, opinions or legal theories of an agency representative." Mot. Compel Ex. D at 2. But see Def.'s FRE Br. 9-10 (claiming that five of the documents (i.e., documents 10-14) were also protected attorney-client communications). The court concluded above that defendant had not provided sufficient information for these seven documents to allow for the proper evaluation of defendant's privilege claim. Thus, the court will not compel the production of these documents at this time. However, plaintiff may renew its motion upon its receipt of defendant's revised privilege log.

**E. The Law on the Waiver of Privilege**

Plaintiff raises additional privilege arguments related to the purportedly privileged nature of various documents already in plaintiff's possession. Asserting a number of different theories, plaintiff contends that defendant has waived its privilege claims with respect to both the individual documents and all documents concerning the same subject matter. Before the court reaches the issue of waiver, however, it must address a threshold issue: whether the documents disclosed by the Corps to plaintiff prior to plaintiff initiating suit–via FOIA requests and an environmental investigation–can provide the basis for the waiver of privilege in the instant suit. The parties did not cite, and the court could not locate, any reported cases on this issue.[16] Thus,

---

[16] However, the court located one case with a similar issue. In Scott v. PPG Industries, Inc., the defendant sought to compel a third-party deponent–an investigator from the Equal Employment Opportunity Commission ("EEOC")–"to answer questions as to which the deponent had asserted a deliberative process privilege." 142 F.R.D. 291, 292 (N.D. W. Va. 1992). After the underlying lawsuit had commenced, but prior to the investigator's deposition, defendant made a FOIA request to the EEOC. Id. The defendant attempted to question the investigator about some of the documents it had received as a result of its FOIA request, but the investigator declined to answer, asserting that the documents had been inadvertently released and were protected by the deliberative process privilege. Id. at 292-93. In its motion to compel, the defendant argued that the EEOC had waived the privilege "by releasing the documents pursuant to a[] FOIA request." Id. at 294. The court rejected this argument:

> I am not convinced that the inadvertent release in this case was sufficient to constitute a waiver of the privilege. There is no indication that the EEOC was aware of the mistake until the deposition of [the investigator], and the EEOC

the court applies a common-sense approach.  As a general matter, it is clear that the Corps, when releasing documents to the public pursuant to a FOIA request or otherwise, would not intentionally release privileged or protected material.[17]  It is equally clear that had plaintiff's counsel made the FOIA requests and initiated the environmental investigation after filing suit, the Corps would have similarly withheld privileged and protected material.  The court is not aware of any legal basis for the Corps to apply more stringent standards in assessing privilege–whether it be attorney-client privilege or work-product protection–after the commencement of a lawsuit (i.e., during the discovery process) than the standards it would apply in the absence of such a lawsuit (i.e., in response to a FOIA request).  Thus, the court concludes that it should treat the documents disclosed by the Corps prior to suit as if they were disclosed while the suit was pending.  This conclusion is reinforced by the fact that all of the documents disclosed by the Corps to plaintiff prior to plaintiff's institution of suit relate to the subject matter of the instant suit, as well as the fact that the parties involved in the prelitigation disclosure are identical to the parties in this suit.  Accordingly, the disclosed documents can provide the basis for a waiver of privilege here.  Having reached this conclusion, the court begins its analysis of plaintiff's contentions by discussing the present state of the law on the waiver of privilege.

### 1.  Waiver of the Attorney-Client Privilege

The "attorney-client privilege belongs to the client, who alone may waive it."  In re Seagate Tech., LLC, 497 F.3d at 1372.  Waivers of the privilege may be either express or implied.  See In re Keeper of the Records (XYZ Corp.), 348 F.3d at 22 ("Waivers come in various sizes and shapes.").  A client may expressly waive the privilege with respect to a confidential communication by disclosing the communication to a third party.[18]  See Nat'l

---

reacted reasonably promptly thereafter.  As to [the defendant's] claim that the EEOC was careless in releasing the document, the affidavit of Joel S. Prets, the EEOC employee who released the records, indicates that it is the EEOC's policy not to release documents which disclose deliberative processes.  I find, therefore, that the EEOC has not waived its privilege.

Id.  Although Scott is distinguishable from the instant case on several grounds, but especially in that the lawsuit preceded the FOIA request, it raises the possibility that an inadvertent release of a document pursuant to the FOIA could result in the waiver of a privilege attached to that document.

[17]  The FOIA also prohibits the disclosure of documents on other grounds.  See 5 U.S.C. § 552(b).  The court's sole concern here is the government's assertion of attorney-client privilege and work-product protection.

[18]  Subsequent to the United States Court of Claims' ("Court of Claims") decision in National Helium Corp. from which this proposition derives, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") held that "[t]he attorney-client privilege evaporates

Helium Corp. v. United States, 219 Ct. Cl. 612, 614 (1979); see also In re Keeper of the Records (XYZ Corp.), 348 F.3d at 22 (noting that because "[t]he privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice, . . . [w]hen otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised").  However, pursuant to the recently enacted Federal Rule of Evidence 502,[19] such a disclosure "does not operate as a waiver" if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[20]  Fed. R. Evid. 502(b); accord Nat'l Helium Corp., 219 Ct. Cl. at 616

---

upon any voluntary disclosure of confidential information to a third party."  Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990) (en banc) (emphasis added).  As recognized in International Business Machines Corp., the Federal Circuit in Carter did not expressly overrule, much less mention, the decision in National Helium Corp. when it held that "any voluntary disclosure" destroys the attorney-client privilege: "In this jurisdiction decisions of the Federal Circuit and the Court of Claims have binding precedential authority.  When the Federal Circuit decides that a decision of the Court of Claims no longer merits precedential authority, it overrules the decision, after providing sufficient explanation, in an en banc decision[.]"  Int'l Bus. Machs. Corp. v. United States, 37 Fed. Cl. 599, 603 (1997) (citing South Corp. v. United States, 690 F.2d 1368, 1370 n.2 (Fed. Cir. 1982) (en banc)).  Thus, the court is obliged to follow National Helium Corp., not Carter, on this issue.

[19]  One of the main purposes of Federal Rule of Evidence 502 is to "resolve[] some longstanding disputes in the courts . . . involving inadvertent disclosure and subject matter waiver"; the rule therefore seeks "to provide a reasonable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work-product protection" without making an "attempt to alter federal law . . . on whether a communication or information is protected . . . as an initial matter."  Fed. R. Evid. 502 advisory committee note (2008).  Congress enacted Federal Rule of Evidence 502 on September 19, 2008.  See Pub. L. No. 110-322, § 1(a), 122 Stat. 3537, 3537-38.  It provided that "[t]he amendments made by this Act shall apply in all proceedings commenced after the date of enactment of this Act and, insofar as is just and practicable, in all proceedings pending on such date of enactment."  Id. § 1(c).  The court finds that it is "just and practicable"–and consistent with the overarching purpose to maintain a consistent set of standards governing the disclosure of protected material–to apply Federal Rule of Evidence 502 in this matter.

[20]  Federal Rule of Evidence 502(b) applies when the disclosure is "made in a Federal proceeding . . . ."  As noted above, most of the disclosures by the Corps at issue here occurred during plaintiff's counsel's investigation of plaintiff's claims prior to filing suit–i.e., via FOIA requests and an environmental investigation–and not expressly "in a Federal proceeding" as contemplated by the rule.  However, because the court is treating those disclosed documents as if

(holding that to determine whether a disclosure waived the attorney-client privilege, a court must examine whether "the client wish[ed] to keep back the privileged materials" and whether the client took "adequate steps in the circumstances to prevent disclosure of such documents").

As explained in the advisory committee notes to the rule, various courts have utilized "a multi-factor test for determining whether inadvertent disclosure is a waiver." Fed. R. Evid. 502 advisory committee note (2008) (citing Hartford Fire Ins. Co. v. Garvey, 109 F.R.D. 323, 332 (N.D. Cal. 1985); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985)). The advisory committee indicated that Federal Rule of Evidence 502(b) did not "explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case." Id. Nevertheless, the advisory committee did describe several factors that might bear on the inadvertence analysis: (1) "the reasonableness of precautions taken"; (2) "the time taken to rectify the error"; (3) "the scope of discovery"; (4) "the extent of disclosure"; (5) "the overriding issue of fairness"; (6) "the number of documents to be reviewed"; (7) "the time constraints for production"; (8) the use of "advanced analytical software applications and linguistic tools"; and (9) "[t]he implementation of an efficient system of records management before litigation . . . ." Id.; cf. Nat'l Helium Corp., 219 Ct. Cl. at 614 (noting that the court must ascertain whether the steps taken to prevent disclosure of privileged documents were "so lax, careless, or inadequate that [the client] must objectively be considered as indifferent to disclosure of anything which happened to be shown to the" other party). Especially relevant in the instant case are two factors: the extent to which an attempt was made to rectify the disclosure and the amount of time taken to rectify an inadvertent disclosure: "Inadvertent disclosure has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents." United States v. Rigas, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003) (internal quotation omitted); see also Clarke v. J.P. Morgan Chase & Co., No. 08 Civ. 02400(CM)(DF), 2009 WL 970940, at *6 (S.D.N.Y. Apr. 10, 2009) (holding that defendant's two-month delay in asserting its privilege claim weighed in favor of finding a waiver of privilege and describing cases in which a waiver was found after a delay ranging from six days to one month); Preferred Care Partners Holding Corp. v. Humana, Inc., No. 08-20424-CIV, 2009 WL 982449, at *14 (S.D. Fla. Apr. 9, 2009) (holding that a three-week lag time to assert a privilege weighed in favor in finding a waiver of privilege).

A client may also waive the privilege by implication if the communication is necessary to establish its claim, Blue Lake Forest Prods., Inc., 75 Fed. Cl. at 783 (citing Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)), or defense, In re Echostar Commc'ns Corp., 448 F.3d at 1301. See also Blue Lake Forest Prods., Inc., 75 Fed. Cl. at 783 ("The at-issue implied waiver applies where the privilege holder makes assertions, the truth of which can only be assessed by examination of privileged communications."). This implied waiver is commonly referred to as the "at-issue implied waiver." See, e.g., id. at 783. As noted by the Federal Circuit in Zenith

_____

they were disclosed during the pendency of this litigation, it is, contrary to defendant's argument, appropriate to apply the rule here. Moreover, the rule closely mirrors the controlling precedent of this court. See Nat'l Helium Corp., 219 Ct. Cl. at 616.

Radio Corp. v. United States, "the courts have followed three different approaches in ruling" on the at-issue implied waiver:

> The first theory, . . . is the so-called "automatic waiver" rule under which a party seeking judicial relief waives whatever privilege he has.  A second theory balances the need for discovery against the need for protecting secrecy.
>
>     The . . . third theory . . . was enunciated in Hearn v. Rhay.  Under that theory a plaintiff is treated as having waived his privileges if:
>
>> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

764 F.2d 1577, 1579 (Fed. Cir. 1985) (quoting Hearn, 68 F.R.D. at 581) (citations omitted).  In Zenith Radio Corp., the trial court adopted the Hearn standard and held that the government had waived its privileges by initiating suit.  Id.  Although the Federal Circuit reversed the trial court's ultimate holding of waiver, it did so without determining whether the trial court's use of the Hearn standard was proper.  Id. at 1580.  In the absence of binding precedent on the issue of the appropriate standard to apply in evaluating the existence of an at-issue implied waiver, the court joins with the Blue Lake Forest Products, Inc. court in adopting the Hearn standard as a reasonable approach.

    A waiver of the attorney-client privilege may extend beyond the individual communication disclosed by the client:

> The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter.  The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.

Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citations omitted); accord In re Seagate Tech., LLC, 497 F.3d at 1372 ("This broad scope is grounded in principles of fairness and serves to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones.").  Congress, in Federal Rule of Evidence 502, set forth guidelines for determining whether to apply the waiver to all communications or information of the same subject matter, providing that "the waiver extends to an undisclosed communication or information" only if "(1) the waiver is intentional; (2) the

disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."[21] Fed. R. Evid. 502(a).  By requiring the waiver to be intentional, Congress made it clear that a subject-matter waiver cannot result from an inadvertent disclosure.  And, by requiring a fairness analysis, Congress recognized that "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures."  Fort James Corp., 412 F.3d at 1349-50; see also Fed. R. Evid. 502 advisory committee note (2008) ("[A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.").

As a final matter, "the party who invokes the privilege bears the burden of establishing that . . . it has not been waived."  In re Keeper of the Records (XYZ Corp.), 348 F.3d at 22; accord Weil, 647 F.2d at 25 ("One of the elements that the asserting party must prove is that it has not waived the privilege."); Evergreen Trading, LLC, 80 Fed. Cl. at 127 ("[P]arties claiming the benefit of [the] privilege bear the burden of establishing all of the essential elements thereof . . . .").

## 2.   Waiver of Work-Product Protection

As with the attorney-client privilege, the protection afforded by the work-product doctrine may be waived, Nobles, 422 U.S. at 239, and the party invoking the privilege bears the burden of proving that it has not waived the protection, Evergreen Trading, LLC, 80 Fed. Cl. at 127.  Waivers of the protection may be either implied, see Zenith Radio Corp., 764 F.2d at 1579-81 (recognizing the application of the at-issue implied waiver to protected work product); Blue Lake Forest Prods., Inc., 75 Fed. Cl. at 783-84 (same), or express.  Indeed, Federal Rule of Evidence 502 applies equally to the attorney-client privilege and work-product protection.  See Fed. R. Evid. 502.  Thus, unintentional disclosures do "not operate as a waiver" of protection if the disclosing party establishes the elements set forth in Federal Rule of Evidence 502(b) and the extension of the waiver to all material of the same subject matter is guided by Federal Rule of Evidence 502(a).

It is important to note that Federal Rule of Evidence 502(b) impacts Federal Circuit precedent concerning whether the inadvertent disclosure of work product constitutes a waiver.  In 1990, the Federal Circuit adopted the view of its sister appellate courts that because the purpose of the work-product doctrine is to promote and strengthen the adversarial system, only disclosures that are inconsistent with the adversary system may result in a waiver.  See Carter, 909 F.2d at 1451 (citing United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir.

---

[21]   As with Federal Rule of Evidence 502(b), Federal Rule of Evidence 502(a) applies when the disclosure is "made in a Federal proceeding . . . ."  The court finds it appropriate to apply the rule here.  See supra note 20.

1980); Transam. Computer Co. v. Int'l Bus. Machs. Corp., 573 F.2d 646, 647 n.1 (9th Cir. 1978)).  Over the subsequent two decades, the Federal Circuit regularly reaffirmed this principal. See, e.g., In re Seagate Tech., LLC, 497 F.3d at 1375; In re Echostar Commc'ns Corp., 448 F.3d at 1301; Genentech, Inc., 122 F.3d at 1415.  Thus, because any "[v]oluntary disclosure of attorney work product to an adversary in the litigation for which the attorney produced that information defeats the policy underlying the privilege," it has held that "[i]t is irrelevant whether the [disclosure] was inadvertent . . . ." Carter, 909 F.2d at 1451.  In other words, an inadvertent disclosure always resulted in the waiver of the protection afforded by the work-product doctrine for the disclosed document.  The language of recently enacted Federal Rule of Evidence 502(b), which allows for an inadvertent disclosure of work product that does not constitute a waiver, would therefore appear to modify the Federal Circuit's prior holding.  See also Fed. R. Evid. 502 advisory committee note (2008) (noting that because the "[c]ourts are in conflict over whether an inadvertent disclosure of a communication or information protected as privileged or work product constitutes a waiver, . . . [t]he rule opts for the middle ground" between (1) requiring an intentional disclosure before finding a waiver and (2) declaring that any disclosure constitutes a waiver).  Because the Federal Rules of Evidence, as congressional enactments, are controlling on this court, see 28 U.S.C. § 2503(b) (2006) ("The proceedings of the Court of Federal Claims shall be . . . in accordance with the Federal Rules of Evidence."), it is obliged to adhere to the modified rule.

Also material to the court's analysis is the effect of Federal Rule of Evidence 502(a) on the Federal Circuit's precedent concerning the determination of whether a subject-matter waiver has occurred.  Prior to the enactment of Federal Rule of Evidence 502, the Federal Circuit limited the waiver of the work-product doctrine.  See In re Seagate Tech., LLC, 497 F.3d at 1375 ("Here, the same rationale generally limiting waiver of the attorney-client privilege with trial counsel applies with even greater force to so limiting work product waiver because of the nature of the work product doctrine."), 1376 ("The Supreme Court has approved of narrowly restricting the scope of work product waiver."); In re Echostar Commc'ns Corp., 448 F.3d at 1302 ("[W]ork product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege."); cf. In re Echostar Commc'ns Corp., 448 F.3d at 1303 (noting that the "overarching goal of waiver" of work-product protection "is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice").  Thus, held the Federal Circuit, "work product waiver only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product."  In re Echostar Commc'ns Corp., 448 F.3d at 1302.  Federal Rule of Evidence 502(a) lacks any explicit language distinguishing between fact work product and opinion work product.  However, both Federal Rule of Civil Procedure 26(b)(3)(B) and RCFC 26(b)(3)(B) continue to provide special protection for opinion work product.  See Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."); RCFC 26(b)(3)(B) (same); see also In re Echostar Commc'ns Corp., 448 F.3d at 1303 ("Under Rule 26(b)(3), this so-called 'opinion' work product deserves the highest protection from disclosure.").  Thus, when considering the fairness of

granting a subject-matter waiver of work-product protection pursuant to Federal Rule of Evidence 502(a), the court must pay close attention to the special protection afforded opinion work product.

### F.  Production of Documents Where Privilege May Have Been Waived

In its amended motion to compel, plaintiff identifies forty-four documents that (1) it obtained through FOIA requests, an environmental investigation, RCFC 26(a) initial disclosures, or other discovery requests and (2) were prepared by, received by, or copied to one of defendant's attorneys.  Because plaintiff possesses more than one copy of some of the documents, out of the forty-four identified documents, there are actually only twenty-five unique documents: twenty-three deposition exhibits and two other documents.  Plaintiff claims that defendant's disclosure of these documents constitutes a waiver of the attorney-client privilege and work-product protection.  In opposition, defendant avers that "the majority of the documents cited by Eden Isle do not constitute confidential communications between a client and an attorney for the purposes of seeking legal advice or are otherwise privileged and, therefore, cannot serve as the basis for a finding that the Government has waived any privilege."  Opp'n Compel 5.  Defendant then describes fifteen deposition exhibits and one other document for which it does not claim privilege.  The remaining documents include eight deposition exhibits and one other document.[22]  The court need only consider the eight remaining deposition exhibits because the nine pages contained in the other document are duplicated in two of the deposition exhibits.[23]  Compare Dep. Ex. 115, and Dep. Ex. 153, with PB LR.

Plaintiff submitted copies of all eight deposition exhibits with its amended motion to compel.  Thus, the court begins its analysis by examining each of the documents contained within those exhibits to determine whether (1) the document is privileged and, if so, (2) whether defendant has waived that privilege with respect to that particular document.  Although the discussion of each document contains seemingly repetitive elements, the court is required to assess each document separately because the assertion of privilege is unique to each document.  After addressing the individual documents, the court analyzes the scope of any waiver.  The following chart summarizes the data relevant to the question of waiver:

---

[22]  The eight deposition exhibits include exhibits numbered 170, 115, 153, 187, 188, 189, 2, and 3.  The other document is identified as "PB LR 00079-81; PB LR 00084; PB LR 00085-00088."

[23]  The court cites to the deposition exhibits as "Dep. Ex. ___" and to the other document as "PB LR."

| Dep. Ex. | When Disclosed to Plaintiff | When Defendant First Learned of Disclosure | When Placed on Privilege Log | When Defendant Requested Document's Return or Moved for Protective Order |
|---|---|---|---|---|
| 170 | Fall 2006 (FOIA) | Col. Holden's 3/27/2008 deposition; objection lodged after lengthy questioning had occurred | n/a | n/a |
| 115, 153 | Fall 2006 (FOIA) and on two occasions prior to 2/26/2007 (Envtl. Investigation) | Col. Morris's 2/20/2008 deposition (115) and Rep. Berry's 3/13/2008 deposition (153); no objection lodged | n/a | n/a |
| 187 | Fall 2006 (FOIA) and once prior to 2/26/2007 (Envtl. Investigation) | Col. Holden's 3/27/2008 deposition; possible objection lodged | 10/22/2008 | n/a |
| 188 | On two occasions prior to 2/26/2007 (Envtl. Investigation) | Col. Holden's 3/27/2008 deposition; no objection lodged | 10/22/2008 | n/a |
| 189 | Fall 2006 (FOIA) and once prior to 2/26/2007 (Envtl. Investigation) | Col. Holden's 3/27/2008 deposition; objection lodged but questioning continued | 10/22/2008 | n/a |
| 2 | Fall 2006 (FOIA) and once after 2/26/2007 (RCFC 26) | Mr. Park's 1/14/2008 deposition; no objection lodged | 10/22/2008 (in part) | n/a |
| 3 | Fall 2006 (FOIA) and once prior to 2/26/2007 (Envtl. Investigation) | Mr. Park's 1/14/2008 deposition; no objection lodged | 10/22/2008 (in part) | n/a |

**1. Deposition Exhibit 170**

Deposition Exhibit 170 is a one-page "Memorandum for Commander," dated September 10, 1998, that identifies the "pros," "cons," "other thoughts," and "legal recommendation" regarding the dock expansion at Eden Isle Marina. Dep. Ex. 170. The memorandum was prepared by the Office of Counsel at the Corps' Little Rock District Office, and bears the

following legend: "Confidential/Protected Information; Attorney Work Product; Do Not Release or Copy." Id. Plaintiff obtained the memorandum from the Corps' Little Rock District Office in response to a FOIA request. Id. In addition, plaintiff used the memorandum at Col. Holden's March 27, 2008 deposition. At that deposition, upon marking the memorandum as an exhibit, plaintiff's counsel asked Col. Holden five questions about the memorandum, which he answered. Reply Compel Ex. E at 203-04. After plaintiff's counsel asked the sixth question, defense counsel objected, without elaboration, and directed Col. Holden not to respond. Id. at 205. Then, defense co-counsel stated: "I'd like to note for the record that Exhibit 170 is clearly marked as confidential, protected attorney-client work product, and we don't waive objections to the use of this document at trial." Id. Defense counsel added: "It appears to have been incorrectly produced in a - - in response to a former request." Id. After plaintiff's counsel continued to question Col. Holden regarding the factual content of the memorandum for a period of time, id. at 205-11, defense counsel noted that the "legal recommendation" portion of the memorandum "should not be in the record," id. at 211. After three more questions from plaintiff's counsel, defense counsel interjected: "Don't answer that. That calls for - - that's privileged information. I object to that. I'm instructing the witness not to answer." Id. at 212. After a short dialogue among defense counsel, defense co-counsel, and Col. Holden, id. at 212-13, plaintiff's counsel continued to ask Col. Holden questions concerning the memorandum, id. at 213-20. As a final note, despite plaintiff's assertion to the contrary, the disputed memorandum does not appear on defendant's privilege log. See Mot. Compel Ex. D; Def.'s Supplemental Opp'n Pl.'s Mot. Compel Ex. ("Def.'s Supp'l Br. Ex.") 2.

Plaintiff, until very recently, presumed that the memorandum was privileged or protected, but maintained that defendant's disclosure of the memorandum waived any privilege or protection that defendant intended to assert with respect to the memorandum. However, in its most recent brief, plaintiff asserts that the memorandum is not protected work product because it was not prepared in anticipation of litigation. Defendant takes the position that the memorandum is protected work product.[24] Further, defendant contends that work-product protection should not be waived for the memorandum because it "was inadvertently provided to plaintiff in a FOIA request despite the Corps' efforts to withhold privileged material" and because it objected to plaintiff's use of the memorandum at deposition. Def.'s Supplemental Opp'n Pl.'s Mot. Compel ("Def.'s Supp'l Br.") 6-7. In response, plaintiff characterizes defendant's deposition objection as "half-hearted" and notes that "subsequent to the deposition," defendant "did nothing to otherwise protect the document." Resp. Def.'s Supplemental Opp'n Pl.'s Mot. Compel ("Pl.'s Supp'l Br.") 13.

---

[24] Despite the protective legend on the memorandum itself, defendant did not claim that the memorandum was protected by the attorney-client privilege in its privilege log or at deposition, and does not so claim in its legal memoranda.

As an initial matter, the court concludes that the memorandum is protected work product.[25]  It is clear that the memorandum "was prepared or obtained 'because of' the prospect of litigation," Evergreen Trading, LLC, 80 Fed. Cl. at 132, as it contains an analysis of the legal repercussions flowing from the Corps' decision to grant or deny plaintiff's request to expand the marina, including the possibility of a lawsuit, and was clearly prepared by a representative of the Corps.  Ignoring the memorandum's protected nature, however, defendant disclosed it to plaintiff.  Thus, the court's next inquiry is whether defendant waived work-product protection for the memorandum due to the disclosure.  The threshold issue is whether defendant's disclosure of the memorandum to plaintiff was inadvertent, as defendant contends, or intentional, as plaintiff contends.  As noted above, plaintiff obtained the memorandum via a FOIA request.  Because defendant disclosed the memorandum only via the FOIA request, the court concludes that the disclosure was inadvertent.  However, assuming the disclosure was inadvertent, the court's inquiry is not over.  Work-product protection may still be waived if defendant did not take "reasonable steps to prevent disclosure" and did not "promptly" take "reasonable steps to rectify the error . . . ."  Fed. R. Evid. 502(b).

To prevent the disclosure of privileged and protected material, Mr. Fisher, a Corps attorney, "reviewed" the documents subject to plaintiff's counsel's FOIA request (1) prior to providing plaintiff's counsel with access to the documents (for an unspecified amount of time) and (2) after plaintiff's counsel selected her desired documents (for "several weeks").  Opp'n Compel Attach. A ¶ 3.  Defendant contends that, based upon the information provided in his affidavit, Mr. Fisher's review was adequate.  Plaintiff, relying upon International Business Machines Corp., disagrees.  In International Business Machines Corp., the plaintiff filed a motion for a protective order seeking the return of four inadvertently produced privileged documents.  37 Fed. Cl. at 600.  The plaintiff provided the following information about its screening procedures:

> [Plaintiff] undertook this global effort pursuant to an expedited discovery schedule, completing the production . . . barely three weeks after the requests were received.  Wedged into this three-week period was an unavoidably rapid review by plaintiff's counsel of the entire production for responsiveness and privilege.  In the rush to organize and produce the documents, and despite plaintiff's careful and deliberate precautions, the four privileged documents described above slipped through the review undetected.

---

[25]  In so holding, the court disregards plaintiff's belated contention that the memorandum was not protected work product.  Courts must independently "assess[] the privileged nature of [a] document" even if a party has a "change of heart" about an assertion of privilege.  Blue Lake Forest Prods., Inc., 75 Fed. Cl. at 793.  Moreover, the last-minute nature of plaintiff's argument detracts from its weight.  Cf. Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").

Id. at 604 (quoting the plaintiff's motion).  The plaintiff also indicated that "'[e]very document in the production was screened for responsiveness and privilege by at least one of the attorneys . . . and many documents were the subject of group discussion.'"  Id. (quoting the plaintiff's reply brief).  The court concluded that the information provided by the plaintiff did "not enable [it] to determine whether or not plaintiff took sufficient steps to prevent disclosure of the privileged documents."  Id.  To highlight the insufficiencies of the plaintiff's representations, the court compared them with the representations that litigants made to the Court of Claims in two earlier cases: Cities Service Helex, Inc. v. United States, 214 Ct. Cl. 765, 766 (1977), and National Helium Corp., 219 Ct. Cl. at 614-15:

> In [Cities Service Helex, Inc.,] the disclosing attorney testified by way of affidavit that he had reviewed the documents to be produced on three separate occasions and then, on a fourth occasion, once again checked the documents against a privilege log prepared by another attorney.  Likewise, in National Helium, the disclosing attorney detailed his screening process, explaining that he delegated initial screening responsibilities to an employee, that he instructed the employee to inspect only those files that normally would be expected to contain privileged documents, and that none of the documents disclosed to the opposing party had been shown to him by the employee.

Int'l Bus. Machs. Corp., 37 Fed. Cl. at 604-05 (citations omitted).  Indicating that the plaintiff, in contrast, had "failed to educate the court about its screening procedures," the court held that the plaintiff had "not established that it took sufficient steps to prevent the disclosure of the privileged documents."  Id. at 605.

The comparison between the information provided by the litigants concerning their screening procedures in Cities Service Helex, Inc. and National Helium Corp. to the information provided by the plaintiff in International Business Machines Corp. is instructive in the instant case.  Here, defendant has provided scant information concerning the screening procedures it employed in connection with plaintiff's FOIA request.  All that the court can glean from Mr. Fisher's affidavit is that he reviewed the relevant material twice, that the second review took him "several weeks" and covered fifteen boxes of material, and that he compiled a list of withheld documents.  There is no information concerning (1) the scope of Mr. Fisher's first review; (2) whether Mr. Fisher ever identified as privileged the memorandum at issue; or (3) whether Mr. Fisher included the memorandum at issue on his list of withheld documents.  Without such information, defendant has not met its burden to demonstrate the adequacy of its efforts to prevent the disclosure of privileged and protected material.[26]

---

[26]  Like the court in International Business Machines Corp., 37 Fed. Cl. at 604-05 & n.9, the court here is not opining on the adequacy of Mr. Fisher's screening procedures.  Rather, its holding is limited to a finding that defendant has not sufficiently described the screening procedures to allow the court to judge their efficacy.

Moreover, defendant has not demonstrated that it promptly took reasonable steps to rectify its disclosure. Plaintiff obtained the memorandum in the fall of 2006. It appears that defendant first learned of its disclosure at Col. Holden's March 27, 2008 deposition. Yet, despite the obvious protective legend on the face of the memorandum, defense counsel did not object immediately to plaintiff's counsel's use of the memorandum at deposition. Indeed, defense counsel permitted lengthy questioning concerning the memorandum even after lodging objections to three of plaintiff's counsel's questions on the basis of privilege. Then, after the deposition concluded, defendant took no action to rectify disclosure of the memorandum, either by seeking the return of the memorandum via RCFC 26(b)(5)(B) or otherwise, placing the memorandum on its privilege log, or filing a motion for a protective order. Viewed in the totality of these circumstances, defendant's failure to take prompt, affirmative, curative action trumps whatever effect counsels' objections to the use of the memorandum at deposition may have had in retracting the memorandum's disclosure. Accord Clarke, 2009 WL 970940, at *6; Preferred Care Partners Holding Corp., 2009 WL 982449, at *14. Accordingly, the court concludes that defendant has waived work-product protection for this memorandum.

## 2. Deposition Exhibits 115 and 153

Despite defendant's contention to the contrary, Deposition Exhibits 115 and 153 appear to be part of the same six-page "Briefing Paper on Eden Isle Marina, Greers Ferry Lake, Arkansas."[27] Dep. Exs. 115, 153. Alternatively, they may, together, constitute two separate documents: a five-page briefing paper and a single-page untitled memorandum.[28] Id. Because the contents of all six pages are of a similar nature, however, whether they constitute one, two, or more individual documents is immaterial here. None of the pages bears an author, date, or protective legend,[29] and all of the pages relate to plaintiff's request to "construct an addition to an

---

[27] Based upon the a review of the two deposition exhibits and the document identified as "PB LR 00079-81; PB LR 00084; PB LR 00085-00088," it appears that (1) the first page of the briefing paper is marked as "COE EI 173," "ATOKA 98," and "ATOKA 99," Dep. Ex. 115; (2) the second page is marked as "COE EI 174" and "ATOKA 100," id.; (3) the third page is both unmarked and marked as "PB LR 00079" and "PB LR 00087," id.; PB LR; (4) the fourth page is marked as "COE EI 175," "PB LR 00080," "PB LR 00084," and "PB LR 00085," Dep. Ex. 115; PB LR; (5) the fifth page is marked as "COE EI 176," "PB LR 00081," and "PB LR 00086," Dep. Ex. 115; PB LR; and (6) the sixth page is marked as "PB LR 00088" and "PB LR 00090," Dep. Ex. 153; PB LR.

[28] It is possible that the "sixth page" identified in the previous footnote is a separate document.

[29] Plaintiff posits that Deposition Exhibit 115 was prepared in 1998 by Nancy K. Brooks, an attorney in the Real Estate Division of the Corps' Little Rock District Office. Plaintiff also posits that Deposition Exhibit 153 was prepared by Ms. Brooks and Ralph H. Allen, an attorney in the Office of Counsel of the Corps' Little Rock District Office.

existing dock and three new docks within the limits of [the] existing lease area." Id.  In particular, the pages contain a recitation of the countervailing benefits and burdens of granting plaintiff's request to expand the marina and the various courses of action available to the Corps. Id.  Plaintiff obtained the pages from the Corps' Little Rock District Office in response to a FOIA request and on two separate occasions during its environmental investigation.  Id.; PB LR.  In addition, plaintiff used Deposition Exhibit 115 at two depositions–the March 27, 2008 deposition of Col. Holden and the February 20, 2008 deposition of Col. Morris[30]–and Deposition Exhibit 153 at the March 13, 2008 deposition of Representative Berry, all without objection from defendant.  Reply Compel Ex. D at 115; Reply Compel Ex. E at 145-51; Reply Compel Ex. F at 166-67.  And, finally, despite plaintiff's averment otherwise, the disputed pages do not appear on defendant's privilege log.  See Mot. Compel Ex. D; Def.'s Supp'l Br. Ex. 2.

As with Deposition Exhibit 170, plaintiff, until very recently, presumed that the pages included in Deposition Exhibits 115 and 153 were privileged or protected, but maintained that defendant's disclosure of the pages waived any privilege or protection that defendant might want to assert with respect to the pages.  However, in its most recent brief, plaintiff asserts that the pages are not protected work product because they were not prepared in anticipation of litigation. Defendant takes the position that the pages are protected work product.[31]  Further, defendant contends that work-product protection should not be waived for the pages because they were "inadvertently provided to plaintiff in a FOIA request despite the Corps' efforts to withhold privileged material . . . ."  Def.'s Supp'l Br. 5.  It also asserts that the deposition testimony was insufficient to waive work-product protection because the pages were not used at the depositions for a privileged purpose.  In response, plaintiff characterizes defendant's treatment of the deposition testimony concerning Deposition Exhibit 115 as "nit picking" and emphasizes that regardless of how the pages were used at deposition, the important fact is that they were used without objection.  Pl.'s Supp'l Br. 11-13.

Initially, the court concludes that the pages included in Deposition Exhibits 115 and 153 are protected work product.[32]  It is clear that the pages were "prepared or obtained 'because of' the prospect of litigation," Evergreen Trading, LLC, 80 Fed. Cl. at 132, as they contain an analysis of the legal repercussions flowing from the Corps' decision to grant or deny plaintiff's

---

[30]  Plaintiff provided only one page of testimony from Col. Morris's deposition, which includes plaintiff's marking of Deposition Exhibit 115 and the first part of counsel's question to Col. Morris about the exhibit.  Although plaintiff did not provide the content of the testimony about this exhibit, the court presumes that it was used without objection because defendant has not stated otherwise.

[31]  Defendant did not claim that the pages were protected by the attorney-client privilege in its privilege log or at deposition, and does not so claim in its legal memoranda.

[32]  Again, the court disregards plaintiff's belated contention that the memorandum was not protected work product.  See supra note 25.

request to expand the marina, including the possibility of a lawsuit, and were clearly prepared by one or more representatives of the Corps. Despite their status as protected work product, however, defendant disclosed the pages to plaintiff. Thus, the court's next inquiry is whether defendant waived work-product protection for the pages due to the disclosure. The threshold issue is whether defendant's disclosure of the pages to plaintiff was inadvertent, as defendant contends, or intentional, as plaintiff contends. As noted above, plaintiff obtained the pages on three separate occasions–once via a FOIA request and twice during its environmental investigation. Because defendant disclosed the pages to plaintiff more than once, and via more than one mechanism, the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent. Accord Nat'l Helium Corp., 219 Ct. Cl. 614. Therefore, given defendant's disregard for the protection of the privileged pages, it has waived work-product protection for the pages.

Moreover, even if defendant's disclosure of the pages was inadvertent, defendant has not shown that it "took reasonable steps to prevent disclosure" or "promptly took reasonable steps to rectify the error . . . ." Fed. R. Evid. 502(b). First, the court is unable to determine the adequacy of defendant's predisclosure actions. As noted above, defendant failed to provide sufficient information concerning its FOIA screening procedures to demonstrate their adequacy. And, defendant has failed completely to provide any information concerning the screening procedures used for plaintiff's environmental investigation. Indeed, the only information that the court has regarding defendant's preparation for plaintiff's environmental investigation comes from Ms. Boyd of ATOKA, Inc., who indicated that she "was not supervised during [her] review and copying of the documents at either office" and that "[n]o one from either office requested to review or indicated that they desired to review the documents [she] selected and copied before they could be released to [her]." Reply Compel Ex. A ¶ 6. Defendant has not rebutted the information provided by Ms. Boyd, either in its subsequently filed legal memoranda or by way of affidavit.[33] Accordingly, defendant has failed to show that it took reasonable steps to prevent the disclosure of the pages.

Second, defendant failed to take any action to rectify its disclosure. Plaintiff obtained the pages via a FOIA request in the fall of 2006.[34] Plaintiff's counsel then introduced these pages as exhibits at Col. Morris's February 20, 2008 deposition, Representative Berry's March 13, 2008 deposition, and Col. Holden's March 27, 2008 deposition. However, defense counsel did not raise any privilege objections to the use of the pages at any of the depositions. Such failure to

---

[33] Also worth noting is that Mr. Fisher, in his earlier filed affidavit, does not refer to Ms. Boyd and her review of the files at the two offices, nor does Ms. Boyd indicate that she had any dealings with Mr. Fisher during her visits.

[34] The record does not contain the dates that plaintiff obtained the pages via its environmental investigation. However, the investigation did occur before plaintiff filed its complaint on February 26, 2007. See Am. Compl. ¶ 116.

object supports a waiver of privilege.[35]  See, e.g., Nguyen v. Excel Corp., 197 F.3d 200, 206-07 (5th Cir. 1999); Crossroads Sys. (Tex.), Inc. v. Dot Hill Sys. Corp., No. A-03-CA-751-SS, 2006 WL 1544621, at *1-3 (W.D. Tex. May 31, 2006); Edwards v. Whitaker, 868 F. Supp. 226, 229 (M.D. Tenn. 1994); FDIC v. Ernst & Whinney, 137 F.R.D. 14, 19 (E.D. Tenn. 1991); Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 132 F.R.D. 204, 209 (N.D. Ind. 1990). Moreover, after the depositions, defendant did not attempt to rectify its disclosure, either by seeking the return of the pages via RCFC 26(b)(5)(B) or otherwise, placing the pages on its privilege log, or filing a motion for a protective order.  Defendant's complete failure to take curative action is the antithesis of prompt rectification.  See Clarke, 2009 WL 970940, at *6; Preferred Care Partners Holding Corp., 2009 WL 982449, at *14.  Thus, defendant has waived the work-product protection for these pages.

### 3.  Deposition Exhibit 187

Deposition Exhibit 187 is an August 9, 2000 electronic mail message from Rupert J. Jennings, the Assistant Chief Counsel for Legislation, Fiscal, and General Law at the Corps' Office of the Chief Counsel, to Laura O. Norman, another Corps attorney, bearing the subject line "Engineer Inspector General (EIG) Inquiry–Greers Ferry Lake."  Dep. Ex. 187.  In the message, Mr. Jennings delegates to Ms. Norman a request for a legal opinion from the Engineer Inspector General.  Id.  The following legend appears at the bottom of the message: "Attorney-Client Privileged Communication; Attorney Work Product; Do Not Release Under FOIA; Do Not Copy; Do Not Forward."  Id.  Plaintiff obtained the message from the Corps' Greers Ferry Lake Project Office in response to a FOIA request and during its environmental investigation.  Id.

---

[35]  Defendant's argument that the deponents were not questioned on, and did not provide answers concerning, the protected portion of the pages misses the point.  The purpose of the work-product doctrine is to protect an attorney's thought processes and legal recommendations from the attorney's adversaries so that the adversaries do not gain an unfair advantage in litigation.  See Nobles, 422 U.S. at 238; In re Echostar Commc'ns Corp., 448 F.3d at 1301. Thus, any use of protected material during deposition without objection compromises the work-product protection.  Cf. Carter, 909 F.2d at 1451 ("Voluntary disclosure of attorney work product to an adversary in the litigation for which the attorney produced the information defeats the policy underlying the privilege . . . ."); Evergreen Trading, LLC, 80 Fed. Cl. at 133 (agreeing with the proposition that a party may waive work-product protection by disclosing the work product to a potential adversary in litigation).  Defendant's citation to Coleman v. American Broadcasting Co. is unavailing.  In Coleman, "agents of the defendant . . . testified about the actions they took and the facts in [the] case" at deposition.  106 F.R.D. 201, 209 (D.D.C. 1985). The court held that such testimony "in no way constitutes a waiver of the attorney-client privilege" because the plaintiff was "unable to cite to any instance in which a communication between a managing official and one of the in-house lawyers was disclosed in part . . . or in whole . . . ."  Id.  Coleman is distinguishable from this case because it does not concern the work-product doctrine and because there is no evidence that the plaintiff in Coleman attempted to use privileged or protected documents at the depositions.

In addition, plaintiff used this message at Col. Holden's March 27, 2008 deposition. Specifically, plaintiff's counsel provided Col. Holden with the message, which was marked as an exhibit for identification, and asked him to identify the author, recipient, and a third individual mentioned in the text of the message.  Reply Compel Ex. E at 267.  Before Col. Holden could respond to the question, the deposition transcript reflects that the following colloquy occurred:

> Defense co-counsel: If I might, these people are from headquarters' counsel office, which, unless it's an objection from us to the use of this e-mail at trial.
>
> Plaintiff's counsel: Oh, I see it is stamped.  So, Rupert Jennings is an attorney?
>
> Defense co-counsel: Yes.
>
> Plaintiff's counsel: And Laura Norman?[36]
>
> Defense co-counsel: Yes.
>
> Plaintiff's counsel: And Susan Nee?
>
> Defense co-counsel: Yes.

Id. (footnote added); Pl.'s Supp'l Br. 14.  After this conversation, plaintiff's counsel asked Col. Holden whether the message helped refresh his recollection about the Engineer Inspector General inquiry.  Pl.'s Supp'l Br. 14.  Col. Holden responded that he could not "say with certainty" that he could recollect the inquiry.  Id.  Plaintiff's counsel then proceeded to question Col. Holden about another document.  Id.  As a final note, the message appears on defendant's October 22, 2008 privilege log as protected work product.  See Mot. Compel Ex. D at 1 (document 2).

Plaintiff contends that defendant's disclosure of this electronic mail message waives any privilege that defendant might want to assert with respect to the message.  Defendant does not dispute that the message is privileged.[37]  See id. (claiming work-product protection); Def.'s

---

[36] The transcript provided to the court ends here.  However, plaintiff quoted the remainder of the conversation and testimony concerning this electronic mail message in its supplemental brief.  Defendant has not indicated that plaintiff's quotation is incorrect.

[37] Despite the protective legend on the electronic mail message itself, defendant did not affirmatively claim that the message was protected by the attorney-client privilege in its privilege log or at deposition.  However, defendant appears to raise the attorney-client privilege in a roundabout manner in its supplemental brief: "[I]ts production should not constitute a waiver of the attorney client privilege or the attorney work product privilege."  Def.'s Supp'l Br. 7.  Defendant then directly raises the attorney-client privilege in its most recent brief.  Although the court addresses defendant's last-minute invocation of the attorney-client privilege, it notes that

Supp'l Br. 9 (claiming work-product protection); Def.'s FRE Br. 10 (claiming the attorney-client privilege).  Instead, it contends that privilege should not be waived for the message because it was "inadvertently provided to plaintiff in a FOIA request despite the Corps' efforts to withhold privileged material . . . ."  Def.'s Supp'l Br. at 7.  It also asserts that "counsel objected to the use" of the message at deposition and that the deposition testimony was insufficient to waive privilege because the message was not used at deposition for a privileged purpose.  Id. at 7-8.  In response, plaintiff characterizes defendant's objection to the use of the message at deposition as insubstantial and stresses that after the deposition, defendant did "nothing to attempt to retrieve or otherwise protect any alleged privilege related to this document."  Pl.'s Supp'l Br. 14.  But see Mot. Compel Ex. D at 1 (identifying the message as document 2 on defendant's privilege log).

As an initial matter, the court concludes that the electronic mail message is protected by the work-product doctrine, but not by the attorney-client privilege.  The attorney-client privilege attaches only to communications between an attorney and his or her client.  See United Shoe Machinery Corp., 89 F. Supp. at 358.  However, the message here is between two Corps attorneys concerning a legal opinion requested by their client–the Corps.  Thus, while the message was clearly prepared by a party's representative in anticipation of litigation and therefore constitutes protected work product, the attorney-client privilege is inapplicable.

Having determined that the electronic mail message is protected work product, the court's next inquiry is whether defendant waived the protection by disclosing the document to plaintiff.  The threshold issue is whether defendant's disclosure of the message to plaintiff was inadvertent, as defendant contends, or intentional, as plaintiff contends.  As noted above, plaintiff obtained the message via both a FOIA request and its environmental investigation.  Because defendant disclosed the message to plaintiff more than once, and via more than one mechanism, the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent.  Accord Nat'l Helium Corp., 219 Ct. Cl. 614.  Therefore, given defendant's disregard for the protection of the privileged message, it has waived work-product protection for the message.

Moreover, even if defendant's disclosure of the electronic mail message was inadvertent, defendant has not shown that it "took reasonable steps to prevent disclosure" or "promptly took reasonable steps to rectify the error . . . ."  Fed. R. Evid. 502(b).  First, the court is unable to determine the adequacy of defendant's predisclosure actions.  As noted above, defendant failed to provide sufficient information concerning its screening procedures for both plaintiff's FOIA request and plaintiff's environmental investigation to demonstrate their adequacy.  Accordingly, defendant has failed to show that it took reasonable steps to prevent the disclosure of the message.

_____

defendant's delay in asserting the privilege until its third brief concerning plaintiff's amended motion to compel is tantamount to a waiver of that privilege.  Cf. Novosteel SA, 284 F.3d at 1274 ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").

Second, defendant has not demonstrated that it promptly took reasonable steps to rectify its disclosure.  Plaintiff obtained the electronic mail message via a FOIA request in the fall of 2006.[38]  It appears that defendant first learned of its disclosure at Col. Holden's March 27, 2008 deposition, at which time defense co-counsel made a rather incoherent statement that did nothing substantive beyond identifying the author and recipients of the message as Corps attorneys.  If defense co-counsel's statement could be construed as an objection, it fails to describe the precise basis of the objection, and it did not stop plaintiff's counsel from questioning Col. Holden concerning the contents of the message.  Then, after the deposition, defendant's actions were incongruent.  It placed the message on its October 22, 2008 privilege log–nearly seven months after learning of the disclosure–but did not seek the return of the message, via RCFC 26(b)(5)(B) or otherwise, or file a motion for a protective order.  Defendant's vague statement during deposition, failure to instruct its witness not to answer any questions concerning the message, and inconsistent, delayed attempts to rectify its disclosure of the message indicate to the court that defendant's assertion of work-product protection is, at best, half-hearted and woefully late. Accord Clarke, 2009 WL 970940, at *6; Preferred Care Partners Holding Corp., 2009 WL 982449, at *14.  Accordingly, the court concludes that defendant has waived work-product protection for this message.

### 4.  Deposition Exhibit 188

Deposition Exhibit 188 is a two-page July 31, 2000 memorandum from Colonel Cameron B. Nerdahl, the Engineer Inspector General, to the Corps' Office of the Chief Counsel, bearing the subject line "Inspector General Inquiry–Mr. Walters."  Dep. Ex. 188.  In the memorandum, Col. Nerdahl recited certain background information regarding plaintiff's complaint and requested a legal opinion concerning the issues raised in the complaint.  Id.  The memorandum contains the following legend: "For Official Use Only; This document [illegible] [illegible]; Exempt From Mandatory Disclosure under the FOIA; Exemptions 5, 6 apply."  Id.  Plaintiff obtained the message from the Corps during its environmental investigation, likely on two separate occasions.  Id. (containing two copies of the memorandum stamped with "PB HS" page numbers, indicating the memorandum was obtained at the Greers Ferry Lake Project Office, and one copy of the memorandum with "ATOKA" page numbers, indicating that the memorandum was obtained from one of two Corps offices).  In addition, plaintiff used this memorandum at the March 27, 2008 deposition of Col. Holden without objection from defendant.  Reply Compel Ex. E at 269.  The memorandum appears on defendant's privilege log as protected by the attorney-client privilege.  See Mot. Compel Ex. D at 1 (document 3).

Plaintiff contends that defendant's disclosure of this memorandum waives any privilege that defendant might want to assert with respect to the memorandum.  Defendant does not

---

[38]  The record does not contain the dates that plaintiff obtained the electronic mail message via its environmental investigation.  However, the investigation did occur before plaintiff filed its complaint on February 26, 2007.  See Am. Compl. ¶ 116.

dispute that the memorandum is privileged.[39]  See id. (claiming the attorney-client privilege); Def.'s Supp'l Br. 9 (claiming work-product protection); Def.'s FRE Br. 10 (claiming attorney-client privilege).  Instead, it contends that privilege should not be waived for the memorandum because it was "inadvertently provided to plaintiff in a FOIA request despite the Corps' efforts to withhold privileged material . . . ."[40]  Def.'s Supp'l Br. 7.  It also asserts that "counsel objected to the use" of the memorandum at deposition and that the deposition testimony was insufficient to waive privilege because the memorandum was not used at the deposition for a privileged purpose.  Id. at 7-8.  In response, plaintiff refutes defendant's contention that it objected to the use of the memorandum at deposition and emphasizes that after the deposition, defendant "sat on its rights, doing nothing to retrieve or otherwise protect any alleged privilege."  Pl.'s Supp'l Br. 15.  But see Mot. Compel Ex. D at 1 (identifying the memorandum as document 2 on defendant's privilege log).

Initially, the court concludes that the memorandum is protected by the attorney-client privilege.  The memorandum clearly was prepared by a client requesting a legal opinion from its attorney.  Thus, the court's next inquiry is whether defendant waived the attorney-client privilege by disclosing the memorandum to plaintiff.  The threshold issue is whether defendant's disclosure of the memorandum to plaintiff was inadvertent, as defendant contends, or intentional, as plaintiff contends.  As noted above, it appears that plaintiff obtained the memorandum on two occasions during its environmental investigation.  However, because that fact is not entirely clear, the court will treat defendant's disclosure of the memorandum as a single disclosure.  Thus, the court presumes that defendant's disclosure was inadvertent.

Yet, the attorney-client privilege may still be waived if defendant did not take "reasonable steps to prevent disclosure" and did not "promptly" take "reasonable steps to rectify the error . . . ."  Fed. R. Evid. 502(b).  With respect to the former inquiry, the court is unable to determine the adequacy of defendant's predisclosure actions.  As noted above, defendant did not provide any information concerning its screening procedures for plaintiff's environmental investigation to demonstrate their adequacy.  Accordingly, defendant has failed to show that it took reasonable steps to prevent the disclosure of the memorandum.

With respect to the second inquiry, defendant has not demonstrated that it promptly took reasonable steps to rectify its disclosure.  Plaintiff obtained a copy of the memorandum prior to

---

[39]  Defendant did not affirmatively claim that the message was protected work product in its privilege log, at deposition, or in most of its briefs.  However, defendant claims work-product protection in its supplemental brief.  The court finds that defendant has abandoned its belatedly asserted work-product protection claim.

[40]  Based on the markings on the copies of the memorandum provided to the court, it does not appear that plaintiff obtained the memorandum via a FOIA request.  See Dep. Ex. 188.  Thus, the court presumes that defendant is making a general claim of inadvertent production here.

February 26, 2007, the date it filed its complaint in this case.[41]  It appears that defendant first learned of its disclosure at Col. Holden's March 27, 2008 deposition.  However, despite the protective legend on the memorandum, defense counsel did not raise any privilege objections to the use of the memorandum at the deposition.  As noted above, such failure to object supports a waiver of privilege, see, e.g., Nguyen, 197 F.3d at 206-07; Crossroads Sys. (Tex.), Inc., 2006 WL 1544621, at *1-3; Edwards, 868 F. Supp. at 229; Ernst & Whinney, 137 F.R.D. at 19; Golden Valley Microwave Foods, Inc., 132 F.R.D. at 209, regardless of the manner in which plaintiff's counsel used the document at deposition.  Further, defendant's actions after the deposition were, once again, incongruent.  It placed the memorandum on its October 22, 2008 privilege log–nearly seven months after learning of the disclosure–but did not seek the return of the message, via RCFC 26(b)(5)(B) or otherwise, or file a motion for a protective order.  As with Deposition Exhibit 187, defendant's inconsistent and delayed attempts to rectify its disclosure of the memorandum indicate to the court that defendant's assertion of the attorney-client privilege lacks seriousness.  Accord Clarke, 2009 WL 970940, at *6; Preferred Care Partners Holding Corp., 2009 WL 982449, at *14.  Accordingly, the court concludes that defendant has waived the attorney-client privilege for this memorandum.

### 5.  Deposition Exhibit 189

Deposition Exhibit 189 is a four-page "Issue Paper," prepared by Ms. Brooks, that addresses certain legal issues concerning the Memorandum of Understanding between plaintiff and the Corps, prepared in reaction to plaintiff's displeasure at the Corps' failure to construct an access road to Cove Creek.  Dep. Ex. 189.  The document is undated, and bears the following legend: "Attorney Work Product or Attorney-Client Privileged Communication; For Official Army use Only–Confidentiality Requested; Do Not Routinely Copy, Forward, or Release; Do Not Release Under FOIA."  Id.  Plaintiff obtained the document from the Corps' Little Rock District Office in response to a FOIA request and during its environmental investigation.  Id.  In addition, plaintiff used this document at Col. Holden's March 27, 2008 deposition.  Although defense co-counsel objected to the use of the document on the basis of an unspecified privilege, see Reply Compel Ex. E at 272-73 (indicating that the document was authored by Ms. Brooks and that defense co-counsel had the "[s]ame objection as previous," apparently referring to the vague objection lodged against the use of Deposition Exhibit 187, which merely identified the author and recipients the electronic mail message as attorneys), Col. Holden continued to testify about the document's factual content, see id. at 273-79.  The document appears on defendant's privilege log as protected work product.  See Mot. Compel Ex. D at 1 (document 1).

Plaintiff, until very recently, presumed that the document was privileged or protected, but maintained that defendant's disclosure of the document waived any privilege or protection that defendant might want to assert with respect to the document.  However, in its most recent brief,

---

[41]  The record does not contain the date or dates that plaintiff obtained the memorandum during its environmental investigation.  However, the investigation did occur before plaintiff filed its complaint.  See Am. Compl. ¶ 116.

plaintiff asserts that the document is not protected work product because it was not prepared in anticipation of litigation.  Defendant takes the position that the document is protected work product.[42]  Further, defendant contends that work-product protection should not be waived for the document because it was "inadvertently provided to plaintiff in a FOIA request despite the Corps' efforts to withhold privileged material . . . ."  Def.'s Supp'l Br. 8.  It also asserts that "counsel objected to the use" of the document at deposition and that the deposition testimony was insufficient to waive work-product protection because the document was not used at the deposition for a privileged purpose.  Id.

As an initial matter, the court concludes that the document is protected work product.[43]  It is clear that the pages were "prepared or obtained 'because of' the prospect of litigation," Evergreen Trading, LLC, 80 Fed. Cl. at 132, as they contain a Corps attorney's analysis of the Corps' legal position concerning the Memorandum of Understanding, prepared in the face of plaintiff's displeasure at the Corps' failure to construct an access road to Cove Creek.  Despite the protection afforded the document, however, defendant disclosed it to plaintiff.  Thus, the court's next inquiry is whether defendant waived work-product protection for the document due to the disclosure.  The threshold issue is whether defendant's disclosure of the document to plaintiff was inadvertent, as defendant contends, or intentional, as plaintiff contends.  As noted above, plaintiff obtained the document via both a FOIA request and its environmental investigation.  Because defendant disclosed this document to plaintiff more than once, and via more than one mechanism, the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent.  Accord Nat'l Helium Corp., 219 Ct. Cl. 614.  Therefore, given defendant's disregard for the protection of the privileged document, it has waived work-product protection for the document.

Moreover, even if defendant's disclosure of the document was inadvertent, defendant has not shown that it "took reasonable steps to prevent disclosure" or "promptly took reasonable steps to rectify the error . . . ."  Fed. R. Evid. 502(b).  First, the court is unable to determine the adequacy of defendant's predisclosure actions.  As noted above, defendant failed to provide sufficient information concerning its screening procedures for both plaintiff's FOIA request and plaintiff's environmental investigation to demonstrate their adequacy.  Accordingly, defendant has failed to show that it took reasonable steps to prevent the disclosure of the document.

---

[42]  In its supplemental brief, defendant claims that it objected to the use of the document at deposition based upon the attorney-client privilege.  However, the court is unable to find any reference to the attorney-client privilege on the pages of the deposition transcript cited by defendant.

[43]  For the third time, the court disregards plaintiff's belated contention that the memorandum was not protected work product.  See supra note 25.

Second, defendant has not demonstrated that it promptly took reasonable steps to rectify its disclosure.  Plaintiff obtained the document via a FOIA request in the fall of 2006.[44]  It appears that defendant first learned of its disclosure at Col. Holden's March 27, 2008 deposition, at which time defense co-counsel made the nonspecific objection described above, but did not instruct the witness to conclude his testimony about the document.  Consequently, Col. Holden continued to answer questions about the document.  Then, after the deposition, defendant's actions lacked congruity.  Defendant placed the document on its October 22, 2008 privilege log–nearly seven months after learning of the disclosure–but did not seek the return of the document, via RCFC 26(b)(5)(B) or otherwise, or file a motion for a protective order.  Defendant's inconsistent and delayed attempts to rectify its disclosure of the document indicate to the court that defendant's assertion of work-production protection is, again, unserious.  Accord Clarke, 2009 WL 970940, at *6; Preferred Care Partners Holding Corp., 2009 WL 982449, at *14.  Accordingly, the court concludes that defendant has waived work-product protection for this document.

### 6.  Deposition Exhibit 2

Deposition Exhibit 2 is a one-page string of two electronic mail messages with the subject line: "Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek."  Dep. Ex. 2.  The original message was sent from Mr. Noggle to Edward R. Watford, both Corps employees, and copied to a number of other Corps employees, including Mr. Allen, on September 19, 2000.  Id.  Then, on September 20, 2000, one of the employees copied on the original message, Edwin C. Hargis, forwarded the message, with commentary, to two other Corps employees, Mr. Park and Chris B. Roark.  Id.  The string of messages contained a summary of what was discussed during the conference call.  Id.  Plaintiff obtained the string of messages from the Corps' Greers Ferry Lake Project Office in response to a FOIA request and from defendant in an RCFC 26 disclosure.  Id.  In addition, plaintiff used this string of messages, without objection from defendant, at the January 14, 2008 deposition of Mr. Park.  Reply Compel Ex. B at 35-42.  The original message (i.e., the message from Mr. Noggle to Mr. Watford) appears on defendant's privilege log as protected work product.  See Mot. Compel Ex. D at 3 (document 16).  The subsequent forwarded message does not.  See id. at 1-3; Def.'s Supp'l Br. Ex. 2.  But see Def.'s FRE Br. 10 (claiming the attorney-client privilege for both messages).

Plaintiff contends that defendant's disclosure of this string of electronic mail messages waives any privilege that defendant might want to assert with respect to the messages.  Defendant does not dispute that the string of messages is privileged.[45]  See Mot. Compel Ex. D at 3

---

[44]  The record does not contain the date that plaintiff obtained the document via its environmental investigation.  However, the investigation did occur before plaintiff filed its complaint on February 26, 2007.  See Am. Compl. ¶ 116.

[45]  Defendant did not claim that the string of messages was protected by the attorney-client privilege in its privilege log, at deposition, or in most of its briefs.  Yet, in its most recent

(claiming work-product protection with respect to the original electronic mail message); Def.'s FRE Br. 10 (claiming the attorney-client privilege with respect to Deposition Exhibit 3 in its entirety).  Instead, it contends that privilege should not be waived for the messages because the deposition testimony did not concern any privileged aspects of the messages.  In response, plaintiff avers that the string of messages was "utilized and reviewed in depth" at deposition and notes that "it has been well over a year since this document was utilized in deposition and the Government has done nothing to attempt to recover the document or prevent its further use."  Pl.'s Supp'l Br. 6 n.3.  But see Mot. Compel Ex. D at 3 (identifying the original message as document 16 on defendant's privilege log).

Initially, the court concludes that the entire string of electronic mail messages is protected by the work-product doctrine, but not by the attorney-client privilege.  Although Mr. Noggle, one of the Corps' employees, copied the original message to Mr. Allen, one of the Corps' attorneys, he did not copy the message "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding . . . ."  United Shoe Machinery Corp., 89 F. Supp. at 358.  Mr. Noggle merely reported the substance of a conference call, and was not seeking legal advice.  Accordingly, the original message is not protected by the attorney-client privilege.  In addition, the second message of the string was not authored or received by an attorney, and is therefore not protected by the attorney-client privilege.  See id.  However, it is clear that both messages were prepared by a representative of a party in anticipation of litigation and are therefore protected work product.

Having determined that the string of electronic mail messages is protected work product, the court's next inquiry is whether defendant waived the protection of these messages by disclosing them to plaintiff.  The threshold issue is whether defendant's disclosure of the messages to plaintiff was inadvertent, as defendant contends, or intentional, as plaintiff contends.  As noted above, plaintiff obtained the messages via both a FOIA request and defendant's RCFC 26 disclosures.  Because defendant disclosed the messages to plaintiff more than once, and via more than one mechanism, the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent.  Accord Nat'l Helium Corp., 219 Ct. Cl. 614.  Therefore, given defendant's disregard for the protection of the privileged messages, it has waived work-product protection for the messages.

---

brief, defendant claims, for the first time, that the messages are protected by the attorney-client privilege.  As with Deposition Exhibit 187, the court will address defendant's last-minute invocation of the attorney-client privilege, even though defendant's delay in asserting the privilege until its third brief concerning plaintiff's amended motion to compel could be considered a waiver of that privilege.  Cf. Novosteel SA, 284 F.3d at 1274 ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").

Moreover, even if defendant's disclosure of the string of electronic mail messages was inadvertent, defendant has not shown that it "took reasonable steps to prevent disclosure" or "promptly took reasonable steps to rectify the error . . . ." Fed. R. Evid. 502(b). With respect to the former inquiry, the court is unable to determine the adequacy of defendant's predisclosure actions. As noted above, defendant failed to provide sufficient information concerning its FOIA screening procedures to demonstrate their adequacy. And, defendant has not provided any information concerning the screening procedures it utilized in collecting the documents for its RCFC 26 disclosures. The only information provided by defendant was the nonspecific, unsworn averment that "Government counsel undertook the time-consuming task of reviewing thousands of documents . . . ." Opp'n Compel 10. Accordingly, defendant has failed to show that it took reasonable steps to prevent the disclosure of the messages.

With respect to the latter inquiry, defendant has not demonstrated that it promptly took reasonable steps to rectify its disclosure. Plaintiff obtained the string of electronic mail messages via a FOIA request in the fall of 2006 and from defendant at some unspecified date after it filed its complaint. However, it appears that defendant did not realize that it had disclosed the messages until Mr. Park's January 14, 2008 deposition, but even then, defense counsel did not raise any objections to plaintiff's counsel's use of the messages. As noted above, such failure to object supports a waiver of privilege, see, e.g., Nguyen, 197 F.3d at 206-07; Crossroads Sys. (Tex.), Inc., 2006 WL 1544621, at *1-3; Edwards, 868 F. Supp. at 229; Ernst & Whinney, 137 F.R.D. at 19; Golden Valley Microwave Foods, Inc., 132 F.R.D. at 209, regardless of the manner in which plaintiff's counsel used the document at deposition. Then, after the deposition, defendant's actions respecting the assertion of privilege were in conflict. Defendant placed the original message on its October 22, 2008 privilege log–nearly nine-and-one-half months after learning of the disclosure–but did not seek the return of the string of messages, via RCFC 26(b)(5)(B) or otherwise, or file a motion for a protective order. As with previous documents, defendant's half-hearted, delayed attempts to rectify its disclosure of the messages indicate to the court that defendant's assertion of work-product protection is unserious. Accord Clarke, 2009 WL 970940, at *6; Preferred Care Partners Holding Corp., 2009 WL 982449, at *14. Accordingly, the court concludes that defendant has waived work-product protection for these messages.

### 7. Deposition Exhibit 3

Deposition Exhibit 3 is a one-page string of four electronic mail messages with the subject line: "Conference call 1300, 19 Sep 00 with HQ's @ EIG complaint & access road construction at Cove Creek." Dep. Ex. 3. The original message–which is the same as the original message in Deposition Exhibit 2–was sent from Mr. Noggle to Mr. Watford, both Corps employees, and copied to a number of other Corps employees, including Mr. Allen, on September 19, 2000. Id. The original message was then forwarded by one of the original recipients, Thomas P. Risher, to another Corps employee, Michael E. Miller, on September 20, 2000. Id. Later that day, Mr. Miller responded to Mr. Risher in one message, with commentary, and then forwarded all three messages in the string to Mr. Park. Id. The string of messages

contained a summary of what was discussed during the conference call.  Id.  Plaintiff obtained the string of messages from the Corps' Greers Ferry Project Office in response to a FOIA request and during its environmental investigation.  Id.  In addition, plaintiff used this string of messages, without objection from defendant, at the January 14, 2008 deposition of Mr. Park, the December 4, 2008 deposition of Mr. Noggle, and the December 5, 2008 deposition of Ms. Lewis. Reply Compel Ex. B at 42-49; Pl.'s Supp'l Br. Ex. G at 45-47; Pl.'s Supp'l Br. Ex. H at 131-34. The original message (i.e., the message from Mr. Noggle to Mr. Watford) appears on defendant's privilege log as protected work product.  See Mot. Compel Ex. D at 3 (document 16).  The subsequent forwarded messages do not.  See id. at 1-3;  Def.'s Supp'l Br. Ex. 2.  But see Def.'s FRE Br. 10 (claiming the attorney-client privilege for the entire string of messages).

    Plaintiff contends that defendant's disclosure of this string of electronic mail messages waives any privilege that defendant might want to assert with respect to the messages. Moreover, plaintiff contends that the commentary included in the message from Mr. Miller to Mr. Risher is not privileged because the message was not sent to or from counsel, a contention that defendant characterizes as a concession that the message was not privileged.[46]  With respect to the remaining three messages in the string, however, defendant does not dispute that they are privileged.[47]  See Mot. Compel Ex. D at 3 (claiming work-product protection with respect to the original electronic mail message); Def.'s FRE Br. 10 (claiming the attorney-client privilege with respect to Deposition Exhibit 3 in its entirety).  Instead, it contends that privilege should not be waived for the messages because the deposition testimony did not concern any privileged aspects of the messages.  In response, plaintiff avers that the string of messages was "utilized and reviewed in depth" at deposition, and notes that defendant has failed to cure its disclosure, even after plaintiff filed its amended motion to compel arguing that defendant had waived privilege with respect to these messages.  Pl.'s Supp'l Br. 7.  But see Mot. Compel Ex. D at 3 (identifying the original message as document 16 on defendant's privilege log).

---

    [46]  Defendant's claim of privilege for this portion of Deposition Exhibit 3 is inconsistent. Defendant first argued, contrary to its privilege log, that the entire string of electronic mail messages was privileged.  It then appears to have taken the position that this portion of Deposition Exhibit 3 was not privileged.  However, in its most recent brief, defendant contends again that the entire string of messages is privileged.

    [47]  Defendant did not claim that the string of messages is protected by the attorney-client privilege in its privilege log, at deposition, or in most of its briefs.  Yet, in its second supplemental brief, defendant claims, for the first time, that the messages are protected by the attorney-client privilege.  As with Deposition Exhibits 2 and 187, the court will address defendant's last-minute invocation of the attorney-client privilege, even though defendant's delay in asserting the privilege–more than one year after learning of the relevant disclosure–could be considered a waiver of that privilege.  Cf. Novosteel SA, 284 F.3d at 1274 ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").

Initially, the court concludes that the entire string of electronic mail messages is protected by the work-product doctrine, but not by the attorney-client privilege. As noted above, the original message is not protected by the attorney-client privilege. Similarly, the subsequent messages in this string were not authored or received by an attorney, and therefore are not protected by the attorney-client privilege. However, it is clear that all of the messages were prepared by a representative of a party in anticipation of litigation, and therefore are protected work product.

Having determined that the string of electronic mail messages is protected work product, the court's next inquiry is whether defendant waived the protection of these messages by disclosing them to plaintiff. The threshold issue is whether defendant's disclosure of the messages to plaintiff was inadvertent, as defendant contends, or intentional, as plaintiff contends. As noted above, plaintiff obtained the messages via both a FOIA request and plaintiff's environmental investigation. Because defendant disclosed the messages to plaintiff more than once, and via more than one mechanism, the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent. Accord Nat'l Helium Corp., 219 Ct. Cl. 614. Therefore, given defendant's disregard for the protection of the privileged messages, it has waived work-product protection for the messages.

Moreover, even if defendant's disclosure of the string of electronic mail messages was inadvertent, defendant has not shown that it "took reasonable steps to prevent disclosure" or "promptly took reasonable steps to rectify the error . . . ." Fed. R. Evid. 502(b). First, the court is unable to determine the adequacy of defendant's predisclosure actions. As repeatedly noted above, defendant failed to provide sufficient information concerning its screening procedures for both plaintiff's FOIA request and plaintiff's environmental investigation to demonstrate their adequacy. Accordingly, defendant has failed to show that it took reasonable steps to prevent the disclosure of these messages.

Second, defendant has not demonstrated that it promptly took reasonable steps to rectify its disclosure. Plaintiff obtained the string of electronic mail messages via a FOIA request in the fall of 2006.[48] It appears that defendant first learned of its disclosure at Mr. Park's January 14, 2008 deposition. However, defense counsel did not raise any privilege objections to the use of the messages at the deposition. As noted above, such failure to object supports a waiver of privilege, see, e.g., Nguyen, 197 F.3d at 206-07; Crossroads Sys. (Tex.), Inc., 2006 WL 1544621, at *1-3; Edwards, 868 F. Supp. at 229; Ernst & Whinney, 137 F.R.D. at 19; Golden Valley Microwave Foods, Inc., 132 F.R.D. at 209, regardless of how plaintiff's counsel used the document at deposition. Then, nearly nine-and-one-half months after it learned of its disclosure at Mr. Park's deposition, defendant placed the original message on its October 22, 2008 privilege log. But, one month after that, plaintiff's counsel used the messages at Mr. Noggle's December

---

[48]   The record does not contain the date that plaintiff obtained the string of electronic mail messages via its environmental investigation. However, the investigation did occur before plaintiff filed its complaint on February 26, 2007. See Am. Compl. ¶ 116.

4, 2008 deposition and Ms. Lewis's December 5, 2008 deposition, without objection from defense counsel. Further, defendant did not seek the return of the messages, via RCFC 26(b)(5)(B) or otherwise, or file a motion for a protective order. Defendant's less than vigorous attempts to rectify its disclosure of the messages indicate to the court that defendant's assertion of work-product protection is half-hearted. Accord Clarke, 2009 WL 970940, at *6; Preferred Care Partners Holding Corp., 2009 WL 982449, at *14. Accordingly, the court concludes that defendant has waived work-product protection for these messages.

## 8. Summary of the Existence of Privilege and Waiver

As the above analysis makes clear, defendant has failed to meet its burden to demonstrate that it has not waived the attorney-client privilege or work-product protection with respect to all eight of the deposition exhibits. Defendant failed to provide the court with sufficient information to evaluate its screening procedures for preventing disclosure. Indeed, the multiple disclosures of some of the documents suggest that defendant's screening procedures were inadequate. In addition, defendant permitted witnesses to continue to testify at deposition about the privileged documents, even after lodging objections to such testimony. And, defendant made inadequate efforts to rectify its disclosures upon discovery. At the earliest, it placed the documents at issue on its privilege log almost seven months after discovery of their disclosure, with some documents not added to the privilege log for nearly nine-and-one-half months and others not added to the privilege log at all. Moreover, defendant never sought a protective order from the court to limit further disclosure of the documents. Altogether, defendant's actions (and inaction) lead the court to conclude that defendant has waived any privilege or protection associated with these documents.

## 9. Subject-Matter Waiver

Because the court has determined that defendant's carelessness resulted in the disclosure of five documents (i.e., Deposition Exhibits 115/153, 187, 189, 2, and 3), resulting in the waiver of work-product protection for those documents, it must next determine the scope of defendant's waiver.[49] Plaintiff argues that defendant's disclosure of the above-described documents should result in the waiver of privilege for all documents of the same subject matter.[50] Plaintiff describes the scope of the waiver as follows:

_____

[49] Because the court concluded that defendant inadvertently disclosed the documents included in Deposition Exhibits 170 and 188, there can be no subject-matter waiver with respect to those documents. See Fed. R. Evid. 502(a)(1).

[50] Plaintiff discusses subject-matter waiver as a waiver of the attorney-client privilege. Because subject-matter waiver applies equally to the work-product doctrine, see Fed. R. Evid. 502, the court will treat plaintiff's subject-matter waiver argument as if plaintiff had applied it to the work-product doctrine.

1.  The Corps' knowledge of Eden Isle Marina's right and authority to expand [within] its lease area.  DX 115, 153, and 170.

2.  The Corps' decision to deny expansion of the Eden Isle Marina and the factors involved in those decisions.  DX 115 and 170.

3.  The negotiation and propriety of the [Memorandum of Understanding].  DX 187, 188, and 189.

4.  The Corps' dealing[s] with the [Engineer Inspector General] Complaint.  DX 2, 3, 187, and 188.

5.  The Corps' knowledge of its obligation to build a road at Cove Creek as well as its budgeting obligations and efforts prior to filing suit.  DX 2, 3, and 189.

Supplemental Reply Supp. Pl.'s Am. Mot. Compel 4; accord Mot. Compel 38 ("[T]he Government waived attorney-client privilege as to subject matter pertaining to the facts preceding and leading up to the signing of the [Memorandum of Understanding], as well as the subject matter of Cove Creek (post signing of the [Memorandum of Understanding])."); see also Pl.'s Supp'l Br. 15-19 (arguing that the scope of the waiver should reach to all documents concerning the same subject matter).  Defendant disagrees with plaintiff's position, contending that because it did not selectively disclose the documents to gain an advantage in this litigation, a subject-matter waiver is not appropriate.  Moreover, argues defendant, even if a subject-matter waiver was appropriate, plaintiff's description of the scope of the waiver is too broad.

Essentially, the court's analysis boils down to determining whether fairness dictates the expansion of defendant's waiver of work-product protection for the five individual documents to all protected documents concerning the same subject matter.  See Fed. R. Evid. 502(a).  As noted above, the Federal Circuit has declared opinion work product to be off-limits with respect to a subject-matter waiver, In re Echostar Commc'ns Corp., 448 F.3d at 1303 ("Under Rule 26(b)(3), this so-called 'opinion' work product deserves the highest protection from disclosure."), thus limiting any such waiver to "'factual' or 'non-opinion' work product," id. at 1302.  Plaintiff has not cited any binding precedent that would cause the court to depart from this prohibition.

Thus, the court's narrow inquiry is whether defendant's disclosures constitute a waiver of work-product protection for the fact work product of the same subject matter.  The court concludes that they do not.  The "overarching goal of waiver" of work-product protection "is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice."  Id. at 1303.  Here, however, plaintiff has not demonstrated that defendant is selectively disclosing documents to gain an advantage in litigation.  Indeed, the disclosed documents do not appear to benefit the

defense in any appreciable way.[51]  Rather than constituting some sort of scheme to bolster its defense, defendant's production of protected documents was merely sufficiently careless and reckless to be intentional.  Defendant's disclosures resulted from its failure to exercise caution and diligence in (1) responding to FOIA requests; (2) permitting access to documents for an environmental investigation; and (3) providing discovery material.  This failure was compounded by defendant's failure to object to the use of the once-privileged documents at deposition and by its simultaneous failure to seek the return of the documents or move for a protective order.  For these reasons, defendant's disclosures have not unfairly impacted plaintiff.  Because defendant's disclosures lacked any strategic value and have not adversely impacted plaintiff's ability to prosecute its case, the court declines to extend the scope of the waiver here to fact work product of the same subject matter.

### 10.  At-Issue Implied Waiver

One final issue remains to be addressed: whether, as plaintiff contends, defendant has placed certain privileged and protected material at issue by asserting the affirmative defenses of accord and satisfaction and assumption of risk, resulting in the waiver of the attorney-client privilege and work-product protection.  Such an at-issue implied waiver occurs when the following factors have been established:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Hearn, 68 F.R.D. at 581.

As plaintiff notes, defendant has asserted an affirmative defense of accord and satisfaction.  According to the Federal Circuit:

> "A claim is discharged by the doctrine of accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.'"  A valid accord and satisfaction requires four elements: (1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties;[52] and (4)

---

[51]  Moreover, the fact work product contained within these documents is nothing more than a rehash of facts already known to and discoverable by plaintiff.

[52]  A meeting of the minds occurs when there are "'accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise.'"  Chesapeake

consideration.  In its most common form, an accord and satisfaction exists as "a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute."

O'Connor v. United States, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (footnote added) (citations omitted); see also Black's Law Dictionary 17 (6th ed. 1990) (explaining that an accord "is a new contract substituted for an old contract which is thereby discharged").  Here, defendant contends that after the parties executed the Memorandum of Understanding in 1999, they released the 1995 lease, replacing it with a new lease, resulting in an accord and satisfaction.  See Am. Answer ¶ 215.  Plaintiff argues that defendant's assertion of this affirmative defense entitles it to privileged and protected documents concerning the Corps' "misrepresentations," "concealment," and "wrongful inducement" that caused plaintiff to execute the Memorandum of Understanding and agree to executing a new lease–such as documents similar to Deposition Exhibit 170 and memoranda documenting the Corps' "voluminous meetings" prior to the execution of the Memorandum of Understanding.  Mot. Compel 25-27.

Defendant also asserts the affirmative defense of assumption of risk.  Specifically, defendant claims that plaintiff "assumed the risk that the Cove Creek Marina would be delayed or never built" when it executed the Memorandum of Understanding and the release of the 1995 lease.  Am. Answer ¶ 217.  Plaintiff contends that defendant's assertion of this affirmative defense entitles it to privileged and protected documents demonstrating that the Corps never intended to fund the marina at Cove Creek and that it was the Corps' responsibility to provide such funding–such as documents similar to Deposition Exhibits 2 and 3–that would negate its affirmative defense.

As noted above, privilege can be waived when the holder of the privilege asserts an affirmative defense that can only be established using the protected documents.  See In re Echostar Commc'ns Corp., 448 F.3d at 1301; Blue Lake Forest Prods., Inc., 75 Fed. Cl. at 783.  Indeed, in Blue Lake Forest Products, Inc., the court applied the at-issue implied waiver to privileged documents due to defendant's assertion of an assumption of risk affirmative defense.  75 Fed. Cl. at 786.  In that case, the plaintiffs contended "that Defendant's assumption of risk defense–which posit[ed] that Plaintiffs had special knowledge equal to the Government's when they bid on and accepted the timber awards–place[d] what Government personnel knew and when they knew it at issue."  Id. at 782.

Defendant bears the burden of showing that it has not waived the attorney-client privilege or work-product protection by asserting these affirmative defenses.  See In re Keeper of Records (XYZ Corp.), 348 F.3d at 22; Evergreen Trading, LLC, 80 Fed. Cl. at 127.  Although defendant improperly attempts to shift this burden to plaintiff, it does argue that neither of its affirmative

---

& Potomac Tel. Co. of Va. v. United States, 654 F.2d 711, 716 (Ct. Cl. 1981) (quoting 6 Arthur L. Corbin, Corbin on Contracts § 1277 (1962)).

defenses entitles plaintiff to privileged or protected material.  See Opp'n Compel 17 ("Eden Isle utterly fails to establish how either of the Government's affirmative defenses requires allowing Eden Isle access to privileged material.").  In particular, defendant contends that its accord and satisfaction affirmative defense is based upon the language of the release executed by the parties on April 22, 1999, and that its assumption of risk affirmative defense is based upon the terms of the Memorandum of Understanding executed by the parties on February 2, 1999.  Accordingly, argues defendant, only the two contracts, and not any privileged or protected material, are required to establish its affirmative defenses.

While defendant is correct that the express terms of the release and the Memorandum of Understanding provide the basis for its affirmative defenses, the contracts alone may not suffice to fully establish its defenses.  If plaintiff's manifestation of assent to the release, the Memorandum of Understanding, and the 1999 lease was induced by misrepresentation or duress, then the meeting of the minds element of the accord and satisfaction affirmative defense might not be satisfied.  See generally Restatement (Second) of Contracts §§ 159-177 (1981) (addressing misrepresentation, duress, and undue influence).  And, if the terms of the Memorandum of Understanding are ambiguous, as plaintiff appears to argue here, then the assumption of risk affirmative defense may be defeated.  See TEG-Paradigm Envtl., Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When a provision in a contract is susceptible to more than one reasonable interpretation, it is ambiguous, and [the court] may then resort to extrinsic evidence to resolve the ambiguity." (citations omitted)).  Thus, it may be necessary to look beyond the four corners of the contracts at issue here to determine whether the affirmative defenses have been established.

Defendant has the burden of proving all of the elements of its affirmative defenses.  See Brunswick Bank & Trust Co. v. United States, 707 F.2d 1355, 1360 (Fed. Cir. 1983) (noting "the general rule that the party raising an affirmative defense has the burden of proof on the issue"); see also United States v. Approximately 81,454 Cans of Baby Formula, 560 F.3d 638, 641 (7th Cir. 2009) ("The plaintiff in a tort or contract suit has the burden of proving liability and damages; but if the defendant interposes a defense, for example of . . . assumption of risk, the burden of proving the defense is on him."); Hamilton v. United States, 324 F.2d 960, 965 (Ct. Cl. 1963) (Davis, J., concurring) ("Under normal rules of procedure . . . , the defendant, not the plaintiff, has the burden of convincing us that a valid 'accord and satisfaction' (i.e., compromise) was made.").  Thus, it is incumbent on defendant to demonstrate both a meeting of the minds and a lack of ambiguity to establish its affirmative defenses.  Accordingly, the basic inquiry before the court is whether defendant has shown that it can establish these elements of its affirmative defenses without reference to privileged and protected material.  However, the court is not prepared to determine whether defendant has made such a showing at this juncture because the parties have not provided fully-developed arguments that take into consideration the above recitation of the applicable law.  Therefore, the court will deny plaintiff's amended motion to compel with respect to its at-issue implied waiver argument without prejudice.  If plaintiff wishes to renew its motion on this issue, it may do so.

-48-

## IV.  CONCLUSION

For the reasons set forth above, plaintiff's amended motion to compel is **GRANTED IN PART** and **DENIED IN PART**.  In conformance with this ruling, the court directs the following:

1.  Defendant shall provide to plaintiff, by **no later than Wednesday, September 30, 2009**, a written response to plaintiff's request for production of documents that complies with the court's ruling.

2.  Defendant shall provide plaintiff with a more-detailed privilege log that complies with the court's ruling, if it has not done so already, by **no later than Wednesday, September 30, 2009**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge